FILED

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**    2004 FEB 13 ⊃ 4: 14
**(Bridgeport)**

US [...]

| | | |
|---|---|---|
| **CADLE COMPANY** | ) | **CIVIL ACTION** |
| | ) | |
| v. | ) | **MASTER DOCKET NO 3:00cv316 (WWE)** |
| | ) | |
| **GRACE JONES** | ) | **PLEADING APPLCABLE TO:** |
| | ) | **NO: 3:00cv316 (WWE)** |
| **CADLE COMPANY** | ) | **NO: 3:00cv317 (WWE)** |
| | ) | |
| v. | ) | |
| | ) | |
| **DOROTHY MURREN** | ) | **FEBRUARY 13, 2004** |

## POST TRIAL MEMORANDUM

### TABLE OF CONTENTS

I.   General Background.  .................................................................................................... 1

II.  Facts Relating to Alleged Fraudulent Transfers.  .................................................... 4

   1.  The "Income Transfers" and "Other Transfers".  ............................................ 4
   2.  The Jones Fairfield, CT home.  ........................................................................ 5
   3.  The Murren Trumbull, CT home.  ..................................................................... 6
   4.  The Murren Vermont home.  ............................................................................. 6
   5.  The Murphy & Murphy, Inc. stock.  ................................................................. 7
   6.  Jomur Associates, LLC (the Van Zant Street Condominium).  ....................... 8

III. Legal Discussion.  .................................................................................................... 9

   1.  Applicable Law.  ............................................................................................... 9
   2.  Burden of Proof.  ............................................................................................. 10

3.  The Motion to Reconsider - <u>Russell v. Todd</u> and Judge Covello's
    decision in <u>Stefancin v. Nevada Club</u>. ........................................... 11
4.  The Income Transfers and the First Count. ........................................... 15
    a.  Elements required to be proven.  ........................................... 15
    b.  The Jones "Income Transfers". ........................................... 16
    c.  The Murren "Income Transfers". ........................................... 20
5.  The Income Transfers and the Second Count. ........................................... 22
    a.  Elements required to be proven.  ........................................... 22
    b.  The Jones "Income Transfers". ........................................... 23
    c.  The Murren "Income Transfers". ........................................... 24
6.  The Income Transfers and the Third Count. ........................................... 24
    a.  Elements required to be proven.  ........................................... 24
    b.  The Jones "Income Transfers". ........................................... 25
    c.  The Murren "Income Transfers". ........................................... 25
7.  The Constructive Trust Claims of the Fourth Counts. ........................................... 26
    a.  Elements required to be proven.  ........................................... 26
    b.  The Jones Fairfield, CT home. ........................................... 28
    c.  The Murren Trumbull, CT home. ........................................... 29
    d.  The Murren Vermont home.  ........................................... 29
    e.  The Murphy & Murphy stock. ........................................... 30
    f.  Jomur Associates, LLC (the Van Zant Street Condominium. ........................................... 31

IV. Proposed Findings of Fact. ........................................... 34

V.  Proposed Conclusions of Law. ........................................... 36

## I. **GENERAL BACKGROUND.**

This memorandum is applicable to both cases, No: 3:00cv316 (WWE) and No: 3:00cv317 (WWE).

The plaintiff The Cadle Company ("Cadle") is suing the defendants Grace Jones (3:00 CV-00317) and Dorothy Murren (3:00-CV-0031) on separate but similar four count complaints.

The parties have stipulated to almost all of the factual background per an October 2, 2003 stipulation (the "Stipulation"), with all of the exhibits referenced therein having been admitted as exhibits at trial.

The facts giving rise to Cadle's claims date back to before 1990, when William Jones and Thomas Murren, the husbands of the defendants, were indebted on a commercial promissory note to Great County Bank (the "Great Country Debt" - Stipulation, Sec. B, pp. 3-4). Great Country Bank foreclosed the mortgage securing the debt. The value of the property foreclosed was insufficient to satisfy the debt. In February 1992, Great Country Bank obtained a deficiency judgment against William Jones, Thomas Murren and others in the amount of $109,407.35 (the "Great Country Judgment") (Stipulation, ¶¶ 8 - 10). The plaintiff Cadle purchased the debt on or about March 1994. (Stipulation, ¶ 11).

