26, 1996 through July 14, 2000.

The Stipulation provides that Mr. Murren received the same salary level as Mr. Jones during all relevant times, within a dollar or two of $1,365 per week. The difference between the Jones facts and the Murren facts is that Mr. Murren's salary check was always deposited into his personal checking account and that he paid the household expenses for his family out of it. It appears that because Mr. Murren paid the household expenses out of his own checking account and did not first turn them over to Mrs. Murren, for her to pay them out of her account, the plaintiff is only alleging that the payments Mr. Murren made for the mortgage and real estate tax on the Trumbull home and the Vermont home constituted fraudulent transfers under C.G.S. § 52-552e(1). (Cadle Damages Analysis, as against Murren, pp. 4-5). The amount paid by Mr. Murren for the mortgage payments on the combined properties during the period from 1996 through July 17, 2000 ranged from between $2,044 per month to $2,424 per month. (Stipulation, ¶¶ 112-121).

The plaintiff is required to meet the same burden of proof on the First Count against Mrs. Murren as is described for Mrs. Jones, above.

In the case of Mrs. Murren, the plaintiff's damages confines itself to only the portion of Mr. Murren's salary used for mortgage payments. In Mr. Murren's case, $1,023 of his weekly salary was exempt from levy pursuant to C.G.S. § 52-361a. This would have amounted to about $4,436 per month. The exempt portion of Mr. Murren's wages far exceeded the amount utilized for mortgage payments, and the payments would not, therefore, constitute an "asset" within the

---

shows the complaint as having been served on February 26, 2000. Four years prior would therefore be February 26, 1996.

meaning of C.G.S. § 52-552b(2).

The mortgage payments made by Mr. Murren also constituted payments in exchange for reasonably equivalent value, as Mr. Murren used the homes himself, continuously during the period, and they would also constitute payments pursuant to Mr. Murren's support obligation, the same as the payments and analysis thereof with Mr. Jones.

**5.    The Income Transfers and the Second Count.**

    **a.    Elements required to be proven.**

The second count pleads a fraudulent transfer under subsection (a)(2) of C.G.S. § 52-522e.

Paragraph 24 of both complaints alleges, and subsection (a)(2) requires proof that:

(1)      There has been a "transfer" of an "asset", which "asset" must consist of non-exempt property under non-bankruptcy, state law;

(2)      The debt (the Great Country Debt) arose before such transfer or transfers; and

(3)      Without receiving reasonably equivalent value in exchange for the transfers, either:

    (A)      The husbands were engaged or were about to engage in a business or a transaction for which their remaining assets were unreasonably small in relation to the business or transaction;

    (B)      The husbands intended to incur, or believed or reasonably

should have believed that they would incur, debts beyond

their ability to pay.

### b. **The Jones "Income Transfers".**

The Jones transfers sought to be attacked by the Second Count are the same as the ones

attacked in the First Count. The same analysis regarding the necessity of the transfers having to

be of non-exempt property as was set forth with respect to the First Count is applicable to the

Second Count. In other words, the transfers for the mortgage payments and real estate tax were

not transfers of non-exempt earnings. The proof under subsection (2) of C.G.S. § 52-552e fails

for this reason, as it did under the First Count.

Another reason why the plaintiff's proof fails under § 52-552e(2) is that the third element

of proof set forth above is applicable to a different type of situation. The third element requires

clear, convincing and precise proof that the debtor did not receive reasonably equivalent value in

exchange for a transfer, but also requires that either:

(A)     The husbands were engaged or were about to engage in a business

or a transaction for which their remaining assets were unreasonably

small in relation to the business or transaction;

(B)     The husbands intended to incur, or believed or reasonably should

have believed that they would incur, debts beyond their ability to

pay.

The plaintiff's debt involved a business venture probably failed before 1992, when the

deficiency judgment that is the subject of the plaintiff's claim was obtained. There was

- 23 -

absolutely no evidence that Mr. Jones engaged in or was about to engage in any business or any business transaction during 1996 or thereafter for which he required any assets at all.

