# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT
### (Bridgeport)

| | |
|---|---|
| **CADLE COMPANY** | ) **CIVIL ACTION** |
| | ) |
| **v.** | ) **MASTER DOCKET NO 3:00cv316 (WWE)** |
| | ) |
| **GRACE JONES** | ) **PLEADING APPLCABLE TO:** |
| | )     **NO: 3:00cv316 (WWE)** |
| **CADLE COMPANY** | )     **NO: 3:00cv317 (WWE)** |
| | ) |
| **v.** | ) |
| | ) |
| **DOROTHY MURREN** | ) **MARCH 22, 2004** |

## <u>DEFENDANTS' POST TRIAL REPLY BRIEF</u>

### TABLE OF CONTENTS

I.   The Motion for Reconsideration. ........................................................................... 1

II.  The Fourth Counts - The Constructive Trust Claims. ............................................. 4

III  The First, Second and Third Counts - The Fraudulent Transfer Claims. .............................. 9

### <u>Statement Regarding Applicability to Cases</u>

This brief is applicable to both cases, No: 3:00cv316 (WWE) and No: 3:00cv317 (WWE).

## I. **The Motion for Reconsideration.**

The Cadle post trial brief begins with treatment of the defendants' motion to reconsider the court's rulings on the motions to dismiss and motion to strike.  (Cadle Brief, pp. 3-8).

Although Cadle's discussion mentions other issues the defendants previously raised on the motions to dismiss and strike, such as whether CUFTA displaces Cadle's constructive trust claims (p. 3), the defendants are not raising any other issue on their motion to reconsider besides the issue of whether the four year CUFTA statute of repose (C.G.S. § 52-552j) and the three year tort statute of limitations (C.G.S. § 52-577) are applicable to the Cadle's constructive trust claim - because of the Russell v. Todd[1] principle cited by Judge Covello in Stafancin v. Nevada Club.[2]

Cadle's brief virtually dismisses Russell v. Todd as a U.S. Supreme Court decision that is not controlling because the instant action is based on diversity of citizenship.  (pp. 5-6)  Cadle also remarks that the plaintiff in Stefancin v. Nevada Club was pro se, the parties there did not raise the Russell v. Todd issue, Judge Covello raised it sua sponte, and this point of law appears only at the tail end of a lengthy analysis devoted to other issues.  (p. 5)  But these points are irrelevant to whether the Russell v. Todd principle is a valid and applicable rule of law.  And Cadle's brief fails to ascertain that, in fact, Connecticut follows the Russell v. Todd principle, with the actual principle followed by Connecticut being more expansive than the quote in Russell v. Todd.

---

[1]  309 U.S. 280, 289 (1940)

[2]  The defendants do not waive the claims they made in the motions to dismiss and in the special defenses that were stricken.  They are mindful, however, of the limited grounds that were brought to the court's attention for reconsideration, the rule enunciated by Judge Covello in Stefancin v. Nevada Club, and have raised only this ground on the motion for reconsideration.

Under Connecticut law:

> Where a party seeks equitable relief pursuant to a cause of action that would also allow that party to seek legal relief, concurrent legal and equitable jurisdiction exists, and the statute of limitations that would bar the legal claim also applies to bar the legal claim.

Dowling v. Finley, 49 Conn. App. 330, 335 (1998), rev'd on other grounds, 248 Conn. 364 (1999), citing, inter alia, Russell v. Todd.

Cadle characterizes the Russell v. Todd issue as whether the constructive trust claim is a pure and distinct equitable cause of action and/or whether it has brought a parallel legal claim. (Cadle Brief, 6-7). But these are not the issues.

Per Dowling v. Finley, if Cadle could have brought a legal claim, had it done so in a timely fashion, for the same relief it is seeking on its equitable cause of action, the statute of limitations applicable to the legal claim will apply to the equitable claim. A plaintiff cannot circumvent a statute of limitations by bringing an equitable cause of action for an alleged wrong for which it could have sought the same relief on a legal claim had it brought the legal claim in a timely fashion.

