# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT
### (Bridgeport)

| | | |
|---|---|---|
| THE CADLE COMPANY<br>　　　　Plaintiff, | ) | CIVIL ACTION |
| | ) | |
| vs. | ) | MASTER DOCKET NO.<br>3:00 CV-00316 (WWE) |
| | ) | |
| GRACE JONES | ) | PLEADING APPLICABLE TO: |
| | ) | 3:00 CV-00316 (WWE) |
| 　　Defendant. | ) | 3:00 CV-00317 (WWE) |
| | ) | |
| | ) | |
| THE CADLE COMPANY<br>　　　　Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| DOROTHY MURREN, | ) | |
| | ) | |
| 　　Defendant | ) | |
| | ) | MARCH 22, 2004 |

## PLAINTIFF'S REPLY BRIEF

The judgment debtors (Defendants' respective husbands) financed the Defendants'

lifestyles through their industry as the "equitable owners" and operators of Murphy & Murphy.

The remuneration that they elected to receive was in the form of executive salaries, through

which they extracted from the company all of its net cash flow.  A major theme of the

Defendants' Post-Trial Memorandum ("Def. Mem.") is the brand new claim that their husbands' salaries, or the proceeds thereof, cannot have been fraudulently transferred, or comprise a component of a constructive trust claim, because of the limitations imposed on wage executions by Connecticut's wage execution statute, Conn. Gen. Stat. Sec. 52-361a. Def. Mem. at 15-22, 28-30. Respectfully, the wage execution statute is inapplicable.

The statute is self-limited to applications for a wage execution, the means by which a creditor requires the employer to withhold, and pay over to it, a percentage of the judgment debtor's wages. The statute does not apply to proceeds of a judgment debtor's salary after the earnings have been paid to the judgment debtor, by check, direct deposit or otherwise. Instead, Conn. Gen. Stat. Sec. 52-352b defines what qualifies as exempt property. Strikingly absent from that exhaustive list are a person's wages or proceeds of wages. There is no "line item" exempting wages, or proceeds of wages, over and above the amount payable directly by an employer on wage execution (or otherwise), and for good reason. If that were the law, then only independently wealthy people would have their assets subject to execution by a judgment creditor; all that the rest of us have is a product or proceed of our wages. It is telling that the legislature did address a judgment debtor's wages in the property exemption statute, but it did so only with respect to "wages earned by a public assistance recipient under an incentive earnings or similar program." Conn. Gen. Stat. Sec. 52-352b. See, <u>Blumenthal v. Barnes</u>, 261 Conn. 434,

463 (2002) (reaffirming the maxim of statutory construction: *Inclusio unius est exclusio alteris).* No other wages qualify as exempt property, and the Defendants do not contend that their husbands were public assistance recipients.

The Court may consult the Superior Court's "Exemption Claim Form Bank Execution" (copy attached), which alerts the judgment debtor that the money in his account may be exempt from execution. The form provides a "checklist and description of exemptions established by law." Wages, or proceeds of wages, will not be found on that list, except with respect to wages earned by a public assistance recipient. Item number 9, the $1,000.00 "wild card" exemption, does not apply as against debts of a judgment debtor incurred before the statute was amended to preserve the minimum $1,000.00 balance in bank accounts (which amendment is Public Act 93-301, effective as of October 1, 1993). See, Petronella v. Venture Partners, Ltd., 2003 Conn. Super. LEXIS 667 (March 7, 2003) (Shapiro, J.) (copy attached). Moreover, a garnishment of monies in a bank account (akin to a bank execution), is not tantamount to an attachment of wages. Michael's Jewelers v. Handy, 6 Conn. Cir. Ct. 103, 106 (App. Div. 1969).

The Court should consider In re: Kontrick, 295 F. 3d 724 (7th Cir. 2002), wherein the Seventh Circuit upheld the entry of summary judgment in favor of a creditor, holding that a debtor who took his name off of a bank account, which account thereafter was titled only in his wife's name, and thereafter continued to deposit his regular paycheck into the wife's account

(with which monies the family bills were paid), intentionally perpetrated a scheme of transferring his assets to his spouse with an intent to hinder, delay and defraud his creditors. Id. at 735-38. The debtor was consequently denied his discharge under 11 U.S.C. Sec. 727. Id. at 735-38.[1]

The Defendants also claim that value was received by the judgment debtors because the money was used to support the common life shared between them and the Defendants (Def. Mem. 18-20, 25-30). This argument is flawed for several reasons. First, nothing in the Uniform Fraudulent Transfer Act (the "Act") suggests that the diversion of monies by the judgment debtor to an insider, which are thereafter **used** to benefit both the insider and the judgment debtor, somehow constitutes the **receipt** by the debtor-transferor of reasonably equivalent value. A debtor's use of assets diverted to an insider does not qualify as the receipt of valuable consideration for the transfer/diversion; rather, for there to be effective consideration, "the relevant inquiry is whether the consideration received was in a form available for execution by creditors, i.e., an assessment of the extent to which such creditors were deprived of the value of the diverted property." The Cadle Company v. Frank F. Ogalin, Case No. 00-32944 (ASD),

---

[1] The case identified in Kontrick, and contended by the appellant therein to be persuasive authority in his favor, In re: Ratner, 132 B.R. 728 (Bankr. N.D. Ill. 1991), is inapposite to our fact pattern because in that case the debtor's bank account was involuntarily closed, he was unable to open a new account, and thus deposited his paycheck into his wife's account. Also, the Court should be aware that, like Connecticut, in Illinois a judgment creditor wage execution is limited to a percentage of the judgment debtor's earnings. See, Sec. 735 ILCS 5/2-1402 (copy attached).

Adv. Pro. No. 00-3188 (Bankr., D. Conn. 2004, Dabrowski, J.) (copy attached).  Second, the

retention of possession or control of property transferred is one of the classic badges of fraud.

Conn. Gen. Stat. Sec. 52-552e.  Use of transferred property for the common benefit of the

transferor and the insider transferee is probative of such possession and control.  And that is just

the point: the judgment debtors are shielding assets to support and maintain the respective

couples' lifestyles and to build-up wealth in the name of their non-debtor spouses.  The scheme

here is evident: the judgment debtors clearly structured their financial affairs in such a way as to

hold their creditors at bay (through legal title machinations) and yet enjoy a good lifestyle for

themselves and the Defendants.

