UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - :
                                                                  :
THE CADLE COMPANY,                        :    CIVIL ACTION NO.
    Plaintiff                            :    3:00 CV-00317 (WWE)
                                                                  :
v.                                                                :
                                                                  :
DOROTHY MURREN,                           :
    Defendant                            :    JULY 6, 2004
                                                                  :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - :

## SECOND AMENDED COMPLAINT

The Plaintiff, The Cadle Company, by and through its attorneys, and pursuant to the order of the court granting Plaintiff's Motion for Leave to File Amended Complaint, for its Complaint against the Defendant, Dorothy Murren, avers as follows:

## I.   PARTIES:

1.   The Plaintiff, The Cadle Company ("Cadle" or "Plaintiff"), is an Ohio corporation with its principal place of business at 100 North Center Street, Newton Falls, Ohio.

2.   Thomas Murren ("Thomas Murren") is an individual residing at 6 Grayrock Road, Trumbull, Connecticut and is formerly a

367764

defendant in this action, which action is now proceeding against
Dorothy Murren only.

3.    The Defendant, Dorothy Murren ("Dorothy Murren") is an
individual residing at 6 Grayrock Road, Trumbull, Connecticut.

## II.    JURISDICTION AND VENUE:

4.    This Court has jurisdiction over this action by virtue of
the diversity of citizenship between the parties pursuant to 28
U.S.C. Section 1332.    The amount in controversy exceeds the sum of
$75,000.00.

5.    Venue is proper in this district pursuant to 28 U.S.C.
Section 1391 because the Defendant resides in this district and
because the property at issue in this action is situated in this
district.

## III. FIRST COUNT: (Liability of Transferee for Fraudulent Transfer Pursuant to Connecticut General Statutes Section 52-552e(a)(1); Avoidance of Transfers)

6.    Cadle is the judgment creditor of Thomas Murren by virtue
of, and pursuant to the terms and provisions of, an assignment of a

certain final judgment entered in a civil action formerly pending in the Superior Court for the Judicial District of Fairfield at Bridgeport, which civil action became known as <u>Great Country Bank v. Home Design Builders, Inc., et al</u> and bearing civil action number CV-91-0285395-S, which judgment was entered on or about February 3, 1992 in the amount of $109,407.35 (the "Judgment").

7.    To this date, the Judgment remains unsatisfied, and, as of the present time, the Judgment, plus post-judgment interest from and after the entry of the Judgment up to and including the present time, remains due and owing to Cadle from Thomas Murren.

8.    Thomas Murren and Defendant Dorothy Murren are husband and wife, respectively.

9.    Thomas Murren and Dorothy Murren are not estranged, one from the other, and they currently live together as husband and wife, and have so lived together from and after the entry of the Judgment through and including the present time.

10.    From and after four years prior to the date of initial complaint commencing this action, at which time Cadle was a judgment creditor, through and including the present time, Thomas

Murren has engaged in, and continues to engage in, a pattern of conduct whereby he transfers, within the meaning of the term "transfer" as defined in Connecticut General Statutes Section 52-552b, to Dorothy Murren, all or substantially all of his income, as the term "income" is defined under the Internal Revenue Code (all of which transfers are collectively referred to herein as the "Income Transfers"). The allegations set forth in this paragraph are likely to have evidentiary support after a reasonable opportunity for further investigation and discovery.

11. Thomas Murren has within the past four years made one or more other transfers of assets from himself to Defendant Dorothy Murren, as the terms "transfer" and "assets" are defined under Connecticut General Statutes Section 52-552b (collectively, the "Other Transfers"). The allegations set forth in this paragraph are likely to have evidentiary support after a reasonable opportunity for further investigation and discovery.

12. All of the Income Transfers and Other Transfers were made by Thomas Murren with an actual intent to hinder, delay or defraud one or more of said Defendant's creditors.

13.  All of the Income Transfers and Other Transfers are fraudulent as to the Plaintiff, The Cadle Company, within the meaning of Connecticut General Statutes Section 52-552e(a).

14.  The Plaintiff maintains that pursuant to the Connecticut Uniform Fraudulent Transfer Act, Connecticut General Statutes Sections 52-552a to 552l, inclusive, the Plaintiff's recovery against Defendant Dorothy Murren under this Count does not depend upon any participation by the transferee, Defendant Dorothy Murren, in such transfers and/or in the purpose thereof. Therefore, no intent by Defendant Dorothy Murren to hinder, delay or defraud the creditors of Thomas Murren, nor her participation in such a scheme by Thomas Murren, need be proven by the Plaintiff. Notwithstanding the foregoing, if the law is found to be otherwise, then the Plaintiff avers that Defendant Dorothy Murren participated in all Income Transfers and Other Transfers, and further participated in Thomas Murren's scheme to defraud his creditors thereby. The allegations set forth in this paragraph are likely to have evidentiary support after a reasonable opportunity for further investigation and discovery.