Approximately six years after having purchased the debt, Cadle brought these actions, which were originally brought against William Jones, Grace Jones, Thomas Murren and Dorothy Murren. The original basis of the actions was Cadle's claim of fraudulent transfers of income and/or assets by the husband to their wives during a period beginning four years prior to the

commencement of the actions. The claims were made under various sections of the Connecticut

Uniform Fraudulent Transfer Act (Conn. Gen. Stats. § 52-552a through 552l - "CUFTA"). The

reason why the look-back period on the first three counts is limited to four years is, presumably,

the CUFTA four-year statute of repose, C.G.S. § 52-552j.

Mr. Jones and Mr. Murren then filed bankruptcy petitions in June 2000 and received

discharges in October 2000 (Stipulation ¶¶ 13 - 16). Cadle then dropped Mr. Jones and Mr.

Murren as defendants.

A little over two years later, in December 2002, Cadle amended its complaints against

Mrs. Jones and Mrs. Murren to add a fourth count, seeking imposition of a constructive trust on

certain assets or the proceeds thereof that are, or were, owned by Mrs. Jones and Mrs. Murren.

The complaints before the court are the December 2002 amended complaints. Each of

the first three counts in these complaints alleges a cause of action under a separate section of

CUFTA. The first count claims under C.G.S. § 42-552e(a)(1), the second under 552e(a)(2) and

the third under 552f. The fourth count claims an equitable imposition of a constructive trust on

assets owned by the defendant spouses. The husbands never owned an interest in two of the

assets. These would be the Murren Trumbull home and the ownership interests in Jomur

Associates, LLC (Jomur being the limited liability company that owned the office condominium

on Van Zant Street in Norwalk, CT). The other assets on which a constructive trust is sought to

be imposed, or on the proceeds thereof, involve ownership interest that were transferred by the

Husbands to their wives in 1990, 1991 and 1994.

Since the fourth count seeks to utilize the remedy of a constructive trust tom be imposed

on assets the husbands transferred eight years or more before the constructive trust claim was

brought, and in some cases against assets that had never been owned by the husbands, the defendants sought to dismiss it because of the four year CUFTA statute of repose, C.G.S. § 52-552j, or, alternatively, the Connecticut three year tort statute of limitations, C.G.S. § 52-577.

The court denied the motions to dismiss. The defendants then raised the issue of the statute of repose and the statute of limitations as special defenses. The plaintiff moved to strike the special defenses, and the court granted the motion.

The basis for the court's decisions on the motions to dismiss and strike was the principle that the statutes of limitation apply to legal claims and not equitable claims, and since the Fourth Count of the complaints seeks a constructive trust, statutes of limitation are applicable to it because it is an equitable claim.

After the court's ruling on the motion to strike, Judge Covello issued a ruling in <u>Stefancin v. Nevada Club</u>, (unreported decision, U.S. Dist Court, D. Conn., Docket No. 3:02CV1299 (AVC)) (copy attached). Judge Covello's decision appears to be in conflict with this court's rulings because Judge Covello held that an equitable claim, unjust enrichment, in the <u>Stefancin</u> case, was subject to a legal statute of limitations in certain circumstances. The circumstance in that case is that when both legal and equitable claims are brought for redress of the same wrong, the statute of limitations applicable to the legal claims will be applicable to the equitable claims, as well. Judge Covello cited <u>Russell v. Todd</u>, 309 U.S. 280, 289 (1940) in support of this principle.

At trial, the undersigned brought Judge Covello's decision to the attention of the court. The court then requested the undersigned to file a motion for reconsideration of the court's rulings on the motions to dismiss and motion to strike and directed the parties to brief the issue in

- 3 -

their post trial briefs.

## II. **FACTS RELATING TO ALLEGED FRAUDULENT TRANSFERS**.

The first three counts of the complaints deal with two categories of alleged "transfers". The fourth count of the complaints involves a claim for a constructive trust against several distinct "assets" or the proceeds thereof. The alleged "transfers" of the first three counts are described as "Income Transfers" and "Other Transfers". The "assets" and "proceeds" relating to the constructive trust claim are: (a) the Jones residence in Fairfield; (b) the Murren residence in Trumbull; (c) the Murren second home in Vermont; (d) the distribution to Mrs. Jones and Mrs. Murren from Murphy & Murphy, Inc., from the sale of its assets; and (e) the distribution to Mrs. Jones and Mrs. Murren from Jomur Associates resulting from the sale of the Van Zant Street office condominium.