C.G.S. § 52-552e(a)(2) is inapplicable to the case at hand, and the plaintiff's Second Count against Mrs. Jones must therefore fail.

### c. **The Murren "Income Transfers".**

The analysis of the alleged transfers sought to be attacked by the Second Count against Mrs. Murren is exactly the same as the analysis for the Second Count against Mrs. Jones.

Subsection (a)(2) of C.G.S. § 52-552e is inapplicable to the facts, and the plaintiff's Second Count against Mrs. Murren must fail.

### 6. **The Income Transfers and the Third Count.**

### a. **Elements required to be proven.**

The third count pleads a fraudulent transfer under subsection (a) of C.G.S. § 52-522f. Paragraph 33 of both complaints alleges, and subsection (a) of § 52-552f requires proof that:

(1)     There has been a "transfer" of an "asset", which "asset" must consist of non-exempt property under non-bankruptcy, state law;

(2)     The debt (the Great Country Debt) arose before such transfer or transfers; and

(3)     The transfer was made without receiving reasonably equivalent value in exchange for the transfer;

(4)     The husband transferor was insolvent at the time of such transfer.

- 24 -

**b.** **The Jones "Income Transfers".**

The same analysis regarding the necessity of the transfers having to be of non-exempt property as was set forth with respect to the First Count is applicable to the Third Count. In other words, the transfers for the mortgage payments and real estate tax were not transfers of non-exempt earnings. The proof under C.G.S. § 52-552f fails for this reason, as it did under the First Count.

The proof under 52-552f also fails because there was no evidence that the transfers of earnings were not for reasonably equivalent value. In the case of Mr. Jones, all of his salary checks that were deposited to Mrs. Jones' bank account were used contemporaneously for household expenses, including the expense of living in the home by making mortgage and real estate tax payments, discharge of Mr. Jones' support obligation, as per U.S. v. Edwards, supra. Moreover, the burden of proof is on the plaintiff to demonstrate the elements of the cause of action by clear, convincing and precise evidence. There was no evidence that the use of Mr. Jones' salary checks was not in exchange for reasonably equivalent value.

The claim that the use of Mr. Jones' salary checks for household expenses constituted fraudulent transfers under C.G.S. § 52-552f must fail.

**c.** **The Murren "Income Transfers".**

The analysis for the Murren income transfers is the same as that for the Jones income transfers. Firstly, the Murren salary used for mortgage payments was not an asset that was not generally exempt under non-bankruptcy law, and there was certainly no clear, convincing and precise proof that this was not the case.

- 25 -

Secondly, Mr. Murren continuously lived in and used the homes on which the mortgage payments were made, and there was no clear, convincing or precise evidence that the payments were not in exchange for reasonably equivalent value.

The claim that the use of Mr. Murren's salary checks for mortgage payments constituted fraudulent transfers under C.G.S. § 52-552f must fail.

## 7. **The Constructive Trust Claims of the Fourth Counts.**

### a. **Elements required to be proven.**

In briefs on preliminary motions, the undersigned discussed the issue of whether a constructive trust is a remedy for some underlying cause of action, such a legal fraudulent transfer action or an equitable unjust enrichment cause of action. The undersigned is not waiving his position on the issue, but it is not being briefed again because of the court's prior rulings.

That being said, it is still unclear to the undersigned that a constructive trust is not just a remedy for some underlying legal or equitable cause of action, as the court appears to refer to it as a remedy.

Another issue argued against the Fourth Count constructive trust claims is the statutes of repose and limitations, argued in Sec. III.3., pp. 11-15, above, to extinguish and bar the claims.

A more recent case that appears to have one of the more thorough discussions on constructive trusts in Connecticut law is <u>Wendell v. Thurston</u>, 239 Conn. 109 (1996). There, the court repeated its general standard governing the imposition of a constructive trust.

> A constructive trust arises contrary to intention and in invitum, against one who, by fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice, concealment, or questionable means, or who in any way against equity and good conscience, either

> has obtained or holds the legal right to property which he ought not, in equity and good conscience, hold and enjoy. . . . Moreover, the party sought to be held liable for a constructive trust must have engaged in conduct that wrongfully harmed the plaintiff.