Looking at Cadle's constructive trust claims, the conduct complained of regarding the Van Zant Street Property centers on the transfer of it in 1994.[3]  (Cadle Brief, pp. 10-11)  If Cadle believed there was something improper with this transfer, it could have brought a fraudulent transfer claim under CUFTA, had it been timely commenced.  If it had proven its claim, had it

---

[3]  Although Cadle argues that its constructive trust claim has nothing to do with a fraudulent conveyance claim, it spends four pages arguing the circumstances of the transfer of the property from partnership comprising Mr. Jones and Mr. Murren to Jomur in 1994, as if setting about to prove a fraudulent conveyance. (Cadle Brief, pp. 10-13)  Yet, among other things, there is no evidence of the market value of the property at the time was anything but the amount the lender would accept for a mortgage pay-off.  As distinguished from Cadle v. Gabel, there was no evidence that there was any equity in the Jomur property.

brought such an action, then Cadle could have obtained damages, avoidance of the transfer, imposition of a constructive trust or any other relief the circumstances required. C.G.S. § 52-552h

Similarly, the Cadle constructive trust claim against 2001 distribution to defendants on their Murphy and Murphy stock is based on Cadle's complaint regarding the circumstances of the transfer of the stock that took place in 1994.[4] (p. 17) Likewise, if Cadle believed there was something improper with this transfer, it could have attacked it on a CUFTA claim, for which a much wider array of relief would have been available than a constructive trust.

Similar, too, is the claim against the Jones residence. Cadle's complaint regarding it begins with Mr. Jones' quit claim to Mrs. Jones in 1990 (p. 20-21) This transaction pre-dated CUFTA, and could have been attacked on a legal action under pre-CUFTA Connecticut fraudulent transfer law. The three-year tort limitations of action period under Conn. Gen. Stats. § 52-577 would have been applicable to it.

Cadle contends that the court has considered the issue of the <u>Russell v. Todd</u> principle twice before. (p. 8) This is incorrect. The defendants raised this issue only in the memorandum in opposition to Cadle's motion to strike the special defenses. In their memorandum in opposition to the motion to strike, the defendants cited <u>Dowling v. Finley</u>, 49 Conn. App. 330 (1998), <u>rev'd on other grounds</u>, 248 Conn. 364 (1999). But the court's decision on the motion to strike did not appear to address the <u>Dowling v. Finley</u> argument. Interestingly, <u>Russell v. Todd</u>, the U.S. Supreme Court case, cited by Judge Covello in <u>Stefancin v. Nevada Club</u>, was included in the authority cited by the Connecticut Appellate Court in <u>Dowling v. Finley</u>, espousing Connecticut law on the same issue.

---

[4]    Although Cadle complains about the circumstances of the stock transfers in 1994, it introduced no evidence that the stock had any value when it was transferred.

If the conduct of which Cadle complains, the 1990 quit claim on the Jones house, the 1994 transfer of the Murphy & Murphy stock, the 1994 transfer of the Van Zant Street office condominium to Jomur, etc., could have been raised on a legal cause of action, then the CUFTA statute of repose will apply to the constructive trust as to all claims for which a CUFTA action could have been brought, and the three year C.G.S. § 52-577 tort statute of limitations will apply to the constructive trust claim as to all claims for which a non-CUFTA fraudulent transfer action could have been brought.

As set forth in the defendants post trial brief, a CUFTA action could have been brought as to all transfers, direct or indirect, that the plaintiff complains of, with the exception that a legal fraudulent conveyance action could have been brought as to the quit claim on the Jones house in 1990, as it pre-dated CUFTA.

The CUFTA statute of repose and C.G.S. § 52-577 apply to the constructive trust claims, and in view of the time periods set forth in the stipulation, they extinguish and bar the constructive trust claims.