There is no "necessity" exception to the Act (Def. Mem. at pp. 19-22, 25, 29).  Even if

there were, such would be an affirmative defense, and none was pleaded.  Moreover, a

$500,000.00 home is not a necessity; nor is a ski chalet in Vermont.  Such fall into the category

of wants, not needs.  See, Conn. Gen. Stat. Sec. 46b-37 (the duty of support does not include the

purchase of a home; as respects housing, it includes only the rental of a dwelling unit).

The Defendants give far too much weight to U.S. v. Edwards, 572 F. Supp. 1527 (D.

Conn. 1983).  See, Def. Mem. at pp. 19-20.  Judge Meskill found there was no constructive fraud

because an essential element, insolvency, was lacking.  The judge also found no intentional fraud

because the transfer of the home was made to fulfill a condition placed on the purchase-money down payment that was gifted to the transferee by her father.

The Defendants' claim that the Fourth Count should fail because JoMur Associates, LLC was not made a party (Def. Mem at p. 33) is a non-starter. JoMur liquidated its only asset in 2000 and then distributed the proceeds, becoming effectively defunct. The Defendants are the recipients of the bulk of those distributions. There is no evidence that JoMur was a party necessary to a just adjudication within the meaning of Fed. R. Civ. P. 19. Application of the rule shows that JoMur was unnecessary (and the claim is untimely). See, Fed. R. Civ. P. 12 (h)(2).

Defendants' claims, that the Asset Sale was really a sale of the judgment debtors' "books of business" (Def. Mem. at p. 7), that the Van Zant Street property suffered a tremendous loss in value that made it worth only about the amount of the new mortgage on it (Def. Mem. at p. 8), and that Plaintiff needed to prove value to the Murphy & Murphy stock when it was transferred in 1994 (Def. Mem. at p. 30-31), do not hold water and are immaterial, even if true factually. Defendants cannot re-make the transactions into it something other than what they were – a sale of the assets of the business of Murphy & Murphy at a huge profit, and a sale of the Van Zant Street property at a profit of approximately $370,000.00. Moreover, even if the value of the Van Zant Street property had declined in 1994, or if there was no equity in the stock when it was transferred in 1994 (as to which there is no credible evidence), Plaintiff's constructive

trust claims are not dependent on any such equity; rather, Plaintiff's claim hinges on the

continued "equitable ownership" of the stock and property by the husbands, the latter through the

sham transaction by which JoMur held legal title only (serving as a presumably safe "parking

place" from which the men could later capitalize on a re-sale when the market inevitably

rebounded). So too, the husbands could not have done whatever they wished with the books of

business of Murphy & Murphy that were respective overseen by them, for they were officers and

directors of that company, and so owed the company fiduciary duties. The plain fact of the

matter is that the transaction was a sale of the corporate assets, including the book of business of

the company. The Defendants cannot now re-characterize its legal effect.

Dowling v. Finley Assoc., 49 Conn. App. 330, 335 (1998) (Def. Mem. at 14), is

inapposite. See Reply Brief dated May 29, 2003 in support of Plaintiff's motion to strike.[2]

---

[2] The cases cited by Defendants after Dowling (Def. Mem. at 14, et. seq.), are unpersuasive. For example, in Maurer & Sheperd Joyners, Inc. v. Doherty, 2002 Conn. Super. LEXIS 1685 (Hennessy, J.), the plaintiff's first suit was dismissed for failure to prosecute. Years later, plaintiffs filed the same suit again (breach of contract for sale of goods), but added a count sounding in quantum meruit. Plaintiff argued that the six-year statute of limitations for standard written contracts applied to the quantum meruit claim. The court disagreed and applied UCC Article 2's limitation. Of course, quantum meruit applies only in the absence of an express contract; it does not revive a stale express contract claim. In Torringford Farms Assoc. v. Torrington, 2001 Conn. Super. LEXIS 2374 (Matasavage, J., 2001), the plaintiff filed an equitable claim more than six years after it knew about the claim. Plaintiff was time-barred because it sat on its rights and sought to make the defendant-city a "lifetime guarantor."

The Fourth Count is not a disguised fraudulent transfer claim (Def. Mem. at 14-15, 27-28); it is a separate and independent claim for a constructive trust that has its underpinning in the uniquely equitable doctrine of unjust enrichment. Whether the claims of the Fourth Count arose ten years ago or last week, they cannot be pigeonholed into fraudulent transfer claims. The facts, by their nature, do not satisfy the essential elements for claims under the Act; hence, equity jurisprudence fashioned an equitable constructive trust claim based on the doctrine of unjust enrichment. Equity stepped in where the law provided no recourse.

The Fourth Count need not be proved by clear and convincing evidence (Def. Mem at 10-11). Defendants' reliance on the trial court decision in Wendell v. Thurston is misplaced.[3] Defendants' reliance on Starzec v. Kida, 183 Conn. 41 (1981), is also misplaced. The Starzec court specifically held that "[w]e do not decide what standard of proof to require before courts may impose constructive trusts in cases where the transferee or transferor survive." Starzec, 183 Conn. at 45, n. 3.[4] Cooper v. Cavallaro, 2 Conn. App. 622 (1984), also is readily distinguishable

---

[3] The Defendants claim Wendell was reversed on "other grounds," implying that the Superior Court's application of a clear and convincing evidence standard is still good law. Not so. The Supreme Court's reversal invalidated the entire legal theory underpinning the trial court's decision (to which the trial court had applied its heightened burden of proof), and imposed a constructive trust as a matter of law.