15.   By reason of the foregoing, all Income Transfers and Other Transfers are voidable and should be set aside by the Court.

16.   By reason of the foregoing, the Defendant Dorothy Murren is personally liable to the Plaintiff to the extent of: (a) the aggregate of the dollar amount of all Income Transfers; and (b) the value of all Other Transfers, said valuation being as of the date of each such transfer, subject to such adjustment as the equities of the case may require, all within the meaning of, and as contemplated by, Connecticut General Statutes Section 52-552a through 52-552l, inclusive.

IV.   **SECOND COUNT: (Liability of Transferee for Fraudulent Transfer Pursuant to Connecticut General Statutes Section 52-552e(a)(2); Avoidance of Transfers)**

17-23.   Plaintiff hereby repeats, reiterates and realleges Paragraphs 6 through 11 and 13 of the First Count as Paragraphs 17 through 23 of this, the Second Count, as if fully set forth herein.

24.   All of the Income Transfers and Other Transfers were made by Thomas Murren without receiving a reasonably equivalent value in exchange for said transfers, and Thomas Murren (1) was engaged or

was about to engage in a business or transaction for which his remaining assets were unreasonably small in relation to the business or transaction, or (2) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due. The allegations set forth in this paragraph are likely to have evidentiary support after a reasonable opportunity for further investigation and discovery.

25. By reason of the foregoing, all Income Transfers and Other Transfers are voidable and should be set aside by the Court.

26. By reason of the foregoing, Defendant Dorothy Murren is personally liable to the plaintiff to the extent of: (a) the aggregate of the dollar amount of all Income Transfers; and (b) the value of all Other Transfers, said valuation being as of the date of each such transfer, subject to such adjustment as the equities of the case may require, all within the meaning of, and as contemplated by, Connecticut General Statutes Section 52-552a through 52-552l, inclusive.

## V.    THIRD COUNT: (Liability of Transferee for Fraudulent Transfer Pursuant to Connecticut General Statutes Section 52-552f; Avoidance of Transfers)

27-32.  Plaintiff hereby repeats, reiterates and realleges Paragraphs 6 through 11 of the First Count as Paragraphs 27 through 32 of this, the Third Count, as if fully set forth herein.

33.  All of the Income Transfers and Other Transfers were made by Thomas Murren to the Defendant Dorothy Murren without receiving a reasonably equivalent value in exchange for said transfers, and Thomas Murren was insolvent at the time of such transfers or, alternatively, Thomas Murren became insolvent as a result of such transfers. The allegations set forth in this paragraph are likely to have evidentiary support after a reasonable opportunity for further investigation and discovery.

34.  By reason of the foregoing, all Income Transfers and Other Transfers so made by Thomas Murren to the Defendant Dorothy Murren are fraudulent as to Cadle.

35.  By reason of the foregoing, all Income Transfers and Other Transfers are voidable and should be set aside by the Court.

36.  By reason of the foregoing, Defendant Dorothy Murren is personally liable to the Plaintiff to the extent of: (a) the aggregate of the dollar amount of all Income Transfers; and (b) the value of all Other Transfers, said valuation being as of the date of each such transfer, subject to such adjustment as the equities of the case may require, all within the meaning of, and as contemplated by, Connecticut General Statutes Section 52-552a through 52-552l, inclusive.

**VI.  FOURTH COUNT: (Action Under the Common Law For The Imposition of a Constructive Trust Against Defendant Dorothy Murren)**

37-40.  Plaintiff hereby repeats, reiterates and re-alleges Paragraphs 6 through 9 of the First Count as Paragraphs 37 through 40 of this, the Fourth Count, as if fully set forth herein.

41.  For many years, perhaps decades, Thomas Murren has been the sole or predominant person from whose financial resources the payment of the expenses associated with the holding by Defendant Dorothy Murren of legal title to the property commonly known as 6 Grayrock (a/k/a Greyrock) Road, Trumbull, Connecticut and the

property commonly known as Grange Road, Mt. Holly, Vermont (collectively, the "Properties") have been made. Said expense payments include, but are not limited to, payments of the mortgage indebtedness, real property taxes, insurance premiums, maintenance and repairs.