### 1. **The "Income Transfers" and "Other Transfers"**.

The first three counts of each complaint allege that William Jones and Thomas Murren transferred income ("Income Transfers") and other assets ("Other Transfers") to their spouses during the period beginning four years prior to the commencement of the action. The facts relating to these transactions are set forth in Sections E and F of the Stipulation, the "Banking and Financial Transactions of the Joneses" (Stipulation, ¶¶ 50-82, pp. 13-19) and the "Banking and Financial Transactions of the Murrens" (Stipulation, ¶¶ 83-127, pp. 19-27). As it turned out, the Stipulation and evidence involved only "Income Transfers". There was no evidence of any "Other Transfers" taking place within four years prior to the commencement of the action. For that matter, there was no evidence of any asset transfer taking place after 1994.

- 4 -

As for the Income Transfers, the Stipulation and evidence showed that the sole source for payment of household expenses for both the Joneses and the Murrens was the regular weekly salary the husbands were earning from the Murphy & Murphy, Inc. insurance business.

In the case of the Joneses, Mr. Jones' weekly salary check was deposited into a joint checking account that he and Mrs. Jones maintained until February 26, 1997. Thereafter, Mr. Jones' salary was directly or indirectly deposited into a checking account solely in the name of Mrs. Jones. Whether Mr. Jones' salary was deposited into the joint checking account or the sole checking account, all of the salary was used contemporaneously for household expenses. (Stipulation, 78-80 and testimony of Grace Jones, TR.29-30) These included mortgage and real estate tax payments on the Jones' home in Fairfield.

In the case of the Murrens, Mr. Murren's weekly salary check was deposited into a joint checking account that he and Mrs. Murren maintained, with payments from the account being used for household expenses, as well. These included mortgage and real estate tax payment on the Murren home in Trumbull and the Murren home in Vermont.

There was no evidence of any "Other Transfers", within the meaning of that term in the first three counts of the complaints.

## 2.  **The Jones Fairfield, CT home.**

The Jones' home in Fairfield was acquired jointly by Mr. & Mrs. Jones in 1987. Mr. Jones quit claimed his interest in the home to Mrs. Jones in 1990. (Stipulation, ¶¶ 60, 61). The Jones home in Fairfield has been the residence for Mr. & Mrs. Jones and their family continuously from 1987 to the present. (Stipulation, ¶ 59) Cadle seeks imposition of a

- 5 -

constructive trust on the Jones home because, presumably, Mr. Jones quit claimed his interest in it to Mrs. Jones in 1990 at a time when he was insolvent (although there is no evidence of insolvency in 1990) and/or Mr. Jones' salary was used to make the mortgage and real estate tax payments on the home.

### 3. The Murren Trumbull, CT home.

The Murren home in Trumbull was acquired in 1977 in Mrs. Murren's name, alone, and has remained solely in her name ever since. (Stipulation ¶ 84)  The Murren home in Trumbull has been the residence for Mr. & Mrs. Murren and their family from 1977 to present, except for a brief period in the early 1990's, when Mr. & Mrs. Murren moved to a home in Stratford. (Stipulation, ¶¶ 83-84 and 94-95)  Cadle seeks imposition of a constructive trust on the Murren home in Trumbull because, presumably, Mr. Murren's salary was used to make the mortgage and real estate tax payments on the home.

### 4. The Murren Vermont home.

The Murren home in Vermont was acquired in the mid 1980's, jointly by Mr. & Mrs. Murren, utilizing cash from a refinance of the equity in the Trumbull home.  Mr. Murren quit-claimed his interest in the Vermont home to Mrs. Murren in 1991 (Stipulation, ¶¶ 83 - 96).  The Vermont home has been used as a second home by both Mr. & Mrs. Murren continuously. (testimony of Thomas Murren, TR 124-5).  Cadle seeks imposition of a constructive trust on the Murren home in Vermont because, presumably, Mr. Murren quit-claimed his interest in it to Mrs. Murren in 1991 at a time when he was insolvent and/or Mr. Murren's salary was used to make the mortgage and real estate tax payments on the home.

- 6 -

5. **The Murphy &Murphy, Inc. stock.**

The facts relating to Murphy & Murphy, Inc. are set forth in Section C of the Stipulation, pp. 5-8. Murphy & Murphy was a corporation that conducted an insurance brokerage business. Mr. Jones began working at Murphy & Murphy long ago, as an employee, and then came to acquire all of the stock in the company. Mr. Murren started working at Murphy & Murphy in the 1980's and became a 50% shareholder, along with Mr. Jones. (testimony of Wm. Jones, TR. 90-91; and testimony of Thomas Murren, TR. 59-60) Mr. Jones and Mr. Murren were then sole stockholders, directors and officers of Murphy & Murphy until 1994. At that time, in 1994, Mr. Jones and Mr. Murren transferred their stock in Murphy & Murphy to their wives. Mr. Jones and Mr. Murren continued to serve as the sole directors and officers of the company after the stock transfers.