Id., 114, 680 A. 2d 1317, citing Aetna v. Union Trust, 230 Conn. 779, 791, 646 A. 2d 799

(1994). Internal quotations and citation to other authority omitted. Wendell v. Thurston is also

the authority relied on by the Appellate Court in the case plaintiff places heavy reliance on, Cadle

v. Gabel, 69 Conn. App. 279, 794 A. 2d 1029 (2002). It should be borne in mind that Cadle v.

Gable only held that a list pendens should not be discharged because the plaintiff established

probable cause that it might sustain a claim for a constructive trust, per the standard set out in

Wendell v. Thurston.

   Another principle applicable to the claim is that if there had been an adequate legal

remedy, had a legal action been timely brought, a proceeding in equity cannot be maintained.

"For example, in some cases in which a constructive trust has arisen where a proceeding at law

can be maintained for the property or its value and where the legal remedy is adequate, a

proceeding in equity cannot be maintained." Wendell v. Thurston, 120, 680 A. 2d 1320. Internal

quotation and citation omitted.

   As mentioned by the undersigned in the prior briefs on the motions to dismiss and strike

and in the argument above in Sec. III.3., above, as to any transfer that took place long ago which

was wrongful, the plaintiff had a perfectly fine legal action to attack it had it brought a timely

CUFTA and/or common-law fraudulent conveyance action. The assets relating to the

constructive trust claim involved transfers that took place in 1990 (the Jones home), 1991 (the

Murren home in Vermont) and 1994 (the Murphy & Murphy stock and the Van Zant Street

- 27 -

Condominium).  CUFTA and/or common-law fraudulent conveyance actions would have allowed money damages, avoidance of transfer and/or imposition of a constructive trust, had they been brought in a timely manner.   The plaintiff now seeks to circumvent the effect of CUFTA's statute of repose by characterizing the Fourth Counts as equitable causes of action that are not subject to statutes of limitation.  Since the plaintiff had a legal claim, the plaintiff should not be allowed to maintain what it characterizes as its equitable cause of action in the Fourth Counts.

Each property against which the constructive trust is sought to be imposed will be addressed individually.

### b.  The Jones Fairfield, CT home.

As set forth in Sec. II.2., above (pp. 5-6), Mr. Jones quit-claimed his interest in the home to Mrs. Jones in 1990, twelve years before the plaintiff brought its constructive trust claim seeking imposition of a constructive trust on the Jones' home.

Even though this aspect of the matter may be irrelevant because of how long ago the transfer occurred, there is no evidence of what equity, if any, there was in the home at the time, and there is no evidence of whether any equity in Mr. Jones' name was within any exemption limit.

The plaintiff now, presumably, seeks to impose a constructive trust on the home because Mr. Jones' salary was used to make the mortgage and real estate tax payments on the home.

As above, there was no proof that anything other than earnings exempt from levy was used to make the mortgage payments.  The evidence further showed that Mr. Jones was living in the home and supporting his spouse and family continuously.  The use of Mr. Jones' earnings to

make the mortgage and real estate tax payments may also be said to be in exchange for reasonably equivalent value (including Mr. Jones' own shelter), and in discharge of Mr. Jones' support obligation for his family, per U.S. v. Edwards, supra.

The plaintiff did not prove by clear and convincing evidence that a constructive trust should be imposed on the Jones Fairfield home.

   c.   **The Murren Trumbull, CT home.**

The analysis for the mortgage payment aspect of the Murren Trumbull home is the same as for the Jones Fairfield home. The Murren Trumbull home is different than the Jones home, however, in that Mr. Murren never owned or transferred any interest in the Trumbull home. The facts regarding this property are discussed in Sec. II.3, above (p. 6) and the Stipulation, ¶¶ 83-96. The Murren Trumbull home was purchased utilizing the cash proceeds obtained from the sale of Mrs. Murren's prior home that she owned herself before getting married to Mr. Murren. The only reason that can be asserted for the constructive trust against this home, therefore, is that it should be available to Mr. Murren's creditors because he used earnings exempt from levy to make the mortgage payments on it, while he lived in it and used it himself, and discharged his support obligation by making the payments to provide a home for his family.