## II.  **The Fourth Counts - The Constructive Trust Claims.**

Most of Cadle's brief is devoted to what it claims to be a recitation of the facts concerning its constructive trust claims. (pp. 8-26)  There is an introduction on pages 8-10, which includes an argumentative contention that all of the activities Cadle complains of are part of a comprehensive scheme whereby the husbands of the defendant wives really owed everything - the houses, the Van Zant Street Property and the Murphy & Murphy stock.

The first property addressed is the Van Zant Street Property.  (pp. 10-16)  Cadle recites circumstances surrounding the pay-off of an "underwater" mortgage and acquisition of the

property by Jomur in 1994. (pp. 11-12). Yet there was no evidence that there was any equity in the property when it was acquired by Jomur in 1994 or that it was acquired for anything less than fair market value. There is mention that Ms. Schlubach did not know the details of the acquisition transaction. (p. 13) There is also the allegation that Mrs. Jones did not know a portion of her daughter Ms. Schulbach's interest was transferred to her in 2000. But that Ms. Schlubach did not know the details is irrelevant to the fact that she was a 50% owner. The allegation about what Mrs. Jones or Mrs. Murren knew at any time is also misplaced. Mrs. Murren and Ms. Schlubach signed the formation documents for Jomur in 1994, and all parties, including Mrs. Jones, signed the documents evidencing Mrs. Jones admission to Jomur in 2000. What is true regarding Mrs. Jones and Mrs. Murren is that they did not understand many legalities involved with business transactions. For example, they did not know the difference between a partnership, a limited liability company and a corporation. But that does not disqualify someone from being a member of a limited liability company or owning stock in a corporation.

The Murphy & Murphy stock is discussed on pages 16-20. Here, again, the conduct Cadle complains of begins with the transfer of the stock to Mrs. Jones and Mrs. Murren in 1994. Yet there was no evidence at all that the stock had any value when it was transferred.

Cadle mentions that Mrs. Jones and Mrs. Murren never received dividends or had any involvement in the management of the business. (p. 18) But the evidence was that Mr. Jones and Mr. Murren received a regular salary, and there was no evidence that there was any unreasonable salary paid to either Mr. Jones or Mr. Murren that would have represented profit that could have been paid to the shareholders as dividends. Likewise, there was no evidence that Mr. Jones or Mr. Murren did anything improper in their management of Murphy and Murphy as directors and

officers.  And that shareholders of a corporation are not directors or officers of it does not in the least vitiate their position as shareholders.

Cadle discusses the Jones home on pages 20-24.  Here again, Cadle's complaint begins with the quit claim deed from Mr. Jones to Mrs. Jones all the way back in 1990, and although Cadle argues in opposition to the statute of limitations claim that its constructive trust claim has no relation to a fraudulent conveyance claim, it begins its discussion of the claim against the Jones home by reciting elements of a fraudulent conveyance claim dating back to 1990 - that Mr. Jones gave a quit claim deed to the house (twelve years before the claim was made in the fourth court) for no consideration, at a time when he was liable on the Great Country debt, when he was insolvent and for no consideration.  Despite its arguments in the statute of limitations section of its brief, what Cadle is complaining of on the property transfers is exactly alleged fraudulent transfers.

The facts regarding the Murren homes are covered by reference to the stipulation and only take up one paragraph of the Cadle brief.  (p. 25).

The next section of the brief is devoted to the legal argument on constructive trusts.  (pp. 26-30)  Cadle cites Cadle v. Gabel, 69 Conn. 279 (2002) as recognizing the constructive trust cause of action on facts claimed to be similar to the instant case (p. 27) and then cites a number of out-of-jurisdiction cases standing for the proposition that Mr. Jones and Mr. Murren owed equitable title to the assets in question.  (Pages 28-30).