[4] In Starzec, both transferor and transferee were deceased, plaintiffs were aggrieved heirs, and policy considerations pertaining to decedents' estates led to the imposition of a clear and convincing standard of proof. Policy considerations pertaining to land titles also may have had bearing, although such considerations did not deter the Supreme Court from expressly approving

insofar as it deals with title to a joint bank account with a right of survivorship. Connecticut

General Statutes Sec. 36-3 expressly requires proof by clear and convincing evidence to displace

the survivor of a joint account as the owner. Id. at 625-626. To the extent that <u>Cooper</u> cited

<u>Cohen v. Cohen</u>, 182 Conn. 193, 199-200 (1980), as authority for imposing a higher burden of

proof on a constructive trust claim pertaining to *res* other than a "survivorship" joint bank

account, the <u>Cooper</u> court simply misread <u>Cohen</u>, because the <u>Cohen</u> court expressly approved

the preponderance of the evidence standard on a constructive trust claim (oddly enough, only

five months before the same court, with only one different justice, penned footnote three in

<u>Starzec</u>). See, <u>Cohen</u>, 182 Conn. at 199-200.

The Court should impose the ordinary preponderance of the evidence standard for the

constructive trust count. Such is the standard expressly approved in <u>Cohen</u>, and also is

buttressed by the close relationship constructive trusts have with the doctrine of unjust

enrichment. <u>Hieble v. Hieble</u>, 164 Conn. 56, 63 (1972) ("It is unnecessary to find fraudulent

intent for the imposition of a constructive trust. . . . [t]he whole significance in such cases lies in

the unjust enrichment of the grantee through his unconscionable retention of the trust res."). See

---

the preponderance of the evidence standard on a constructive trust claim involving a deed to land
in <u>Cohen v. Cohen</u>, 182 Conn. 193, 199-200 (1980) (described below). Of course, neither of
those policy considerations is at play with respect to the Murphy & Murphy transaction and the
JoMur transaction (the latter of which dealt membership interests in a limited liability company).

also, Dicesare-Bentley Engineers, Inc. v. Legnos Boat Industries, Inc., 1990 Conn. Super. LEXIS

153 (July 26, 1990) (copy attached).

The burden of proof for constructive fraud under the Act (Third Count) is dicey.

Connecticut Appellate Court decisions hold to a clear and convincing evidence standard for such

claims. However, these cases have their foundation on Supreme Court cases that dealt with

intentional fraud, which requires scienter. See, J. Frederick Scholes Agency v. Mitchell, 191

Conn. 353, 358-59 (1983), and Alaimo v. Royer, 188 Conn. 36, 39 (1982). The correct standard

of proof for constructive fraud is ripe for reconsideration because scienter is not an element;

instead, it is the making of a transfer for less than reasonably equivalent value at a time when the

transferor was insolvent or where he was thereby rendered insolvent. There is no strong,

overriding policy consideration that weighs in favor of using a standard more exacting than the

customary civil standard when dealing with constructive fraud.[5]

---

[5] The more heightened standard of proof is applied in cases such as the acquisition of title by
adverse possession, the termination of parental rights, libel, fraud, or reformation of a deed or
contract. Kavarco v. T.J.E., Inc., 2 Conn. App. 294, 296 (1984). Special policy reasons explain
why the burden of proof is heightened in such cases, such as the taking away of property granted
by deed (adverse possession), termination of parental rights (one of the most fundamental rights
on this earth), establishing that the parties meant something other than what they said in a written
contract (reformation) (and where the litigants obviously dispute that there was any such
different intent), and fraud (the scienter requirement makes fraud the civil equivalent of serious
criminal conduct, with very serious implications for one's reputation, the goodwill of one's
name). Constructive fraud simply does not have that taint, as its elements are very different and
do not have any such connotation of criminal culpability.

PLAINTIFF, THE CADLE COMPANY

By: _____
PAUL N. GILMORE, ESQ.
Fed. Bar No. ct 03347
UPDIKE, KELLY & SPELLACY, P.C.
One State Street
P.O. Box 231277
Hartford, CT 06123-1277
Tel.: (860) 548-2600
Fax:  (860) 548-2680
pgilmore@uks.com

## CERTIFICATION OF SERVICE

This is to certify that on the 22ne day of March, 2004, the undersigned did cause to be

sent, via first class U.S. Mail, postage prepaid, a copy of foregoing to:

Paul Sobel, Esq.
Green and Gross, P.C.
1087 Broad Street
Bridgeport, CT 06604-4231



_____
PAUL N. GILMORE, ESQ.
Updike, Kelly & Spellacy, P.C.

**EXEMPTION CLAIM FORM**
**BANK EXECUTION**
JD-CV-24a  Rev. 4-97
C.G.S. 31-58(j), 52-321a, 52-350a, 52-352b, 52-361a,
52-367b, 29 U.S.C. 206(a)(1)

**STATE OF CONNECTICUT**
**SUPERIOR COURT**



NAME AND ADDRESS OF JUDGMENT DEBTOR OR ATTORNEY *(To be completed by plaintiff)*

TO: ⌐                                                    ¬

    ∟                                                    ⌟

| **SECTION I** *(To be completed by plaintiff)* | |
|---|---|
| ☐ Judicial District  ☐ Housing Session  ☐ G.A. No. | NAME AND ADDRESS OF COURT *(No., Street, Town and Zip Code)* |
| NAME OF JUDGMENT DEBTOR | DOCKET NO. |

| **SECTION II** *(To be completed by banking institution - see instructions on page 2)* | |
|---|---|
| NAME AND ADDRESS OF BANKING INSTITUTION TO WHICH EXEMPTION CLAIM *(IF ANY)* IS TO BE RETURNED | DATE OF MAILING TO JUDGMENT DEBTOR |
| DESCRIPTION OF ACCOUNT(S) AND AMOUNT(S) REMOVED PURSUANT TO EXECUTION | |

**SECTION III**                    **NOTICE TO JUDGMENT DEBTOR**

   As a result of a judgment entered against you, the attached execution has been issued against funds deposited by you in the banking institution named above.  In compliance with this execution, the banking institution has removed from the account(s) enumerated above the amount of money indicated above.

   **THE MONEY IN YOUR ACCOUNT(S) MAY BE EXEMPT FROM EXECUTION -** The money in your account(s) may be protected from execution by state statutes or by other laws or regulations of this state or of the United States. A checklist and a description of the exemptions established by law are set forth on the page 2.

   **HOW TO CLAIM AN EXEMPTION ESTABLISHED BY LAW -** If you wish to claim that the money in your account(s) is exempt by law from execution, you must fill out and sign before a proper official the Affidavit of Claim of Exemption below and mail or deliver this exemption claim form to the banking institution at the above address. This form must be received by the banking institution no later than 15 days from the DATE OF MAILING TO THE JUDGMENT DEBTOR indicated above.