42. Thomas Murren and Defendant Dorothy Murren have structured their financial affairs in such a way that Thomas Murren does not hold legal title to real property or any significant personal property, but nonetheless has full use and enjoyment of such assets commensurate with a whole or joint ownership interest in such property. In particular, Thomas Murren has caused legal title to the Properties to be placed solely in the name of Dorothy Murren but has retained and enjoyed all attributes of ownership of the Properties except for legal title. This structure was implemented, in large measure, because of Thomas Murren's business risk and serious debt troubles (as evidenced by his quitclaiming of his one-half interest in the Vermont property to Dorothy Murren in 1991, when he was facing very serious financial troubles).

43.  At a time when Thomas Murren was experiencing serious financial difficulties, he transferred his stock (or shares) in the company known as Murphy & Murphy, P.C. (a/k/a Murphy & Murphy, Incorporated) (hereinafter, "Murphy & Murphy") to Defendant Dorothy Murren.  Said shares represented a 50% ownership interest in said company.

44.  Murphy & Murphy was an insurance agency that was managed and operated exclusively and jointly by Thomas Murren and William Jones.  Following the transfer of his shares in Murphy & Murphy to Defendant Dorothy Murren, Thomas Murren continued to manage and operate the company just as before the transfer.  Defendant Dorothy Murren had no participation in the management and operation of said business, other than very modest clerical/secretarial help from time to time.  Defendant Dorothy Murren received no significant remuneration from the company after the stock transfer but prior to the sale of the company's assets (which sale occurred after Thomas Murren filed his bankruptcy petition).  Instead, following the stock transfer, Thomas Murren continued to receive, as compensation, approximately 50% of the net income of the company

-11-

(the other 50% going to William Jones) and continued to run and treat the company as his own, just as if the stock transfer never occurred.

45.  By reason of the foregoing, Thomas Murren was the equitable owner of 50% of the company known as Murphy & Murphy from and after the point in time when he so transferred legal title to his shares in Murphy & Murphy to Defendant Dorothy Murren.

46.  In 2001, Murphy & Murphy sold substantially all of its assets to an entity known as J.M. Layton & Co., Inc.  Substantial remuneration was paid to Murphy & Murphy and/or Dorothy Murren for said sale (the "Asset Sale").

47.  In connection with the Asset Sale, the purchaser also entered into a so-called Noncompetition, Nontampering and Confidentiality agreement with Murphy & Murphy, Thomas Murren, Defendant Dorothy Murren, William Jones and Grace Jones.

48.  Defendant Dorothy Murren has been receiving, and will continue to receive, jointly with Thomas Murren, the sum of $5,000.00 per month for 72 months in exchange for the covenants set forth in said agreement, although Defendant Dorothy Murren never

has engaged in the sale of insurance and is not a licensed or otherwise qualified insurance agent, broker or salesperson.

48. Defendant Dorothy Murren received one or more substantial distributions from Murphy & Murphy as a consequence of the Asset Sale and by reason of her holding of legal title to 50% of the shares thereof, despite Thomas Murren's equitable ownership of such shares. The allegations set forth in this paragraph are likely to have evidentiary support after a reasonable opportunity for further investigation and discovery.

49. In the 1990s, Thomas Murren, in concert with William Jones, caused Jomur Associates, LLC, a Connecticut liability company, to be formed.

50. Thomas Murren arranged for, or otherwise caused, Defendant Dorothy Murren to own legal title to a 50% ownership interest in Jomur Associates, LLC.

51. Thomas Murren and William Jones caused Jomur Associates, LLC to acquire, and/or procured for Jomur Associates, LLC, that certain real property commonly known as 25 Van Zant Street, Unit D, Norwalk, Connecticut (the "Office Condominium").

52.   The Office Condominium housed the business of Murphy & Murphy until its relocation to Shelton, Connecticut.

53.   Defendant Dorothy Murren's interest in Jomur Associates, LLC, and/or her share of the initial purchase money for the acquisition of the Office Condominium, was provided directly or indirectly by Thomas Murren and/or Murphy & Murphy, and Murphy & Murphy provided the monies with which to pay the installment payments on the purchase money mortgage on the Office Condominium (by means of a "straw lease", the terms of which were set by Thomas Murren and William Jones).

54.   Dorothy Murren, before her deposition in the Fall of 2002, never had heard of Jomur Associates, LLC and did not know that she was a member thereof with a 50% economic stake in the profits and proceeds of said company.