At one point, many years later, Mr. Jones and Mr. Murren were approached by a Mr. William Cornelius, of J. M. Layton, about entering into an agreement whereby J.M. Layton would acquire the Murphy & Murphy assets and Mr. Jones and Mr. Murren's "book of business". (testimony of Thomas Murren, TR, pp.75-76) A sales contract was then entered into whereby: (a) the assets of Murphy & Murphy would be sold to J.M. Layton; (b) Mr. Jones and Mr. Murren would work for J. M. Layton; and (c) Mr. Jones and Mr. Murren and their wives would agree to not compete with J. M. Layton. (Stipulation ¶¶ 24-26) The transaction closed, and Mrs. Jones and Mrs. Murren received a distribution from Murphy & Murphy resulting from the sales proceeds paid by J.M. Layton to Murphy & Murphy and the husbands and their wives received payments on the covenants not to compete.

- 7 -

**6.  Jomur Associates, LLC (the Van Zant Street Condominium).**

The facts relating to Jomur Associates, LLC and the Van Zant Street Condominium are set forth in Section D of the Stipulation, pp. 9-13.  The Van Zant Street Condominium was initially purchased in 1986 in the name of a general partnership whose sole partners were Mr. Jones and Mr. Murren.  Thereafter, the local real estate market collapsed, and the property suffered a tremendous loss in value.  The mortgage on the property came to be owned by FDIC and, in 1992, the property went into foreclosure.  In 1994, a third party known as MLQ Investors acquired the mortgage debt from FDIC and undertook negotiations with Mr. Murren and Mr. Jones about resolving the debt.  An agreement was then made whereby MLQ would accept $112,500 as payment in full of the mortgage debt.  The $112,500 was a much smaller sum than the full balance owed on the mortgage loan and, presumably, was within the range of the value of the collateral on the mortgage, the collateral being the Van Zant Street Condominium.

The pay-off of MLQ was then arranged as a part of a transaction wherein: (a) a new limited liability company was formed, Jomur Associates, LLC ("Jomur"); (b) Jomur borrowed $100,000 from a third party, Cambridge Associates, obtained $12,500 from Murphy & Murphy; (c) title to the condominium was transferred to Jomur; and (d) Jomur paid MLQ the $112,500 for a release of mortgage.  Jomur's sole members at the time were Mrs. Murren and a Stacey Schluback.  Mrs. Schluback is Mr. & Mrs. Jones' daughter.  As a part of the transaction by which the $100,000 was borrowed from Cambridge Associates, Mr. Jones and Mr. Murren guaranteed the debt.  Going forward, Murphy & Murphy would remain in occupancy of the Van Zant Street Condominium, renting it from Jomur.

- 8 -

In 2000, approximately six years after Jomur acquired the Van Zant Street Condominium, a Mr. Winthrop Baum extended an offer to purchase it. The offer was accepted and a contract signed. After Mr. Baum extended the offer to purchase, Mr. Jones asked his daughter Mrs. Schluback if she would transfer a portion of her interest in Jomur to her mother, Mrs. Jones, as a gift. Mrs. Schluback then transferred a portion of her interest in Jomur to her mother, the condominium was sold and Mrs. Murren, Mrs. Jones and Mrs. Schluback received distributions of the sales proceeds.

Cadle seeks imposition of a constructive trust on the distribution from Jomur to Mrs. Murren and Mrs. Jones resulting from the sale of the Van Zant Street Condominium. It is presumed that the reasons to be advanced by Cadle for the constructive trust on the distribution from the sale of the Van Zant Street Condominium include the facts surrounding Jomur's acquisition of the condominium in 1994, Mr. Murren's role as manager of Jomur and/or the transfer of a portion of the membership interest in Jomur from Mrs. Schlubach to Mrs. Jones in 2000.

## III. **LEGAL DISCUSSION**.

### 1. **Applicable Law**.

This is a diversity of citizenship action. The claims are state law causes of action and are governed by state law. Erie v. Tompkins, 304 U.S. 64 (1938). All activities alleged in the complaints took place in Connecticut, with the exception of the Murren Vermont home. Connecticut law therefore applies to all substantive matters, except for the constructive trust claim against the Murren home in Vermont. Connecticut law provides that the law of the state

where the property is located applies in the case of claims in the nature of fraudulent transfer claims. Citizens Bank v. Hunt, 727 F. 2d 707, 710 (2nd Cir., 1991).