There was no proof by clear and convincing evidence that a constructive trust lies against the Murren Trumbull home.

   d.   **The Murren Vermont home.**

The analysis for this property is very similar to the Jones' home. Mr. Murren quit-

claimed his interest in the Vermont home to Mrs. Murren in 1991, eleven years before the Fourth

Count was brought against Mrs. Murren. The statute of repose or limitations that would have

applied to a legal fraudulent transfer or conveyance claim as to this property expired long ago.

Presumably, the plaintiff is contending that a constructive trust should be imposed on this home

because Mr. Murren's earnings were used to pay the mortgage on it. But, as with the Jones'

home, the earnings that were used were exempt from levy, and Mr. Murren received reasonably

equivalent value in that he used the home himself continuously during all relevant periods.

Further with respect to the Murren homes, the combined monthly mortgage payments for both

homes were less than $2,500 per month at their highest level.

There was no proof by clear and convincing evidence that a constructive trust lies against

the Murren Vermont home.

### e.  The Murphy & Murphy stock.

Here, again, the transfer of the husbands' stock in Murphy & Murphy took place long ago,

in 1994, more than eight years before the Fourth Count was brought against Mrs. Jones and Mrs.

Murren.

The undersigned presumes that the plaintiff will claim that a constructive trust should be

imposed on the stock because Mr. Jones and Mr. Murren made all of the managerial decisions for

the company. It is conceded that Mr. Jones and Mr. Murren managed the company after the 1994

stock transfer, as its sole directors and officers. Just because Mr. Jones and Mrs. Murren were

the directors and officers of the company, however, does not negate the fact that Mrs. Jones and

Mrs. Murren owed its stock. Further, there was no evidence as to what the value of the stock in

Murphy & Murphy was at any time prior to the time when Mr. Jones and Mr. Murren were no longer indebted to the plaintiff because of their bankruptcies and at no time prior to the sale in 2001. The only testimony was that the assets were sold in conjunction with the covenants not to compete signed by Mr. Jones and Mrs. Murren, on what was really the sale of their individual books of business, and that the money allocated to the covenants not to compete and to the assets of the company was made for accounting and tax purposes. There was no evidence that the stock in the company, devoid of Mr. Jones and Mr. Murren continuing to work there had any value at any given point in time.

The plaintiff did not prove by clear and convincing evidence that there should be a constructive trust on the distribution Mrs. Jones and Mrs. Murren received in connection with the sale of the Murphy & Murphy assets in 2001.

### f.   Jomur Associates, LLC (the Van Zant Street Condominium).

The facts concerning Jomur are set forth in Sec. II.6., above, and in the Stipulation, pp. 9-13. Jomur was a limited liability company formed in 1994. Its owners/members were Mrs. Murren and Stacey Schlubach. Mrs. Schlubach is Mr. & Mrs. Jones' daughter and has been a long-standing employee of Murphy & Murphy. Jomur was a manager-managed limited liability company, and Mr. Murren was its official manager.

Prior to 1994, Mr. Jones and Mr. Murren, through a general partnership in which they were the sole partners, owned the office condominium on Van Zant Street in Norwalk, CT, in which Murphy & Murphy conducted its business. Apparently, the office condominium was initially purchased in 1986 for $700,000 and financed with a $600,000 mortgage, at a time when

the commercial real estate market was very high - "white hot", as testified to by Mr. Jones. (testimony of Wm. Jones, TR, pp 110-111). As is common knowledge, the commercial real estate market collapsed at the tail end of the 1980's and in the early 1990's. The mortgage on the office condominium went into foreclosure, and the condominium was worth far less than the debt encumbering it.

The Stipulation and evidence indicated that Jomur acquired the office condominium in 1994, subject to mortgage that could be satisfied for $112,500, with the only evidence of value for the condominium as of this point in time being Mr. Jones' testimony that it was worth about $100,000. (testimony of Wm. Jones, TR, pp. 110-111).