The "similar facts" alleged to exist in Cadle v. Gabel is the transfer of a house to a spouse but nonetheless retaining an equitable ownership interest.  (p. 27)  First, Cadle v. Gabel only involved a lower court's decision on a probable cause hearing.  The issue was whether Cadle established probable cause to succeed on a future trial on the merits for an action in unjust

- 6 -

enrichment. A constructive trust was the remedy sought on the unjust enrichment cause of action. Cadle v. Gabel, 69 Conn. App. 279, 293. Second, Cadle v. Gabel involved much different conduct than in the instant case. In Cadle v. Gabel, the court found that the husband debtor, in collusion with another, purchased mortgage debt on the house in which he was living, at not only a deep discount to the full amount of the debt, but at a deep discount to the market value of the home encumbered by the mortgage debt. The court found that the debtor husband then utilized the debt to consummate what then turned out to be a friendly foreclosure and, by this means, in a relatively contemporaneous transaction, the debtor husband, by use of his funds that he secured, arranged for his wife to acquire title in the home in which they were living, creating equity in his wife, through the use of his funds, in a relatively contemporaneous transaction, in the amount of at least $215,000, and possibly $445,000. There is no similarity between the Cadle v. Gabel facts and the present case.

It is also to be noted that Cadle brought fraudulent transfer claims in the same complaint, which were stricken, and although the court did not rule on the fraudulent transfer claims, it noted that a decision it placed great emphasis on, Voest-Alpine Trading v. Vantage Steel, 919 F. 2d 206 (3rd Cir. 1990) was decided on the basis of the complained of conduct constituting a fraudulent conveyance under Pennsylvania law. Cadle v. Gabel, note 13. It is also to be noted that Cadle v. Gabel was brought within the statute of repose period under CUFTA.

There is no evidence in the cases at hand that there were any transactions whereby either Mr. Jones or Mr. Murren obtained any funds to free up any equity in an asset that was then placed in the names of their spouses and which Mr. Jones and Mr. Murren continued to live in or enjoy the beneficial ownership of.

The out-of-jurisdiction cases cited by Cadle are:  In re. Elliot, 83 F. Supp. 771 (E.D. Pa. 1948); In re. Vechionne, 407 F. Supp. 609 (E.D. N.Y. 1976); In re. Gugliada, 20 B.R. 524 (Bankr. S.D.N.Y. 1982); and In re. Kaiser, 32 B.R. 701 (Bankr. S.D. N.Y 1983), aff'd, 722 F. 2d 1574 (2nd Cir. 1983).  (pp. 28-29).  These cases are all cited for the proposition that if a husband makes mortgage payments on a house where title is held in the name of his spouse, the husband will be treated being an equitable owner of the house.  The context in which the issue arose in the first three cases is whether a debtor husband had an interest in property that should have been disclosed in his bankruptcy petition.  The first case, In re. Elliot, it is respectfully submitted, was decided in a different era and is also based on fraudulent conveyance law.  This case was decided under Pennsylvania law in the 1940's.  In that day and age, a home was purchased for $2,000, with a mortgage loan of $1,600, and title to the home being taken in the name of Mrs. Elliot.  Mr. Elliot's wages were used to pay off the mortgage, which was paid in the span of less than two years.  Pennsylvania law at the time placed the burden of going forward with evidence on the defendant wife, it was held that the transfers regarding the mortgage payments were fraudulent as to the husbands creditors, the wife therefore held title subject to a constructive trust in favor of the husband's creditors, and the husband, therefore, had an interest in the property which he failed to disclose on his bankruptcy petition.  Vechionne was also decided on the issue of the debtors having a secret interest in property held in their wives names.  In Vechionne, however, substantially more than just money for household expenses was transferred into the names of the wives, one of the debtors testified that the saved up money his wife was holding belonged to him, that portions of the save-up money were frequently withdrawn and turned over to the husbands, with the explanation in court that advances of funds into the names of the husbands were loans, but with no documentation as to any particular loan or the terms thereof.  Although Vechionne

does not mention it, the issue of an equitable interest would have presumably been decided under New York law. In re. Gugliada relies on Elliot and Vechionne and is also, presumably, decided as a matter of New York law.