   Upon receipt of this form the bank will forward it to the Superior Court and the court clerk will notify you and the judgment creditor of the date on which a hearing will be held by the court to determine the issues raised by your claim.

**SECTION IV**            **AFFIDAVIT OF CLAIM OF EXEMPTION ESTABLISHED BY LAW**

   I, the judgment debtor named above, hereby claim and certify under the penalty of false statement that the money in the above account(s) is exempt by law from execution as follows:

| ACCOUNT NUMBER | DESCRIBE CLAIMED EXEMPTION ESTABLISHED BY LAW |
|---|---|
| AMOUNT CLAIMED TO BE EXEMPT | |

| ACCOUNT NUMBER | DESCRIBE CLAIMED EXEMPTION ESTABLISHED BY LAW |
|---|---|
| AMOUNT CLAIMED TO BE EXEMPT | |

☐ Additional sheet(s) attached hereto and made a part hereof *(if necessary)*.

| SIGNED *(Individual attorney or pro se party)*  X | DATE SIGNED | STATE OF CONNECTICUT, COUNTY OF                              } SS |
|---|---|---|
| COMPLETE MAILING ADDRESS OF JUDGMENT DEBTOR | | SUBSCRIBED AND SWORN TO BEFORE ME THIS _____ DAY OF _____ , 19 ____ |
| TELEPHONE NO. | | SIGNED *(Notary Public, Commissioner of Superior Court)*  X |

## CHECKLIST AND DESCRIPTION OF EXEMPTIONS ESTABLISHED BY LAW

1. Public Assistance payments and any wages earned by a public assistance recipient under an incentive earnings or similar program. (C.G.S. 52-352b(d))
2. Health and disability insurance payments. (C.G.S. 52-352b(e))
3. Worker's Compensation, social security, veterans and unemployment benefits. (C.G.S. 52-352b(g))
4. Court approved payments for child support. (C.G.S. 52-352b(h))
5. Any assets or interests of a judgment debtor in, or payments received by the judgment debtor from, a plan or arrangement described in C.G.S. 52-321a. (C.G.S. 52-352b(m))
6. Alimony and support, other than child support, but only to the extent that wages are exempt from execution under section 52-361a*. (C.G.S. 52-352b(n))
7. An award under a crime reparations act. (C.G.S. 52-352b(o))
8. All benefits allowed by any association of persons in this state towards the support of any of its members incapacitated by sickness or infirmity from attending to his usual business; and all monies due the debtor from any insurance company upon any insurance policy issued on exempt property, to the same extent that the property was exempt. (C.G.S. 52-352b(p), (q))
9. Any interest of the judgment debtor in any property not to exceed in value one thousand dollars. (C.G.S. § 52-352b(r))
10. Irrevocable transfers of money to an account held by a bona fide nonprofit debt adjuster licensed pursuant to sections 36a-655 to 36a-665, inclusive, of the general statutes for the benefit of creditors of the judgment debtor. (C.G.S. 52-352b(u))
11. There may be other laws or regulations of this state or of the United States which set forth additional exemptions.

*The following is that part of C.G.S. 52-361a which denotes what portion of wages is exempt from execution:

*The maximum part of the aggregate weekly earnings of an individual which may be subject to levy or other withholding for payment of a judgment is the lesser of (1) twenty-five per cent of his disposable earnings for that week, or (2) the amount by which his disposable earnings for that week exceed forty times the higher of (A) the minimum hourly wage prescribed by Section 6(a)(1) of the Fair Labor Standards Act of 1938, U.S.C. tit. 29, Section 206(a)(1), or (B), the full minimum fair wage established by subsection (j) of Section 31-58, in effect at the time the earnings are payable.*

*C.G.S. 52-350a(4) defines "disposable earnings" as that part of the earnings of an individual remaining after the deduction from those earnings of amounts required to be withheld for payment of federal income and employment taxes, normal retirement contributions, union dues and initiation fees, group life insurance premiums, health insurance premiums, federal tax levies, and state income tax deductions authorized pursuant to C.G.S. 12-34b.*

## INSTRUCTIONS

### TO BANKING INSTITUTION

1. Complete section II of this form and send 2 copies of this form and the bank execution form to the judgment debtor pursuant to section 52-367b of the General Statutes.

2. If this claim of exemption is returned completed, fill out section V of this form and mail, within two business days, to the issuing clerk's office at the address of court indicated on the front side. See additional instructions on the bank execution, form.

### TO CLERK

1. Attach this form to each bank execution issued in a civil or family matter against a judgment debtor that is a natural person.
2. Deliver the execution along with this form to the judgment creditor requesting the execution.
3. If judgment debtor completes and returns this form claiming an exemption, enter the appearance of the judgment debtor with address set forth on page 1.
4. Set matter down for short calendar hearing.
5. Complete section VI below.
6. Send file-stamped copy of this form to judgment debtor and judgment creditor.
7. After hearing, send copy of any order entered to the banking institution.

### SECTION V (To be completed by banking institution upon return of exemption claim form)

| DATE CLAIM RECEIVED | DATE MAILED TO COURT | NAME OF BANK OFFICER | TELEPHONE NO. |
|---|---|---|---|
| | | | |

### SECTION VI          NOTICE TO JUDGMENT DEBTOR AND JUDGMENT CREDITOR

The assets in dispute are being held for (1) forty-five days from the date the exemption claim form was received by the banking institution designated on the  front of this form or (2) until disposition is ordered by the court at a hearing to be held at short calendar on the date set forth below, whichever occurs earlier.

| DATE OF HEARING | TIME OF HEARING ☐ A.M. ☐ P.M. | SIGNED (Assistant Clerk) | DATE SIGNED |
|---|---|---|---|
| | | | |

### ORDER AFTER HEARING

The Court/Magistrate, having held a hearing to determine the issues raised by this claim, hereby orders that:

| SIGNED (Judge/Magistrate) | DATE SIGNED |
|---|---|
| | |

Service: Get by LEXSEE®
Citation: 2003 Conn. Super. LEXIS 667

*2003 Conn. Super. LEXIS 667, \**

Ronald F. Petronella, Commissioner of Labor ex rel., Glenn Maiorano et al. v. Venture Partners, Ltd. et al.