55.   In or about August of 2000, the Office Condominium was sold by Jomur Associates, LLC and the closing of the sale generated approximately $221,000.00 in proceeds for Defendant Dorothy Murren.

56. By reason of the foregoing, Thomas Murren was the equitable owner of Dorothy Murren's 50% interest in Jomur Associates, LLC.

57. By reason of the foregoing, it offends equity and good conscience for Defendant Dorothy Murren to enjoy and retain ownership of the Properties and the products and proceeds of: (a) the Asset Sale, (b) the foregoing covenant remuneration and (c) the proceeds from the sale of the Office Condominium and/or the distributions of Jomur Associates, LLC made to Defendant Dorothy Murren in connection therewith, especially where, as here, Thomas Murren had no meaningful assets in his name, filed a bankruptcy petition and was discharged in bankruptcy.

58. By reason of the foregoing, Defendant Dorothy Murren has engaged in conduct that has wrongfully harmed the Plaintiff.

59. By reason of the foregoing, Defendant Dorothy Murren has been unjustly enriched to the detriment of the Plaintiff.

60. By reason of the foregoing, Plaintiff may, by this proceeding in equity, hold Defendant Dorothy Murren personally liable to the Plaintiff for the amounts of her improper financial

gains, all as aforesaid described, to the extent of the outstanding balance of Plaintiff's judgment against Thomas Murren.

61. By reason of the foregoing, a constructive trust should be imposed upon the Properties and other assets of Defendant Dorothy Murren, and said defendant should be required to hold the same for the benefit of the Plaintiff.

VII.        **FIFTH COUNT:   (Action   Under   the   Uniform   Fraudulent Transfer Act, Against the Transferee, For Fraudulent Transfer of Monetary Distributions by Equitable Owner of Companies)**

62-65. Plaintiff hereby repeats, reiterates and re-alleges Paragraphs 6 through 9 of the First Count as Paragraphs 62 through 65 of this, the Fourth Count, as if fully set forth herein.

66. Thomas Murren and Defendant Dorothy Murren have structured their financial affairs in such a way that Thomas Murren does not hold legal title to real property or any significant personal property, but nonetheless has full use and enjoyment of such assets commensurate with a whole or joint ownership interest in such property. This structure was implemented, in large

measure, because of Thomas Murren's business risk and serious debt troubles (as evidenced by his quitclaiming of his one-half interest in the Vermont property to Dorothy Murren in 1991, when he was facing very serious financial troubles).

67. At a time when Thomas Murren was experiencing serious financial difficulties, he transferred his stock (or shares) in the company known as Murphy & Murphy, P.C. (a/k/a Murphy & Murphy, Incorporated) (hereinafter, "Murphy & Murphy") to Defendant Dorothy Murren. Said shares represented a 50% ownership interest in said company.

68. Murphy & Murphy was an insurance agency that was managed and operated exclusively and jointly by Thomas Murren and William Jones. Following the transfer of his shares in Murphy & Murphy to Defendant Dorothy Murren, Thomas Murren continued to manage and operate the company just as before the transfer. Defendant Dorothy Murren had no participation in the management and operation of said business, other than very modest clerical/secretarial help from time to time. Defendant Dorothy Murren received no significant remuneration from the company after the stock transfer but prior to

the sale of the company's assets (which sale occurred after Thomas Murren filed his bankruptcy petition).    Instead, following the stock transfer, Thomas Murren continued to receive, as compensation, approximately 50% of the net income of the company (the other 50% going to William Jones) and continued to run and treat the company as his own, just as if the stock transfer never occurred.

69.  By reason of the foregoing, Thomas Murren was the equitable owner of 50% of the company known as Murphy & Murphy from and after the point in time when he so transferred legal title to his shares in Murphy & Murphy to Defendant Dorothy Murren.

70.  In 2001, Murphy & Murphy sold substantially all of its assets to an entity known as J.M. Layton & Co., Inc.    Substantial remuneration was paid to Murphy & Murphy and/or Dorothy Murren for said sale (the "Asset Sale").

71.  In connection with the Asset Sale, the purchaser also entered into a so-called Noncompetition, Nontampering and Confidentiality agreement with Murphy & Murphy, Thomas Murren, Defendant Dorothy Murren, William Jones and Grace Jones.

72. Defendant Dorothy Murren has been receiving, and will continue to receive, jointly with Thomas Murren, the sum of $5,000.00 per month for 72 months in exchange for the covenants set forth in said agreement, although Defendant Dorothy Murren never has engaged in the sale of insurance and is not a licensed or otherwise qualified insurance agent, broker or salesperson (and, as such, any non-competition payment made to Defendant Dorothy Murren is a *de facto* part of the purchase price for the Asset Sale).