Regarding the Murren home in Vermont and the constructive trust claim as to it, the law does not appear to be as well developed as in Connecticut. However, the Vermont Supreme Court appears to look to general principles of equity in considering the issue. Mislosky v. Wilhelm, 130 Vt. 63, 386 A. 2d 267 (1971) Since Connecticut's law in this area appears to be based similarly, the undersigned assumes that Vermont law would be similar to Connecticut law on the subject of constructive trusts.

There are statute of limitations issues in these cases, as well (on the motion to reconsider). In federal court, the rule on limitations of actions is that the forum state's limitations of actions law governs. Sun Oil v. Wortman, 486 U.S. 717, 724-25 (1988). Connecticut law therefore governs statute of limitations issues.

## 2. **Burden of Proof**.

The burden of proof for both the fraudulent transfer and constructive trust claims is on the plaintiff Cadle to establish all of the elements of the causes of action by clear and convincing evidence.

In U.S. v. Snyder, 233 F. Supp. 2nd 293 (D. Conn. 2002), Judge Dorsey considered the government's claim for a constructive trust as a remedy on a fraudulent conveyance cause of action. He found that under Connecticut law, "a fraudulent conveyance must be proven by 'clear and convincing' evidence." Id., 298, citing Tessitore v. Tessitore, 31 Conn. App. 40, 43 (1993). This would apply to the fraudulent transfer claims.

- 10 -

The plaintiff is also claiming a constructive trust, purportedly as a cause of action and not just a remedy. To the extent that the constructive trust claim is found to be a cause of action, the burden of proof for it is the same - clear and convincing evidence. "The plaintiff bears the burden of proving facts necessary for the imposition of the trust by clear and convincing evidence." Wendell, Trustee v. Thurston, 1995 Conn. Super. Lexis 1535 (Docket CV 92-0241989, New Haven J. D., Silbert, J. 1995), rev'd on other grounds, 239 Conn. 109, 680 A. 2d 1314 (1996), citing Starzec v. Kida 183 Conn. 41 (1981); and Cooper v. Cavallaro, 2 Conn. App. 622, 625026 (1984) for the clear and convincing standard for constructive trusts in limited circumstances in those cases.

### 3. The Motion to Reconsider - Russell v. Todd and Judge Covello's decision in Stefancin v. Nevada Club.

As above, the court indicated at trial that it would entertain a motion to reconsider its prior rulings on the motions to dismiss and strike. The court's rulings involved the issue of whether statutes of repose or limitation applicable to actions at law may be applied to equitable causes of action - in particular, to the equitable claim for a constructive trust set forth in the fourth counts of the complaint. The court indicated that it would entertain a motion to reconsider because not long before the trial in the instant case, Judge Covello issued a ruling applying a statute of limitations to bar an equitable claim of unjust enrichment, in Stefancin v. Nevada Club. Judge Covello's ruling on this point relied on the U.S. Supreme Court's decision in Russell v. Todd, 309 U.S. 280, 289 (1940), which may not have been fully considered by this court when issuing its prior rulings.

In Stefancin v. Nevada Club, the plaintiff brought a multi-count complaint in 2002

seeking to recover for gambling losses of community property sustained by her husband at the Nevada Club between the years of 1967 and 1977. Judge Covello applied Connecticut's three-year tort statute of limitations, C.G.S. § 52-577 to the plaintiff's legal claims and barred them as untimely.[1] Judge Covello then addressed the fact that one of the claims in the complaint was an <u>equitable</u> one, unjust enrichment, and apparently considered the principle that statutes of limitation do not ordinarily apply to equitable causes of action. Judge Covello noted that the principle has exceptions, one of which is where both legal and equitable claims are made to address the same alleged wrong. In particular, Judge Covello held: "When a plaintiff pursues an action for fraud on equitable as well as legal grounds, 'equity will withhold its remedy if the legal right is barred by the local statute of limitations.'" <u>Stefancin v. Nevada Club</u>, citing <u>Russell v. Todd</u>, 309 U.S. 280, 289 (1940).

This point was previously raised by the undersigned in the brief in opposition to the motion to strike, where the undersigned cited <u>Dowling v. Finley</u>, 49 Conn. App. 330, 335 (1998), <u>r'vd on other grounds</u>, 248 Conn. 364 (1999), in support of the same principle. (May 13, 2003 objection to the Memorandum of Law in Opposition to Motions to Strike, pp. 7-8)[2]

The issue that the defendants have asked the court to reconsider is whether an equitable

---

[1]   The three-year limit of § 52-577 was then extended by an additional seven years because the defendants were continuously out of state, per C.G.S. § 52-590.