Murphy & Murphy remained in occupancy of the office condominium, paying rent to Jomur, which rent produced a very modest net income for Jomur's owners.

The condominium had not been marketed for sale, but in the spring of 2000, Mr. Murren in a conversation during lunch with a Mr. Winthrop Baum, the developer of the condominium project, suggested that Mr. Baum purchase the condominium and the owner or son of the owner of other units came along in the spring of 2000 and made an offer to purchase the condominium for $480,000. At that time, Mr. Jones asked his daughter Stacey if she would make a gift of a portion of her interest in Jomur to her mother, Mrs. Jones. Mrs. Schlubach made a gift of a partial interest in Jomur to her mother, the condominium was sold, and the proceeds were distributed to Jomur's owners, Mrs. Murren, Mrs. Schlubach and Mrs. Jones.

There is no evidence at all that when the office condominium was transferred from the Jones/Murren partnership to Jomur in 1994 there was any equity at all over and above the amount needed to satisfy the debt on the condominium. There is no evidence that Mr. Jones or

- 32 -

Mr. Murren made any transfer whatsoever to Jomur other than the quit-claim of the condominium in 1994. Murphy & Murphy paid rent to Jomur from 1994 to the time the condominium was sold in the summer of 2000.

The plaintiff may make an issue of the fact that Mr. Murren was the official manager for Jomur and that he and Mr. Jones made decisions for Jomur. That is no reason whatsoever to impose a constructive trust on Mrs. Jones' interest in Jomur and the distribution she received resulting from the sale of the condominium, to answer for the debt of Mr. Jones.

The plaintiff may make an issue of the fact that Mrs. Schlubach made a gift of a portion of her interest to her mother, Mrs. Jones, in response to a request by Mr. Jones. Likewise, that is no reason whatsoever to subject Mrs. Jones' interest in Jomur to a constructive trust to answer for the debt of Mr. Jones.

The bottom line is that if the plaintiff felt that the transfer of the office condominium from the Jones/Murren partnership was a fraudulent transfer, it could have brought a fraudulent transfer action against Jomur within four years of the date of transfer in 1994. There is no evidence at all that the transfer in 1994 was improper in any manner. Further, the transferee of the office condominium was Jomur Associates, LLC. Jomur is a limited liability company and a distinct legal entity. If the plaintiff has an issue with respect to anything that Jomur received, it should have made its claim against Jomur and not its individual owners/members.

There was no claim about piercing any entity veil as to Jomur, and, in any event, there was no reason to do so.

Lastly, the burden of proof is on the plaintiff to prove the grounds necessary for a constructive trust by clear and convincing evidence. The plaintiff failed to meet this burden

- 33 -

regarding the distribution Mrs. Jones and Mrs. Murren received of sales proceeds from Jomur.

## IV. **PROPOSED FINDINGS OF FACT**.

The defendants propose the following findings of fact:

1 - 139.  Stipulations of fact nos. 1 through 139 set forth in the joint trial management report dated October 2, 2003 be adopted as findings of fact.

140.    Service of process of the original complaint was made on Mrs. Jones and Mrs. Murren on February 26, 2000.

141.    The Fourth Counts of the complaints against Mrs. Jones and Mrs. Murren were added and served on the Mrs. Jones and Mrs. Murren on or about December 19, 2002.

142.    There was no evidence of any "Other Transfers", within the meaning of that term in the first three counts of the complaints.

143.    There was no evidence that any property other than wages that were exempt from levy pursuant to Conn. Gen. Stats. § 52-361a(f) were transferred by to or for the benefit of Mrs. Jones and Mrs. Murren by their husbands.

144.    To the extent any of Mr. Jones' wages were transferred to or for the benefit of Mrs. Jones:

      (a)    There was no evidence that the money was used for anything other than contemporaneously for reasonably equivalent value, in the name of household expenses;

      (b)    There was no evidence that any particular amount of money was used for anything other than Mr. Jones' own needs, including the mortgage and real

estate tax payments for the home that served as his personal home during all relevant periods;

      (c)    There was no evidence that any particular amount of money was used for anything other than Mr. Jones' obligation to support his family.