As pointed out by Cadle, In re. Kaiser was decided on the basis of fraudulent conveyance law and not equitable title.

As mentioned above, the base case, In re. Elliot, was decided as a fraudulent conveyance case, in which a husband's earnings were used to completely pay off a mortgage of 80% of the value of a house within a less than two-year period.

To adhere to Cadle's argument would mean that all houses in the name of the non-wager earner on a single income family would be freely available to creditors of the wager earner spouse. It would matter not how long ago title was placed in the spouse's name.  It would matter not that the wager earner's income is used only to the extent of regular mortgage payments and upkeep expenses.  It would matter not that the wager earner is making what amounts to contemporaneous payments reasonably equivalent to the rental value of the home that the wager earner is living in himself or herself.  And it would matter not that the wage-earner spouse is discharging his or her duty of support.  To take the plaintiff's argument to its logical consequence, even if a home were owned jointly, on a single income family, under the plaintiff's argument, the non wager earner's half interest in a house jointly owned would also be freely available to creditors of the wage earner spouse, no matter how far in the past the house had been placed in joint names, etc.

### III.  The First, Second and Third Counts - The Fraudulent Transfer Counts Counts.

Cadle stated in its post trial brief that it is not pursuing the Second Count against Mrs. Jones or the First, Second or Third Counts against Mrs. Murren.  (p. 35)  One the first three counts

against both defendants, therefore, only the First and Third Counts against Mrs. Jones remain. Cadle's legal argument on these counts is set forth on pages 34-35 of its brief.

Cadle brief states that it is abandoning the first three counts against Mrs. Murren for the reason that the use of Mr. Murren's salary for mortgage payments constitutes a transfer to satisfy a debt on which Mr. Murren is obligated, and, accordingly the transfers were for value and not fraudulent. (p/ 35) The only difference between Mr. Murren's salary being used to pay his mortgage debt and Mr. Jones' salary being used to pay his mortgage debt is that Mr. Jones' salary was first deposited into Mrs. Jones' checking account, and, relatively contemporaneously, then used to pay the mortgage and other household expenses. There was no money built up in Mrs. Jones checking account, and all of Mr. Jones' salary was used for household expenses within approximately the same month it was deposited. The use of Mr. Jones' salary should be treated in the same manner as Mr. Murren's salary.

Further, the Cadle brief does not address the issue that there was no evidence that any of Mr. Jones' salary was used on mortgage payments or real estate tax in excess of that portion which was exempt from garnishment under non bankruptcy state law, as set forth in the defendants' brief, that Mr. Jones, himself, obtained housing in exchange for the household mortgage, tax and maintenance payments and that Mr. Jones was also discharging his obligation of support, per U.S. v. Edwards, 572 F. Supp 1527, 1536-37 (D. Conn. Meskill, J., 1983).

Lastly, the Cadle brief does not address the burden of proof it must sustain for fraudulent transfer claims. Cadle's burden was clear and convincing proof of each element of each cause of action. For the reasons set forth above, Cadle did not sustain its burden, and judgment should be entered in favor of the defendants.

- 10 -

The defendants
 Grace Jones and Dorothy Murren

by _____
Paul A. Sobel, their attorney
Green & Gross, P.C.
1087 Broad Street
Bridgeport, CT., 06604
Tel:  (203) 335-5141
Fax:  (203) 367-9964
Email: psobel@gglaw.net
Federal Bar No.  ct11452

## CERTIFICATE OF SERVICE

This to certify that a copy of the foregoing was served via U.S. Mail, postage prepaid, on

March 22, 2004 to the following counsel of record:

Paul N. Gilmore, Esq.
Updike, Kelly & Spellacy, P.C.
One State Street
P.O. Box 231277
Hartford, CT 06213-1277
Tel.: (860) 548-2600
Fax:  (860) 548-2680

_____
Paul A. Sobel
Green & Gross, P.C.

- 11 -