CV930531177S

SUPERIOR COURT OF CONNECTICUT, JUDICIAL DISTRICT OF HARTFORD, AT HARTFORD

2003 Conn. Super. LEXIS 667

March 7, 2003, Decided
March 7, 2003, Filed

**NOTICE:  [\*1]**   THIS DECISION IS UNREPORTED AND MAY BE SUBJECT TO FURTHER APPELLATE REVIEW. COUNSEL IS CAUTIONED TO MAKE AN INDEPENDENT DETERMINATION OF THE STATUS OF THIS CASE.

**DISPOSITION:** Betts' exemption claims (1) sustained to account no. 76-500190-05; and (2) overruled to others accounts.

## CASE SUMMARY

**PROCEDURAL POSTURE:** Where plaintiff Connecticut Commissioner of Labor executed on defendant judgment debtor's bank accounts in order to collect on a judgment rendered by a court, the debtor asserted claims for exemption from execution against the bank accounts.

**OVERVIEW:** The debtor was vice president and secretary of defendant partnership. The Commissioner commenced the underlying action on behalf of partnership employees who sought unpaid wages. Double damages and attorneys' fees were awarded. At issue were seven bank accounts. One was a joint account in which the debtor allegedly had an ownership interest. The debtor conceded ownership of the remaining six accounts, but he sought a right to exemption of $ 1,000 for each account pursuant to Conn. Gen. Stat. § 52-367b and Conn. Gen. Stat. § 52-352b(r). The trial court found that the debtor was not an owner of the joint account and that, as a result, the debtor could not execute upon it to collect on the damages owed by the debtor. Pursuant to the bank deposit account contract, the debtor was not an owner of the account unless he signed the signature card. Because he never signed the signature card, the debtor was not an owner of the account. With regard to the remaining six accounts, the exemption under Conn. Gen. Stat. § 52-352b(r) was inapplicable, because the debtor's obligations arose in 1992, before the operative date of § 52-352b(r).

**OUTCOME:** The debtor's exemption claims were sustained as to one account but overruled as to the remaining accounts.

**CORE TERMS:** signature card, joint account, exemption, survivor, signature, deposit, Public Act, unambiguous, wages, credit union, plain meaning, coholder, claimants, revised, exempt, prima facie evidence, deposit account, joint owner, circumstances surrounding, ownership interest, effective date, natural person, operative date, language used, authorization, accomplish, ownership, ambiguity, quotation, motives

# LexisNexis (TM) HEADNOTES - Core Concepts - ✦ Hide Concepts

Banking Law > Bank Activities > Bank Accounts > Deposit Accounts 🖥

*HN1*⬇ A bank is indebted to its account holders for the amount of the funds that they have deposited. Pursuant to Conn. Gen. Stat. § 36a-290(a), a bank is authorized to release up to the entire balance of a joint account to each and any coholder who so demands. This authorization not only provides protection for payor banks but also recognizes a sufficient property interest in each coholder to warrant characterizing all such deposits as a debt due to each coholder. The Connecticut Supreme Court has stated that a signature card is essential to the creation of a bank account.  More Like This Headnote

Banking Law > Bank Activities > Bank Accounts > Deposit Accounts 🖥

*HN2*⬇ See Conn. Gen. Stat. § 36a-290.

Banking Law > Bank Activities > Bank Accounts > Deposit Accounts 🖥

*HN3*⬇ Whether a joint account has been established depends solely on the deposit contract governing the account. Conn. Gen. Stat. § 36a-315 et seq.  More Like This Headnote

Contracts Law > Contract Interpretation > Interpretation Generally 🖥

*HN4*⬇ Where there is definitive language, the determination of what the parties intended by their contractual commitments is a question of law. It is the policy of a court to give effect to all wording in a document. When the plain meaning and intent of the language is clear, a clause cannot be enlarged by construction. There is no room for construction where the terms of a writing are clear and unambiguous, and it is to be given effect according to its language.  More Like This Headnote

Contracts Law > Contract Interpretation > Interpretation Generally 🖥

*HN5*⬇ When only one interpretation of a contract is possible, a court need not look outside outside the four corners of the contract. In addition, the circumstances surrounding the making of the contract, the purposes which the parties sought to accomplish and their motives cannot prove an intent contrary to the plain meaning of the language used. Finally, the court will not torture words to impart ambiguity where ordinary meaning leaves no room for ambiguity.  More Like This Headnote

Banking Law > Bank Activities > Bank Accounts > Deposit Accounts 🖥

*HN6*⬇ Where the intent of a deceased depositor to create a joint account and the bank's agreement to do so are sufficiently established, a survivor may take the balance, although there is no evidence he knew of the account.  More Like This Headnote

Banking Law > Bank Activities > Bank Accounts > Deposit Accounts 🖥

*HN7*⬇ See Conn. Gen. Stat. § 52-367b(f).

Banking Law > Bank Activities > Bank Accounts > Deposit Accounts 🖥

*HN8*⬇ See Conn. Gen. Stat. § 52-367b(a).

Banking Law > Bank Activities > Bank Accounts > Deposit Accounts 🖥

*HN9*⬇ See Conn. Gen. Stat. § 52-352b(r).

Banking Law > Bank Activities > Bank Accounts > Deposit Accounts 🖥

*HN10*⬇ See 1993 Conn. Acts 301.

**JUDGES:** ROBERT B. SHAPIRO, JUDGE.

**OPINIONBY:** ROBERT B. SHAPIRO

**OPINION:** *MEMORANDUM OF DECISION*

This matter comes before the court concerning the defendant Jonathan Betts' claims for exemption from execution against certain bank accounts. On October 2, 2002, the plaintiff, the Commissioner of Labor, executed on the accounts in order to collect on a judgment rendered by the court (Allen, J.T.R.) on August 3, 1998.

The court held a hearing concerning the exemption claims on January 22, 2003, at which the parties appeared and presented evidence. Thereafter, pursuant to a briefing schedule, the parties each submitted briefs, dated February 24, 2003.