73. Defendant Dorothy Murren received one or more substantial distributions from Murphy & Murphy as a consequence of the Asset Sale and by reason of her holding of legal title to 50% of the shares thereof, despite Thomas Murren's equitable ownership of such shares.

74. Said non-competition payments and Asset Sale distributions received by defendant Dorothy Murren were, in effect, transfers of assets (as the terms "transefer" and "assets" are defined under Connecticut General Statutes Section 52-552b) of plaintiff's judgment debtor, who is the equitable owner of the

company and, hence, the one entitled to have received such payments and distributions.

75. In the 1990s, Thomas Murren, in concert with William Jones, caused Jomur Associates, LLC, a Connecticut liability company, to be formed.

76. Thomas Murren arranged for, or otherwise caused, Defendant Dorothy Murren to own legal title to a 50% ownership interest in Jomur Associates, LLC.

77. Thomas Murren and William Jones caused Jomur Associates, LLC to acquire, and/or procured for Jomur Associates, LLC, that certain real property commonly known as 25 Van Zant Street, Unit D, Norwalk, Connecticut (the "Office Condominium").

78. The Office Condominium housed the business of Murphy & Murphy until its relocation to Shelton, Connecticut.

79. Defendant Dorothy Murren's interest in Jomur Associates, LLC, and/or her share of the initial purchase money for the acquisition of the Office Condominium, was provided directly or indirectly by Thomas Murren and/or Murphy & Murphy, and Murphy & Murphy provided the monies with which to pay the installment

payments on the purchase money mortgage on the Office Condominium (by means of a "straw lease", the terms of which were set by Thomas Murren and William Jones).

80. Dorothy Murren, before her deposition in the Fall of 2002, never had heard of Jomur Associates, LLC and did not know that she was a member thereof with a 50% economic stake in the profits and proceeds of said company.

81. In or about August of 2000, the Office Condominium was sold by Jomur Associates, LLC and the closing of the sale generated approximately $221,000.00 in proceeds for Defendant Dorothy Murren.

82. By reason of the foregoing, Thomas Murren was the equitable owner of Dorothy Murren's 50% interest in Jomur Associates, LLC.

83. Said distribution of the closing proceeds received by defendant Dorothy Murren was, in effect, a transfer of an asset (as the terms "transfer" and "assets" are defined under Connecticut General Statutes Section 52-552b) of plaintiff's judgment debtor, who is the equitable owner of the company and, hence, the one entitled to have received such distribution.

84.  All such transfers of assets were made by Thomas Murren with an actual intent to hinder, delay or defraud one or more of his creditors.

85.  All such transfers of assets are fraudulent as to the Plaintiff, The Cadle Company, within the meaning of Connecticut General Statutes Section 52-552e(a).

86.  The Plaintiff maintains that pursuant to the Connecticut Uniform Fraudulent Transfer Act, Connecticut General Statutes Sections 52-552a to 552l, inclusive, the Plaintiff's recovery against Defendant Dorothy Murren under this Count does not depend upon any participation by the transferee, Defendant Dorothy Murren, in such transfers and/or in the purpose thereof. Therefore, no intent by Defendant Dorothy Murren to hinder, delay or defraud the creditors of Thomas Murren, nor her participation in such a scheme by Thomas Murren, need be proven by the Plaintiff.  Notwithstanding the foregoing, if the law is found to be otherwise, then the Plaintiff avers that Defendant Dorothy Murren participated in all such asset transfers, and further participated in Thomas Murren's scheme to defraud his creditors thereby.

87. By reason of the foregoing, all such asset transfers are voidable and should be set aside by the Court.

88. By reason of the foregoing, the Defendant Dorothy Murren is personally liable to the Plaintiff to the extent of: (a) the aggregate of the dollar amount of all such asset transfers, subject to such adjustment as the equities of the case may require, all within the meaning of, and as contemplated by, Connecticut General Statutes Section 52-552a through 52-552l, inclusive.

## VIII SIXTH COUNT: (Liability of Transferee for Fraudulent Transfer Pursuant to Connecticut General Statutes Section 52-552f; Avoidance of Transfers)

89-110. Plaintiff hereby repeats, reiterates and re-alleges Paragraphs 62 through 83 of the Fifth Count as Paragraphs 89 through 110 of this, the Sixth Count, as if fully set forth herein.