[2]   In reviewing the May 13 Memorandum, the undersigned discovered that the citation of <u>Dowling v. Finley</u> in the memorandum did not include the "<u>r'vd on other grounds</u>" subsequent appellate history. The undersigned at that time took the <u>Dowling v. Finley</u> citation from <u>Torringford Farms v. Torrington</u>, 2001 Conn. Super. Lexis 2374 (Docket CV990091120, Litchfield J.D., Matasavage, J., 2001). This case did not cite the appellate history and is the reason why the undersigned did not realize it when including the citation in the May 13 memorandum. The undersigned apologizes to the court for not including the "r'vd on other ground" portion of the citation now included above.

cause of action for a constructive trust[3] is either <u>extinguished</u> by operation of CUFTA's statute of repose, Conn. Gen. Stats. § 52-552j, or <u>barred</u> by Connecticut's tort statute of limitations, C.G.S. § 53-577. At the time the prior motions were considered, Cadle argued that the fourth count plead a constructive trust as an equitable cause of action, not just as an equitable remedy, and that equitable causes of action, as distinguished from legal causes of action, are not governed by statutes of limitation. The defendants maintain that if the constructive trust is treated as an equitable cause of action, since Cadle could have sought redress for the same alleged wrong had they timely brought an action at law seeking redress for the alleged wrongs. Because the plaintiff could have brought a timely legal action to seek redress for the alleged wrongs, the statutes of limitations that are applicable to the legal action(s) apply to the equitable action, as well.

This is the rule applied by Judge Covello, stated in a slightly different manner, in <u>Stefancin v. Nevada Club</u> and is the reason for the request for reconsideration. The standards governing reconsideration by the court of its prior rulings are set forth in the defendants' May 13, 2003 Memorandum in Opposition to Motion to Strike, pp. 3-4. Essentially, the court is free to reconsider its prior rulings. In reviewing Judge Covello's decision at the close of evidence in the instant trial, the court noted that Judge Covello relied on <u>Russell v. Todd</u>, 309 U.S. 280 (1940) and requested the parties to address the <u>Russell v. Todd</u> holding and its applicability to the instant case.

---

[3]    Another issue that was raised by the defendants is whether the claim for the constructive trust is merely an equitable remedy based on some underlying legal or equitable cause of action or whether the claim for the constructive trust is a cause of action in-and-of itself. The court ruled that the claim is a cause of action in-and-of itself. This issue was not raised in Judge Covello's decision and, although it is not being waived, it is not being re-argued in this brief.

Russell v. Todd is a 1940 U.S. Supreme Court case in which the Court applies a general common-law equitable principle as a matter of federal common-law. Judge Covello's opinion relied on Russell v. Todd as what is presumed to be a principle of Connecticut law, as well, but without discussing the basis for which the principle is a matter of Connecticut law, as well as federal common-law.

Interestingly, this issue was fairly recently and thoroughly discussed by the Connecticut Appellate Court, where the Appellate Court cited Russell v. Todd, among other law, in support of the statement of the principle as being Connecticut's law, as well. Dowling v. Finley, 49 Conn. App. 330, 335 (1998), rev'd on other grounds, 248 Conn. 364 (1999). There, the Appellate Court held:

> Where a party seeks equitable relief pursuant to a cause of action that would also allow that party to seek legal relief, concurrent legal and equitable jurisdiction exists, and the statute of limitations that would bar the legal claim also applies to bar the equitable claim.

Id.

The same issue appears to have been raised in the Connecticut Superior Court a number of times since Dowling v. Finley, with the principle cited and followed. See, inter alia: Travelers v. CGU Insurance, 2003 Conn. Super. Lexis 510 (Docket CV000599177S, Hartford J.D., Hale, JTR, 2003); Maurer & Sheperd Joyners v. Doherty, 2002 Conn. Super. Lexis 1685 (Docket CV010806832, Hartford J.D., Hennessey, J, 2002); Torringford Farms v. Torrington, 2001 Conn. Super. Lexis 2374 (Docket CV990091120, Litchfield J.D., Matasavage, J., 2001) (copies attached).

The fourth counts seek to impose a constructive trust on assets or proceeds thereof as a

result of interests in property that were transferred to the defendants in mid 1994 and before. This is more than eight years before the constructive trust claims were made.

In view of the above, it is respectfully submitted that this court should reconsider its rulings on the motions to dismiss and motions to strike, hold that the CUFTA statute of repose applies to the fourth counts and enter judgment in favor of the defendants on those counts.