145.    To the extent any of Mr. Murren' wages were transferred to or for the benefit of Mrs. Murren:

      (a)    There was no evidence that the money was used for anything other than contemporaneously for reasonably equivalent value, in the name of household expenses;

      (b)    There was no evidence that any particular amount of money was used for anything other than Mr. Murren's own needs, including the mortgage and real estate tax payments for the homes that served as his personal homes during all relevant periods; and

      (c)    There was no evidence that any particular amount of money was used for anything other than Mr. Murren's obligation to support his family, with the exception of the payments on mortgage on the Vermont home.

146.    There was no evidence that Mr. Jones or Mr. Murren were engaged in any business or business transaction at any time after February 26, 1996 for which they intended to incur or should have reasonably believed they would incur debt beyond their ability to pay or left their assets unreasonably small.

## V.  PROPOSED CONCLUSIONS OF LAW.

The defendants proposed the following conclusions of law.

1.      Connecticut law applies to all substantive issues except for the law governing imposition of a constructive trust on the Murren home in Vermont.

2.      Vermont law governs the issue of imposition of a constructive trust on the Murren home in Vermont, but Vermont would apply the same legal principles governing constructive trusts as Connecticut.

3.      Connecticut law governs statutes of repose and statutes of limitation issues.

4.      The burden of proof for the fraudulent transfer claims represented by the First, Second and Third Counts of the complaints and for the constructive trust claims represented by the Fourth Count of the complaints is on the plaintiff, to establish all elements of each of the causes of action by clear and convincing evidence.

5.      As to the Fourth Count, the court reconsiders its rulings on the motions to dismiss and motion to strike and finds that the cause of action represented by the Fourth Count is barred or has been extinguished because:

(a)      An action or actions at law could have been brought at a prior point in time to obtain the same relief sought by the plaintiff in the Fourth Count.

(b)      The action or actions at law would have been actions under CUFTA or common-law fraudulent conveyance actions.

(c)      The Fourth Count has been brought beyond the time allowed under both under CUFTA, per C.G.S. § 52-552j (four years from the date of transfer), and the Connecticut statute of limitations applicable to fraudulent conveyances,

- 36 -

C.G.S. § 52-577 (three years).

6.    As to the First Count against Mrs. Jones, the plaintiff did not establish all of the elements of C.G.S. 52-552e(a)(1) by clear and convincing evidence because:

   (a)    It did not establish by clear and convincing evidence any particular portion of Mr. Jones' salary checks that were utilized constituted an "asset" within the meaning of C.G.S. § 52-552(b)(2), as 75% of said salary checks were exempt from levy per C.G.S. § 52-361a(f);

   (b)    It did not establish by clear and convincing evidence that Mr. Jones transferred an "asset" with "actual intent" in Mr. Jones to delay, hinder or defraud an existing creditor.

7.    As to the First Count against Mrs. Murren, the plaintiff did not establish all of the elements of C.G.S. 52-552e(a)(1) by clear and convincing evidence because of the following, either one of which being sufficient grounds:

   (a)    It did not establish by clear and convincing evidence any particular portion of Mr. Murren's salary checks that were utilized constituted an "asset" within the meaning of C.G.S. § 52-552(b)(2), as 75% of said salary checks were exempt from levy per C.G.S. § 52-361a(f); and

   (b)    It did not establish by clear and convincing evidence that Mr. Murren transferred an "asset" with "actual intent" in Mr. Murren to delay, hinder or defraud an existing creditor.

8.    As to the Second Count against Mrs. Jones, the plaintiff did not establish all of the elements of C.G.S. 52-552e(a)(2) by clear and convincing evidence because of the following,

either one of which being sufficient grounds:

  (a) It did not establish by clear and convincing evidence any particular portion of Mr. Jones' salary checks that were utilized constituted an "asset" within the meaning of C.G.S. § 52-552(b)(2), as 75% of said salary checks were exempt from levy per C.G.S. § 52-361a(f); and

  (b) It did not establish by clear and convincing evidence that that Mr. Jones was engaged in any business or business transaction at any time after February 26, 1996 for which he intended to incur or should have reasonably believed he would incur debt beyond his ability to pay or left his assets unreasonably small.