At the hearing, the parties agreed that there were two issues which required resolution by the court, (1) whether or not People's Bank account no. 76-500190-05 is a joint account in which Betts has an ownership interest; and (2) the applicability of General Statute § 52-352b (r) **[*2]** to six other People's Bank accounts, as to which Betts has conceded ownership. n1

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 See defendant's post-hearing brief, p. 2. These accounts are nos. 76-0015039, 76-0017608, 76-5015039, 76-5017608-05, 76-6015039-09, and 76-6017608-08 (the other accounts).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

I.

**HN1** "A bank is indebted to its account holders for the amount of the funds that they have deposited. *Frigon v. Enfield Savings & Loan Assn.,* 195 Conn. 82, 87, 486 A.2d 630 (1985). Pursuant to § 36a-290(a), n2 'a bank is authorized to release up to the entire balance of a joint account to each and any coholder who so demands . . . This authorization not only provides protection for payor banks but also recognizes a sufficient property interest in each coholder to warrant characterizing all such deposits as a debt due to each coholder . . .' *Fleet Bank Connecticut, N.A. v. Carillo,* 240 Conn. 343, 350, 691 A.2d 1068 (1997). Our Supreme Court has stated that '[a] signature card is essential to the creation of a bank account **[*3]** . . .' *Frigon v. Enfield Savings & Loan Assn., supra,* 195 Conn. at 87." *Grass v. Grass,* 47 Conn.App. 657, 660-61, 706 A.2d 1369 (1998).

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n2 Section 36a-290 provides, in pertinent part

**HN2** (a) When a deposit account has been established at any bank, or a share account has been established at any Connecticut credit union or federal credit union, in the names of two or more natural persons and under such terms as to be paid to any one of them, or to the survivor or survivors of them, such account is deemed a joint account, and any part or all of the balance of such account, including any and all subsequent deposits or additions made

thereto, may be paid to any of such persons during the lifetime of all of them or to the survivor or any of the survivors of such persons after the death of one or more of them. Any such payment constitutes a valid and sufficient release and discharge of such bank, Connecticut credit union or federal credit union, or its successor, as to all payments so made.

(b) The establishment of a deposit account or share account which is a joint account under subsection (a) of this section is, in the absence of fraud or undue influence, or other clear and convincing evidence to the contrary, prima facie evidence of the intention of all of the named owners thereof to vest title to such account, including all subsequent deposits and additions made thereto, in such survivor or survivors, in any action or proceeding between any two or more of the depositors, respecting the ownership of such account or its proceeds.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*4]**

*HN3* "Whether a joint account has been established, however, depends solely on the deposit contract governing the account. See General Statutes §§ 36a-315 through 36a-323 (Deposit Account Contract Act)." *Grass v. Grass, supra, 47 Conn.App. at 661.*

*HN4* "Where there is definitive language, the determination of what the parties intended by their contractual commitments is a question of law . . . ." (Internal quotation marks omitted.) *Gateway Co. v. DiNoia, 232 Conn. 223, 229, 654 A.2d 342 (1995).* "It is the policy of the court to give effect to all wording in a document. When the plain meaning and intent of the language is clear, a clause . . . cannot be enlarged by construction. There is no room for construction where the terms of a writing are clear and unambiguous, and it is to be given effect according to its language." (Internal quotation marks omitted.) *McAuley v. Southington Savings Bank, 69 Conn.App. 813, 821, 796 A.2d 1250,* cert. denied, *261 Conn. 903, 802 A.2d 853 (2002).*

*HN5* "When only one interpretation of a contract is possible, the court need not look outside the four corners of the contract . **[*5]** . . In addition, the circumstances surrounding the making of the contract, the purposes which the parties sought to accomplish and their motives cannot prove an intent contrary to the plain meaning of the language used . . . Finally, the court will not torture words to impart ambiguity where ordinary meaning leaves no room for ambiguity." *Grass v. Grass, supra, 47 Conn.App. at 662.*

At the hearing, the plaintiff presented People's Bank's Universal Deposit Account Contract as Exhibit No. 4 (contract). Although effective in October 2000, after the subject account was opened, n3 both parties rely on the language of this contract as being applicable to the account. See plaintiff's memorandum of law, p. 5; Betts' post-hearing brief, pp. 2-3. In addition, at the hearing, Sharon Young, a senior fraud investigator at People's Bank, testified that the relevant language in the contract had not changed and was in effect in 1998 when the account was opened.

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -


n3 Defendant's Exhibit A includes the signature card for the account, which is dated July 25, 1998.


- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*6]**

Under "II. General Rules For Deposit Accounts," section A, entitled "Opening Account; Signature Card," the contract provides, "To open an account, you must sign a 'signature card.'

Your signature (or mark) on the signature card, whether made on paper or made electronically, is your authorized signature, and by signing or making your mark, you agree to have your account and all related accounts governed by the terms and conditions of this Contract." See Plaintiff's Exhibit 4, p. 4.

A joint account is described in the contract in section B. "This is an account in the names of two or more persons that is payable to any one of the persons or the survivor. Any person named as a joint owner on the signature card may withdraw the entire amount in the account." See Plaintiff's Exhibit 4, p. 5. The quoted language in the contract is clear and unambiguous.

The signature card for the account, provided in Defendant's Exhibit A, is likewise clear and unambiguous. It reflects that the account title was in the name of Betts' wife, Kathleen M. Canaiy Betts. Her signature appears twice thereon. Her name appears after "Name # 1." The space after "Name # 2" is blank. Betts' name does not appear on **[*7]** the signature card, either in printed form or by signature. A small yellow "post-it" type note also appears within this exhibit, which reads, "waiting for signature card with Husband's name on it. Added husband on 7-25-98. DL." n4 See Defendant's Exhibit A.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n4 The initials "DL" correspond to the name "D Lopes," a signature over the line for "Signature/Employee # " which appears on the signature card. See Defendant's Exhibit A.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Since Betts' name does not appear on the signature card, he is not "named as a joint owner on the signature card" as required by the contract. From the evidence before the court it does not appear that a signature card with Betts' name on it was ever prepared. Under the circumstances, according to the contract, Betts has no right to any funds in the account, since he is not a "joint owner."