111. All of said asset transfers were made by Thomas Murren to the Defendant Dorothy Murren without receiving a reasonably equivalent value in exchange for said transfers, and Thomas Murren was insolvent at the time of such transfers or, alternatively, Thomas Murren became insolvent as a result of such transfers.

112. By reason of the foregoing, all such asset transfers so made by Thomas Murren to the Defendant Dorothy Murren are fraudulent as to Cadle.

113. By reason of the foregoing, all such asset transfers are voidable and should be set aside by the Court.

114. By reason of the foregoing, Defendant Dorothy Murren is personally liable to the Plaintiff to the extent of: (a) the aggregate of the dollar amount of all such asset transfers, subject to such adjustment as the equities of the case may require, all within the meaning of, and as contemplated by, Connecticut General Statutes Section 52-552a through 52-5521, inclusive.

WHEREFORE, the Plaintiff, The Cadle Company, claims:

1.   Money damages against the Defendant, Dorothy Murren;

2.   Interest and attorneys' fees;

3.   The avoidance and setting aside of each and every one of
     the Income Transfers and Other Transfers (as said terms
     are defined in the Complaint), and of all other asset
     transfers, to the extent that such avoidance is necessary
     to satisfy the Plaintiff's claim in full;

4.   An attachment or other provisional remedy against the
     assets transferred or other property of Defendant Dorothy
     Murren, in accordance with the procedure prescribed by
     Chapter 903a of the Connecticut General Statutes;

5.   An injunction against further disposition by Defendant
     Dorothy Murren of the Income Transfers and Other
     Transfers, and of all other asset transfers, as said
     terms are defined or described in the Complaint;

6.   The appointment of a receiver to take charge of the
     assets so transferred, or of other property of Defendant
     Dorothy Murren;

367764

7. A levy and execution on the Income Transfers and Other Transfers, and/or of all other asset transfers, and/or on the proceeds and products thereof;

8. A finding, judgment and decree that Defendant Dorothy Murren holds the Properties and the products and proceeds of the improper financial gains described in the complaint in constructive trust for the benefit of the Plaintiff;

9. An order that a judgment lien or other execution process, may be placed upon the assets of Defendant Dorothy Murren and in favor of the Plaintiff;

10. Money damages against Defendant Dorothy Murren and in favor of the Plaintiff by reason of the inequitable conduct and improper financial gains, as set forth in the complaint; and

11. Such other and further relief as at law or in equity may pertain.

Dated at Hartford, Connecticut this 6th day of July, 2004.

PLAINTIFF,
THE CADLE COMPANY

By: _____
PAUL N. GILMORE, ESQ.
Federal Bar Number ct03347
UPDIKE, KELLY & SPELLACY, P.C.
One State Street
P.O. Box 231277
Hartford, CT 06123-1277
(860) 548-2600
Its Attorney

367764

## NOTICE

NOTICE IS HEREBY GIVEN TO THE DEFENDANT THAT THE PLAINTIFF INTENDS TO SEEK SATISFACTION OF ANY JUDGMENT RENDERED IN ITS FAVOR IN THIS ACTION AND AGAINST HER FROM ANY DEBT ACCRUING IN HER FAVOR BY REASON OF HER PERSONAL SERVICES.

Dated at Hartford, Connecticut this 6th day of July, 2004.

PLAINTIFF,
THE CADLE COMPANY

By: _____
PAUL N. GILMORE, ESQ.
Federal Bar Number ct03347
UPDIKE, KELLY & SPELLACY, P.C.
One State Street
P.O. Box 231277
Hartford, CT 06123-1277
(860) 548-2600
Its Attorney

367764

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**
(Bridgeport Division)

| | |
|---|---|
| THE CADLE COMPANY )<br>      Plaintiff, )<br>)<br>      vs. )<br>)<br>DOROTHY MURREN )<br>      Defendant. )<br>) | CIVIL ACTION NO.<br><br>3:00 CV-00317 (WWE)<br><br>JULY 6, 2004 |

## CERTIFICATION OF SERVICE

I DO HEREBY CERTIFY that a true and correct copy of the foregoing has been served, via first-class, United States mail, postage prepaid, this 6TH day of July, 2004 to the following:

    Paul A. Sobel, Esq.
    Bernard Green, Esq.
    Green and Gross, P.C.
    1087 Broad Street
    Bridgeport, CT 06604-4231

By: _____
    PAUL N. GILMORE, ESQ.
    Updike, Kelly & Spellacy, P.C.

367764