### 4. **The Income Transfers and the First Count**.

#### a. **Elements required to be proven**.

As above (Sec. III.2), Cadle is required to prove the elements of its fraudulent transfer claims under CUFTA by clear and convincing evidence.

The first count pleads a fraudulent transfer under subsection (a)(1) of C.G.S. § 52-522e. Before turning to the language of 52-552e, it is necessary to look at § 52-552b and 552e(b) for the definition of some of the terms used in 52-552e. These terms are "transfer", "asset" and "actual intent". 52-552e (a)(1) requires proof of a "transfer" of an "asset" with "actual intent" to hinder, delay or defraud a creditor.

Under 52-552b(12), a "transfer" means a direct or indirect disposition of an "asset". Under 52-552b(2), "asset" is defined to be property of a debtor, but which does not include, among other things, "property to the extent it is generally exempt under non-bankruptcy law". "Actual intent" is a term of art that involve a factual inquiry taking into consideration a number of factors, on a case by case basis. Subsection (b) of § 52-552e lists a number of factors to be considered in determining "actual intent" under subsection (a)(1). These factors include whether the debtor retained possession or control of the property transferred, whether the transfer was

- 15 -

concealed and whether reasonably equivalent value was received for the transfer.

Paragraph 14 of both complaints alleges, and subsection (a)(1) of § 52-522e requires proof by clear and convincing evidence that:

(1)    There has been a "transfer" of an "asset", which "asset" must consist of non- exempt property under non-bankruptcy, state law;

(2)    The debt (the Great Country Debt) arose before such transfer or transfers; and

(3)    Such transfer or transfers were made with "actual intent" to hinder, delay or defraud one or more of the husbands' creditors.

**b.    The Jones "Income Transfers".**

This portion of the complaint against Mrs. Jones, Count One, involves the use of Mr. Jones' salary for the period dating back to four years prior to the commencement of the action[4] through the date of Mr. Jones' bankruptcy petition - from February 26, 1996 through July 14, 2000.

The Stipulation provides that Mr. Jones received a salary check of not less than about $1,340 per week for the period from January 1, 1992 through July 14, 2000.  (Stipulation, ¶ 50) Mr. Jones' salary was deposited in a joint checking account maintained by he and Mrs. Jones until February 25, 1997 (Stipulation, ¶ 52), and thereafter Mr. Jones' weekly salary check was

---

[4]    The first three counts of the complaint alleged income and other transfers dating back to four years prior to the date of the initial complaint.  CUFTA extinguishes a cause of action if not commenced within four years of the date of alleged transfer.  "Commenced" for federal purposes is the date of service on the defendant.  Stephens v. Norwalk Hospital, 162 F. Supp. 2d 36 (Dist. of Conn., Arterton, J., 2001).  The return of service shows the complaint as having been served on February 26, 2000.  Four years prior would therefore be February 26,

- 16 -

directly or indirectly deposited into a checking account that was in Mrs. Jones' name, alone. (Stipulation ¶¶ 53-58). The $1,340 weekly salary check equates to an annual rate of about $70,000. There was no evidence of any salary checks or payments in excess of the $70,000 per year for the entire period from January 1992 through July 14, 2000.

In its damages analysis, the plaintiff claims that all mortgage and real estate tax payments on the Jones' home made out of the joint checking account during the period from February 15, 1996 through February 27, 2000 constituted fraudulent transfers of Mr. Jones' salary. The damages analysis then goes on to maintain that once Mr. Jones' salary began to get deposited into Mrs. Jones' checking account, all of the deposits constituted a fraudulent transfer of Mr. Jones' salary, or, alternatively, the portion of that money which was used for mortgage and real estate taxes on the Jones' home constituted a fraudulent conveyance. (Cadle Damages Analysis as to Jones, pp. 4-6)

This count of the complaint pleads a fraudulent transfer under C.G.S. § 52-552e(a)(1). The first element of the proof requires clear, convincing and precise proof of a transfer of property belonging to Mr. Jones that was generally not exempt under non-bankruptcy law. It is respectfully submitted that the plaintiff's claim on this count fails at the definitional level with respect to all of Mr. Jones' salary checks other than possibly $335 per week. The reason is that the plaintiff did not meet the "non-exempt property" element of proof on the transfer of an asset.

The only property involved with the First Count (and the Second and Third Counts, for that matter) is wages. The plaintiff alleges that all of Mr. Jones' wages that were used for mortgage and real estate tax payments were "transfers" within the meaning of CUFTA, as well as

1996.

- 17 -

Mr. Jones' entire wages during the time they were deposited into the checking account that was solely in Mrs. Jones' name.  There was no proof at all that these wages were non-exempt property.