9. As to the Second Count against Mrs. Murren, the plaintiff did not establish all of the elements of C.G.S. 52-552e(a)(2) by clear and convincing evidence because of the following, either one of which being sufficient grounds:

  (a) It did not establish by clear and convincing evidence any particular portion of Mr. Murren's salary checks that were utilized constituted an "asset" within the meaning of C.G.S. § 52-552(b)(2), as 75% of said salary checks were exempt from levy per C.G.S. § 52-361a(f); and

  (b) It did not establish by clear and convincing evidence that that Mr. Murren was engaged in any business or business transaction at any time after February 26, 1996 for which he intended to incur or should have reasonably believed he would incur debt beyond his ability to pay or left his assets unreasonably small.

10.     As to the Third Count against Mrs. Jones, the plaintiff did not establish all of the elements of C.G.S. 52-552f by clear and convincing evidence because of the following, either one of which being sufficient grounds:

(a)     It did not establish by clear and convincing evidence any particular portion of Mr. Jones' salary checks that were utilized constituted an "asset" within the meaning of C.G.S. § 52-552(b)(2), as 75% of said salary checks were exempt from levy per C.G.S. § 52-361a(f); and

(b)     It did not establish by clear and convincing evidence that reasonably equivalent value was not received in exchange for any transfer.

11.     As to the Second Count against Mrs. Murren, the plaintiff did not establish all of the elements of C.G.S. 52-552f by clear and convincing evidence because of the following, either one of which being sufficient grounds:

(a)     It did not establish by clear and convincing evidence any particular portion of Mr. Murren's salary checks that were utilized constituted an "asset" within the meaning of C.G.S. § 52-552(b)(2), as 75% of said salary checks were exempt from levy per C.G.S. § 52-361a(f); and

(b)     It did not establish by clear and convincing evidence that reasonably equivalent value was not received in exchange for any transfer.

12.     As to the Fourth Count against Mrs. Jones, regarding the Jones home in Fairfield, a constructive trust will not be imposed on it because the plaintiff did not prove grounds justifying it by clear and convincing evidence, for reasons including the following:

(a)     Mr. Jones used the home at all times as his personal residence, and

- 39 -

there was no clear and convincing evidence that: the portion of Mr. Jones' salary

that was used for the mortgage and real estate tax payments was anything but

exempt wages per C.G.S. § 52-361a(f); and the mortgage and tax payments

represented anything but reasonably equivalent value as the housing cost of

housing Mr. Jones and his family or represented something other than fulfillment

of Mr. Jones' support obligation;

      (b)     Mrs. Jones owns the home and has owned it solely since 1990;

      (c)     Once either three or four years passed from 1990, the right of action

to challenge the transfer lapsed;

      (d)     There was no clear and convincing evidence that utilization of Mr.

Jones' wages to make mortgage and real estate tax payments on the dwelling that

he personally used at all relevant times by he and his family constituted any wrong

or form of unconscionable conduct, artifice, concealment or questionable means by

which Mrs. Jones held title to the home and should have to make any portion of

the home available to answer to the creditors of Mr. Jones.

13.     As to the Fourth Count against Mrs. Murren, regarding the Murren home in

Trumbull and the Murren home in Vermont, a constructive trust will not be imposed on

them  because the plaintiff did not prove grounds justifying it by clear and convincing

evidence, for reasons including the following:

      (a)     Mr. Murren used the homes at all times as his personal residence

and a vacation home, and there was no clear and convincing evidence that: the

portion of Mr. Jones' salary that was used for the mortgage and real estate tax

- 40 -

payments was anything but: exempt wages per C.G.S. § 52-361a(f), the mortgage

and tax payments represented anything but reasonably equivalent value as the

housing cost of housing Mr. Murren and his family; and, as to the Trumbull home,

represented something other than fulfillment of Mr. Jones' support obligation;

      (b)    Mrs. Murren owns the homes, having always owned the home in

Trumbull and having owned the home in Vermont solely since 1991;

      (c)    Once either three or four years passed from 1991, the right of action

to challenge the transfer of the interest in the Vermont home lapsed;

      (d)    There was no clear and convincing evidence that utilization of Mr.