The plaintiff argues, in his memorandum, pp. 2-3, that another form signed by Betts' wife, Defendant's Exhibit B, shows that a joint account was created and that, according to General Statute § 36a-290(b) **[*8]** , it is prima facie evidence of an intention to vest title in both Betts and Mrs. Betts. This document, entitled CIF Maintenance/Change Form Request, states, under Special Instructions, "Add husband Jonathan D. Betts to statement savings account # 076-0500190-05." The court finds that this document is not probative. As noted above, it is the deposit contract which governs. Here, the deposit contract requires that for a joint account to be created the joint owner's name must appear on the signature card. Defendant's Exhibit B, the change form request, is not the signature card.

Similarly unavailing are the plaintiff's reference to Ms. Young's testimony as to how the bank treated the account once Mrs. Betts signed the change form request and his reference to the "post-it" note. See plaintiff's memorandum of law, p. 3. As noted, the "circumstances surrounding the making of the contract, the purposes which the parties sought to accomplish and their motives cannot prove an intent contrary to the plain meaning of the language used." *Grass v. Grass, supra,* 47 Conn.App. at 662. Likewise, the court declines to draw an adverse inference, as requested by the plaintiff, from **[*9]** the fact that Betts did not call his wife to testify at the hearing. See Plaintiff's memorandum of law, p. 9. As noted, testimony from her as to her intent would not be material here in view of the unambiguous contents of the contract and signature card. n5

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n5 Also unpersuasive, for the same reasons cited, are two other exhibits, Plaintiff's Exhibits 1 and 2, generated by the bank, which list Betts' name on the account. Exhibit 1 is dated November 15, 2002; Exhibit 2 is entitled 1998 Tax Statement.


- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

The plaintiff cites *Alaimo v. First National Bank of Thompsonville, 24 Conn.Sup. 369, 190 A.2d 924 (1963)* as support for his position, asserting that Betts has an ownership interest in the account even if he was unaware of it. See plaintiff's memorandum of law, p. 7. Our Appellate Court addressed *Alaimo in Grass v. Grass, supra*. "The plaintiff relies on *Alaimo* . . . for the proposition that a signature card need not be signed to create a joint account with right of survivorship. **[*10]** The plaintiff's reliance is misplaced. In *Alaimo*, the court held that **HN6** ☂'where the intent of a deceased depositor to create a joint account and the bank's agreement to do so are sufficiently established, the survivor may take the balance, although there is no evidence he knew of the account.' *Id., at 373*. In the present case, the clear language of the deposit account contract provided that the bank agreed to establish a joint account only as to 'those persons who sign an authorization form.' " (Footnote omitted.) *Grass v. Grass, supra, 47 Conn.App. at 661-62*.

Here, as set forth above, the contract provides that a joint account must contain a joint owner's name on the signature card. As noted, Betts' name does not appear on the signature card.

Accordingly, since Betts is not an owner of the account, the plaintiff may not execute upon it to collect upon the judgment against Betts. Betts' exemption claim as to account no. 76-500190-05 is sustained.

II.

As to the other accounts, Betts claims the right to exemption of $ 1,000.00 pursuant to General Statutes §§ 52-367b n6 and 52-352b(r). n7 Section 52-352b(r) "protects the first $ 1,000.00 **[*11]** of the account not otherwise exempt." *Ford Motor Credit Co. v. Christani*, Superior Court, judicial district of Ansonia/Milford at Milford, Docket No. CV96 0054380S (Feb. 23, 1998, Flynn, J.). General Statutes § 52-367b(f) provides that **HN7**☂"the claim of exemption filed by such debtor shall be prima facie evidence at [the] hearing of the existence of the exemption."


- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -


n6 In pertinent part § 52-367b(a) provides, **HN8**☂"Execution may be granted pursuant to this section against any debts due from any banking institution to a judgment debtor who is a natural person, except to the extent such banking debts are protected from execution by sections 52-352a, 52-352b, 52-352c, of the general statutes revised to 1983, 52-354 of the general statutes revised to 1983, 52-361 of the general statutes revised to 1983 and section 52-361a, as well as any other laws or regulations of this state or of the United States which exempt such debts from execution."


N7 Section 52-352b provides, in relevant part, **HN9**☂"The following property of any natural person shall be exempt: . . . (r) Any interest of the exemptioner in any property not to exceed in value one thousand dollars;"

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - **[*12]**

The plaintiff contends that the exemption does not apply, since Betts' liability stems from an obligation which was incurred in 1992, before the operative date of Public Act 93-301, n8 which added subsection (r) to § 52-352b. Public Act 93-301 provides that *HN10* "this act shall take effect October 1, 1993, and shall be applicable to any lien for any obligation or claim arising on or after said date." According to the plaintiff, "since the Defendant's debt to the Plaintiff arose in 1992, prior to the October 1, 1993 effective date of the $ 1,000.00 exemption, the Defendant is not entitled to the $ 1,000.00 exemption provided by General Statutes Section 52-352b(r)." See plaintiff's memorandum of law, p. 10.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n8 Although the plaintiff's memorandum, p. 10, refers to Public Act No. 93-302, this is clearly a typographical error, as the correct number of the applicable Public Act is 93-301.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

There is no question that Betts' obligation was found by the court (Allen, J.T.R.) to have arisen in 1992, **[*13]** before the operative date of § 52-352b(r). In affirming the trial court's judgment, our Appellate Court recited the facts which supported the judgment of the court. "Betts, the vice president and secretary of Venture, arrived at Specialty in September 1992, and began work toward the end of October 1992. The plaintiff commenced this action on behalf of the individual claimants in October 1993, seeking unpaid wages for the period of August 1992, through October 1992. The court awarded double damages and attorneys fees." *Petronella v. Venture Partners, Ltd.*, 60 Conn.App. 205, 207, 758 A.2d 869 (2000), appeal dismissed, 258 Conn. 453, 782 A.2d 97 (2001). Further, our Appellate Court noted that the trial court found, referring to Betts, and another individual, that "said defendants . . . failed to pay back wages of the five claimants. Although they did not pay wages for August, September, and October, they continued to promise the claimants that those wages would be paid in order to induce them to keep working. They did pay them for work they did in November and December, but fired them in December without paying them for the back wages." *Id., at 211.* **[*14]** In addition, the trial court's decision, at page 9, found "that interest should run from November 1, 1992 until all sums are paid."