Under Connecticut law, wages are exempt from levy pursuant to C.G.S. § 52-361a(f) in at least the amount 75% of the aggregate weekly disposable earnings, and more for lower incomes than what Mr. Jones was earning.  The Stipulation provides that Mr. Jones' salary checks during the period in question were within a dollar or two of $1,340 per week.  Pursuant to C.G.S. § 52-361a, $4,355 per month, or $52,260 per year, of Mr. Jones' salary checks were exempt from levy under state law.  The mortgage and real estate tax payments made from Mr. Jones' salary checks were far less than the portion of the checks that were exempt from levy.

The only non-exempt portion of the salary checks would have been $335 per week.

The next element of proof has been stipulated to, that is; Mr. Jones was insolvent at all relevant periods.

The last element of proof is "actual intent" to delay, hinder or defraud.

In view of the above, this could only possibly apply to $335 per week worth of Mr. Jones' salary checks.

C.G.S. § 52-552e(2) lists factors to be considered in determining whether transfers have been made with fraudulent intent.  These factors and determination of whether there is any fraudulent intent may be considered in the same manner as in the common law prior to CUFTA, as CUFTA "is largely an adoption and clarification of the standards of the common law on fraudulent conveyances."  Robinson v. Coughlin, 266 Conn. 1, 12 (2003), quoting Litchfield Asset Management v. Howell, 70 Conn. App. 133, 145, note 7 (2002), cert. denied, 261 Conn.

911 (2002).

Essentially, the plaintiff's contention that the mortgage, real estate tax payments and the post 1997 salary deposits into Mrs. Jones' checking account but which were, nonetheless, used for contemporaneous household expenses, constitute transfers made with fraudulent intent.

In view of the above, the only portion of the salary checks that, it is respectfully submitted, is necessary to consider under this element of proof is $335 per week.

There was no evidence that any money was built up in Mrs. Jones' checking account. There was no evidence that any money was secretly saved up and hidden from Mr. Jones' creditors. The evidence concerning Mr. Jones' salary and the use of it was only:

(1)    The salary checks received by Mr. Jones all during the relevant period was not shown to be anything in excess of $1,341 per week; and

(2)    The salary checks were not shown to be used for anything but the contemporaneous payment of household expenses, including mortgage and real estate tax payments.

Household expenses are within the purview of expenditures for Mr. Jones' own benefit, such as his own shelter, food, transportation and other such expenses, and Mr. Jones' obligation to support his family.

In a similar situation with respect to a husband's salary being turned over to his wife and the wife's utilization of the same to pay household expenses, including mortgage payments, Judge Meskill found that Connecticut places an obligation on a spouse and parent to support his family and found the practice of having the husband's salary turned over to his spouse and used to pay household expenses, including mortgage payments, to be consistent with discharge of the

- 19 -

husband's duty of support, and not a pattern of fraudulent conduct.[5] <u>U.S. v. Edwards</u>, 572 F. Supp. 1527, 1536-37 (Dist. of Conn., Meskill, J., 1983)

Even if the utilization of the total amount of Mr. Jones' salary checks for household expenses is considered under the "actual intent" standard, the facts militate strongly against fraudulent intent. Neither Mr. Jones nor Mrs. Jones maintained any possession or control over the money represented by the salary checks once they were spent on the household expenses. The use of the salary checks to pay household expenses did not constitute any concealment of the money represented by the checks. Reasonably equivalent value was given for the checks, in that they were used to pay for household expenses on a contemporaneous basis.

As to Count One of the complaint against Mrs. Jones, involving solely the use of Mr. Jones' salary checks for household expenses, the plaintiff did not prove by clear and convincing evidence that the use of the salary checks in this manner constituted a fraudulent transfer under C.G.S. § 52-552e(a)(1).

### c. The Murren "Income Transfers".

As with the First Count against Mrs. Jones, the First Count against Mrs. Murren involves the use of Mr. Murren's salary for the period dating back to four years prior to the commencement of the action[6] through the date of Mr. Jones' bankruptcy petition - from February

---

[5]  <u>U.S. v. Edwards</u> involves a lower salary and lower expenses than in the instant action. However, the time period in which the payments were made was the mid 1970's, when prices were much different than the present.

[6]  The first three counts of the complaint alleged income and other transfers dating back to four years prior to the date of the initial complaint. CUFTA extinguishes a cause of action if not commenced within four years of the date of alleged transfer. "Commenced" for federal purposes is the date of service on the defendant. <u>See</u>; Note 4, above. The return of service