Murren' wages to make mortgage and real estate tax payments on the dwellings

that he personally used at all relevant times by he and his family constituted any

wrong or form of unconscionable conduct, artifice, concealment or questionable

means by which Mrs. Murren held title to the home and should have to make any

portion of the home available to answer to the creditors of Mr. Murren.

14.    As to the Fourth Count against Mrs. Jones and Mrs. Murren regarding the stock in

Murphy & Murphy, a constructive trust will not be imposed on it because the plaintiff did not

prove grounds justifying it by clear and convincing evidence, for reasons including the

following:

      (a)    Mrs. Jones and Mrs. Murren owned the stock since 1994;

      (b)    The fact that their husbands were the sole directors and officers of

the company, or that anyone else could have been, for that matter, does not vitiate

a person's ownership interest in the stock of the company;

(c)    There was no evidence that the salaries paid by the company to Mr. Jones and Mr. Murren were exorbitant or unreasonable, in any manner;

(d)    There was no evidence that the stock had any value at the time it was transferred in 1994;

(e)    Even if the stock had any value in 1994, once four years passed, any action to challenge the transfer was extinguish, per C.G.S. § 52-552j; and

(f)    There was no clear and convincing evidence that Mrs. Jones' and Mrs. Murren's ownership of the stock constituted any wrong or form of unconscionable conduct, artifice, concealment or questionable means by which Mrs. Jones and Mrs. Murren held title to the stock and should have to make any portion of it available to the creditors of Mr. Jones and Mr. Murren.

15.    As to the Fourth Count against Mrs. Jones and Mrs. Murren regarding the distribution from Jomur Associates, LLC, a constructive trust will not be imposed on it because the plaintiff did not prove grounds justifying it by clear and convincing evidence, for reasons including the following:

(a)    Neither Mr. Jones nor Mr. Murren ever owned an interest in Jomur.

(b)    The Jones/Murren partnership transferred the Van Zant Street condominium to Jomur in 1994;

(c)    There was no evidence that the office condominium had any value over and above the amount needed to pay the mortgage to which it was subject at the time it was transferred to Jomur;

(d)    Even if the condominium had any excess value in 1994, once four

- 42 -

years passed, any action to challenge the transfer had to be brought within four years, per C.G.S. § 52-552j;

(e)    The fact that Mr. Murren was the manager of the limited liability company and that Mr. Murren and Mr. Jones, or anyone else, for that matter, made decisions regarding its operation does not vitiate a person's ownership interest in the limited liability company;

(f)    Any action challenging a transfer to Jomur should have been brought against Jomur, which is a separate legal entity, and not any owners of it; and

(g)    There was no clear and convincing evidence that Mrs. Jones' and Mrs. Murren's ownership of membership interests in Jomur constituted any wrong or form of unconscionable conduct, artifice, concealment or questionable means by which Mrs. Jones and Mrs. Murren held their membership interest and should have to make any portion of them available to the creditors of Mr. Jones and Mr. Murren.

- 43 -

## CERTIFICATE OF SERVICE

This to certify that a copy of the foregoing was served via U.S. Mail, postage prepaid, on February 13, 2004 to the following counsel of record:

Paul N. Gilmore, Esq.
Updike, Kelly & Spellacy, P.C.
One State Street
P.O. Box 231277
Hartford, CT 06213-1277
Tel.: (860) 548-2600
Fax:  (860) 548-2680

Paul A. Sobel
Green & Gross, P.C.

16.     For the foregoing reasons, the judgment shall enter against the plaintiff on all counts in both complaints.

The defendants
Grace Jones and Dorothy Murren

by _____
Paul A. Sobel, their attorney
Green & Gross, P.C.
1087 Broad Street
Bridgeport, CT., 06604
Tel:  (203) 335-5141
Fax:  (203) 367-9964
Email: psobel@gglaw.net
Federal Bar No.  ct11452

- 44 -