Under these circumstances, Betts' obligation pre-dates the effective date of § 52-352b(r), October 1, 1993. Accordingly, the exemption provided therein is not available here. Betts' exemption claims as to the other accounts are overruled.

CONCLUSION

For the foregoing reasons, Betts' exemption claims are (1) sustained as to account no. 76-500190-05; and (2) overruled as to the others accounts. It is so ordered.

BY THE COURT

ROBERT B. SHAPIRO

JUDGE OF THE SUPERIOR COURT

Service: **Get by LEXSEE®**
Citation: **2003 Conn. Super. LEXIS 667**
View: Full
Date/Time: Friday, March 19, 2004 - 11:19 AM EST

* Signal Legend:

● - Warning: Negative treatment is indicated

⚠ - Caution: Possible negative treatment

✛ - Positive treatment is indicated

Ⓐ - Citing Refs. With Analysis Available

ⓘ - Citation information available

* Click on any *Shepard's* signal to *Shepardize®* that case.

About LexisNexis | Terms and Conditions

Copyright © 2004 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

*735 ILCS 5/2-1402*

ILLINOIS COMPILED STATUTES ANNOTATED
Copyright © 2004 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group.
All rights reserved.

*** THIS SECTION IS CURRENT THROUGH PUBLIC ACT 93-655 ***
*** DECEMBER 18, 2003 ANNOTATION SERVICE ***

CHAPTER 735.  CIVIL PROCEDURE
CODE OF CIVIL PROCEDURE
ARTICLE II.  CIVIL PRACTICE
PART 14.  POST-JUDGMENT

## ✦ GO TO THE CODE ARCHIVE DIRECTORY FOR THIS JURISDICTION

735 ILCS 5/2-1402  (2004)

[Prior to 1/1/93 cited as: Ill. Rev. Stat., Ch. 110, para. 2-1402]

§ 735 ILCS 5/2-1402.  Supplementary proceedings

Sec. 2-1402. Supplementary proceedings. (a) A judgment creditor, or his or her successor in interest when that interest is made to appear of record, is entitled to prosecute supplementary proceedings for the purposes of examining the judgment debtor or any other person to discover assets or income of the debtor not exempt from the enforcement of the judgment, a deduction order or garnishment, and of compelling the application of non-exempt assets or income discovered toward the payment of the amount due under the judgment. A supplementary proceeding shall be commenced by the service of a citation issued by the clerk. The procedure for conducting supplementary proceedings shall be prescribed by rules. It is not a prerequisite to the commencement of a supplementary proceeding that a certified copy of the judgment has been returned wholly or partly unsatisfied. All citations issued by the clerk shall have the following language, or language substantially similar thereto, stated prominently on the front, in capital letters: "YOUR FAILURE TO APPEAR IN COURT AS HEREIN DIRECTED MAY CAUSE YOU TO BE ARRESTED AND BROUGHT BEFORE THE COURT TO ANSWER TO A CHARGE OF CONTEMPT OF COURT, WHICH MAY BE PUNISHABLE BY IMPRISONMENT IN THE COUNTY JAIL." The court shall not grant a continuance of the supplementary proceeding except upon good cause shown.

(b) Any citation served upon a judgment debtor or any other person shall include a certification by the attorney for the judgment creditor or the judgment creditor setting forth the amount of the judgment, the date of the judgment, or its revival date, the balance due thereon, the name of the court, and the number of the case, and a copy of the citation notice required by this subsection. Whenever a citation is served upon a person or party other than the judgment debtor, the officer or person serving the citation shall send to the judgment debtor, within three business days of the service upon the cited party, a copy of the citation and the citation notice, which may be sent by regular first-class mail to the judgment debtor's last known address. In no event shall a citation hearing be held sooner than five business days after the mailing of the citation and citation notice to the judgment debtor, except by agreement of the parties. The citation notice need not be mailed to a corporation, partnership, or association. The citation notice shall be in substantially the following form:

"CITATION NOTICE

(Name and address of Court)

Name of Case: (Name of Judgment Creditor),

    Judgment Creditor v.

    (Name of Judgment Debtor),

    Judgment Debtor.

Address of Judgment Debtor: (Insert last known address)

Name and address of Attorney for Judgment

    Creditor or of Judgment Creditor (If no

    attorney is listed): (Insert name and address)

Amount of Judgment: $ (Insert amount)

Name of Person Receiving Citation: (Insert name)

Court Date and Time: (Insert return date and time

    specified in citation)

NOTICE: The court has issued a citation against the person named above. The citation directs that person to appear in court to be examined for the purpose of allowing the judgment creditor to discover income and assets belonging to the judgment debtor or in which the judgment debtor has an interest. The citation was issued on the basis of a judgment against the judgment debtor in favor of the judgment creditor in the amount stated above. On or after the court date stated above, the court may compel the application of any discovered income or assets toward payment on the judgment.

The amount of income or assets that may be applied toward the judgment is limited by federal and Illinois law. The JUDGMENT DEBTOR HAS THE RIGHT TO ASSERT STATUTORY EXEMPTIONS AGAINST CERTAIN INCOME OR ASSETS OF THE JUDGMENT DEBTOR WHICH MAY NOT BE USED TO SATISFY THE JUDGMENT IN THE AMOUNT STATED ABOVE:

(1) Under Illinois or federal law, the exemptions of personal property owned by the debtor include the debtor's equity interest, not to exceed $ 2,000 in value, in any personal property as chosen by the debtor; Social Security and SSI benefits; public assistance benefits; unemployment compensation benefits; worker's compensation benefits; veteran's benefits; circuit breaker property tax relief benefits; the debtor's equity interest, not to exceed $ 1,200 in value, in any one motor vehicle, and the debtor's equity interest, not to exceed $ 750 in value, in any implements, professional books, or tools of the trade of the debtor.

(2) Under Illinois law, every person is entitled to an estate in homestead, when it is owned and occupied as a residence, to the extent in value of $ 7,500, which homestead is exempt from judgment.

(3) Under Illinois law, the amount of wages that may be applied toward a judgment is limited to the lesser of (i) 15% of gross weekly wages or (ii) the amount by which disposable earnings