UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT
(Bridgeport)

| | |
|---|---|
| CADLE COMPANY | ) CIVIL ACTION |
| | ) |
| v. | ) MASTER DOCKET NO 3:00cv316 (WWE) |
| | ) |
| GRACE JONES | ) PLEADING APPLCABLE TO: |
| | )     NO: 3:00cv316 (WWE) |
| CADLE COMPANY | )     NO: 3:00cv317 (WWE) |
| | ) |
| v. | ) |
| | ) |
| DOROTHY MURREN | ) JULY 19, 2004 |

### DEFENDANTS' REPLY
### TO
### PLAINTIFF'S JUNE 14, 2004 SUPPLEMENTAL MEMORANDUM

This reply addresses the plaintiff Cadle's response to the court's April 13, 2004 order requesting the plaintiff to elaborate on a statement made in its Reply Brief. The statement is the contention that the facts giving rise to the imposition of a constructive trust do not satisfy the essential elements for a claim under the Connecticut Uniform Fraudulent Transfer Act ("CUFTA").

Cadle responded to the court's order with not only a June 14 Supplemental Memorandum, but with a June 14 motion for leave to amend the complaints, followed by proposed Second Amended Complaints dated July 6. The proposed amendments seek to add a fifth and sixth count to the complaints. The fifth and sixth counts claim that money paid to the defendant wives in 2001 as a result of the J.M. Layton transaction and the distributions made from Jomur

- 1 -

Associates, LLC to the defendant wives in 2000 as a result of the sale of the Van Zant Street Property are fraudulent transfers under CUFTA.

For the reasons set forth below, Cadle's proposition that the year 2000 and 2001 sale of assets by Murphy & Murphy and Jomur Associates and distribution of the proceeds to their owners, the wives, would support fraudulent transfer actions, but there would be no fraudulent transfer cause of action at all for the 1994 transfers by which the husbands parted with their stock ownership in Murphy & Murphy and caused their J&M Associates partnership to transfer the Van Zant Street Property to Jomur Associates seems hardly likely.

The defendants presume that the issue underlying the court's order for additional briefing is whether the CUFTA statute of limitations/repose will bar the fourth count constructive trust claims, for the reason that if the facts giving rise to them would have also supported a CUFTA action, the legal statute of limitations/repose will be applied to the equitable constructive trust claims per the principle cited by Judge Covello in Stefancin v. Nevada Club (unreported decision, US Dist Court, D. Conn., Covello, J., docket no. 3:02CV1299 (AVC) 2003).

**Response to Cadle's Section I Introduction.**

In the introductory section of its Supplemental Memorandum, Cadle argues that its fourth count "constructive trust claim is not a suit about fraudulent transfers at all; rather it is a suit about equitable ownership of property by the . . . husbands . . . where bare legal title to that property rests in the defendant [wives]." Cadle argues that the distinction between its constructive trust claims and a fraudulent transfer is that its constructive trust claims are based only upon the defendant husbands being equitable owners of each of the properties in question

- 2 -

for the reason that they exercise all indicia of ownership. The corollary to Cadle's argument is that the circumstances of the transactions and transfers in 1994 and before, which is how the defendant wives "obtained" the property interests in question, should be irrelevant to the proof of the constructive trust claims. The only thing that should matter is the present day circumstances.

As will be discussed below, this does not appear to be at all what Cadle has plead and argued. The facts plead in the fourth counts include the alleged circumstances of the transfer of title to the Jones home 1990, the Murren Vermont home in 1991, the transfer of the Murphy & Murphy stock in 1994 and the formation of Jomur Associates and transfer of the Van Zant Street Property to it in 1994.

In the introductory section of its Supplemental Memorandum, Cadle expands upon and modifies its prior explanation of the nature of its constructive trust claims. In its Footnote 1 on page 2 of its Supplemental Memorandum, Cadle explains that the underpinning for a constructive trust cause of action is the equitable doctrine of unjust enrichment. In the last sentence of the footnote, Cadle then remarks that the cause of action for the fourth counts might possibly be unjust enrichment, for which a constructive trust is a remedy - rather than being a stand-alone constructive trust cause of action. [1,2]

---

[1]    Cadle's 6/14/04 Supplemental Memorandum, p. 3.

[2]    Cadle has strenuously argued in prior pleadings that its claim for constructive trust is an equitable cause of action in-and-of itself - not merely a remedy, as had been argued by the defendants. Cadle now posits that the cause of action represented by its fourth counts is "either one for the imposition of a constructive trust, or one founded upon the equitable doctrine of unjust enrichment." Cadle 6/14/04 Supplemental Memorandum, page 2, Note 1.

But unjust enrichment is a doctrine based on someone <u>obtaining</u> money or property to which he or she is not entitled, to the detriment of someone else. <u>Burns v. Koellmer</u>, 11 Conn. App. 375, 384 (1987)[3]

As discussed below, the property that was "obtained" by the wives was the stock in the corporation, in the case of Murphy & Murphy, and membership interests in a limited liability company, in the case of Jomur. The transfers of the Murphy & Murphy stock took place in 1994. And the formation of Jomur and the transfer of the Van Zant Street Property to it took place in 1994, as well. The only thing that happened with respect to these entities in 2000 and 2001 is that Jomur sold its asset, the Van Zant Street Property, in 2000, an asset which it acquired in 1994, and Murphy & Murphy sold assets in 2001. Distributions were then made to the stockholders of Murphy & Murphy and members of Jomur as a result of ownership interests that dated back to 1994.[4]

---

[3]  <u>Burns v. Koellmer</u> explains the terms restitution, unjust enrichment and quantum meruit (quasi contract). The court explains that unjust enrichment and quantum meruit are species of restitution. In explaining Connecticut's application of the doctrine of unjust enrichment, the court states: "The question is: Did he, the party liable to the detriment of someone else, obtain something of value to which he was not entitled." <u>Id.</u>, at 384. internal quotation and citations omitted. <u>Burns v. Koellmer</u> is cited approving by more recent appellate authority, including <u>Gagne v. Vaccaro</u>, 80 Conn. App. 436, 444 (2003). Interestingly, <u>Gagne v. Vaccaro</u> involved the issue of whether an unjust enrichment claim was legally triable to a jury. The court explained that the common perception that an unjust enrichment cause of action is in every instance an <u>equitable</u> cause of action is misplaced. The court found the unjust enrichment cause of action there to be a <u>legal</u> cause of action with respect to the claim for money damages.

[4]  The ownership interest of Grace Jones in Jomur was actually acquired via a gift from her daughter Stacy Schlubach in 2000. In any event, the transaction Cadle finds fault with is the 1994 transaction by which Jomur was formed and the Van Zant Street Property was acquired by it. Indeed, Cadle argues that the husbands were the equitable owners of the Van Zant Street Property from and after the 1994 transfer.

The money received by the defendant wives in 2000 and 2001 was as a result of ownership interests in the wives that originated in 1994, and, if improper, could have been attacked as fraudulent transfers then.

In the case of the Jones residence and the Murren Vermont property, the husbands' interest in the title to those had been transferred in 1990 and 1991, respectively, with title to the Murren Trumbull home never having been in Mr. Murren's name.

Any transfers regarding these properties in issue took place in 1994 or before, and, if the facts regarding the transfers are as argued by Cadle, would have satisfied the essential elements of fraudulent transfer actions then.

### Response to Cadle's Section IIA. - the Murphy & Murphy Transactions.

Section IIA. of Cadle's Supplemental Memorandum addresses the Murphy & Murphy transactions. Cadle begins its argument that it is only the present day circumstances which support the constructive trust claims by arguing that the husbands of the defendant wives are the equitable owners of the Murphy & Murphy stock as a result of the facts set out on pages 4 through 7 of the Supplemental Memorandum. But the first two full paragraphs on page 5 deal with the insolvency of the defendants' husbands dating back to 1990 and the circumstances of the transfer of the stock in 1994 while the husbands were insolvent.[5]

---

[5]    The defendants disagree with some of Cadle's characterizations of fact and/or arguments based on the facts. For example, Cadle again argues impropriety regarding the transactions in which the Murphy & Murphy Stock was transferred to the defendants and the transaction in which Jomur Associates, LLC acquired the Van Zant Street Property, emphasizing the fact that there was no consideration for either. Yet, as argued by the defendants in the prior memoranda, Cadle introduced no evidence that either property had any value at the time of the transfers. Cadle attempts to address this only by the improper inference that because

- 5 -

On page 7 of its Supplemental Memorandum, Cadle argues that the husbands "remained the equitable owners of the stock through and including the [asset sale to J.M. Layton in 2001]." Id., emphasis added. The argument that the husbands improperly remained the equitable owners of the Murphy & Murphy stock at the time of the transfers means that if there was something wrong about the transfers when they were made, a cause of action for them would have arisen at then - in 1994. This is inconsistent with Cadle's argument that the facts in support of its present constructive trust claims are based on current circumstances and have nothing to do with what happened in 1994.

What is the basis for Cadle's "equitable ownership" claim? If the Murphy & Murphy stock had value in 1994, and if the defendant wives had purchased it then for fair market value with separate funds belonging to them individually, would Cadle seriously argue that the husbands retained equitable ownership of the stock? Would it make a difference if the husbands remained directors and officers of the company? There is no law or principle that requires a stockholder to be an officer or director of a company or face losing ownership of his or her stock. If, for the sake of the hypothetical, the Murphy & Murphy stock is assumed to have had value in 1994, and if it is assumed that the wives had purchased it for fair market value with their own money in 1994, Cadle would not be here today arguing that the husbands remained equitable owners of the stock from and after 1994. The only reason that Cadle is here today, attacking the

---

significant money was paid for the property in 2000 and 2001, it must have had significant value in 1994, six years earlier. These arguments are not relevant to the issue ordered to be briefed by the court, and the defendants request the court to consider them based on the prior memoranda.

ownership of the Murphy & Murphy stock, is because of the transfers of it for no consideration in 1994.

Cadle's Supplemental Memorandum obfuscates the issue the court ordered briefed. The reason is that Cadle does not discuss at all whether the facts argued for the 1994 transfers of the Murphy & Murphy stock satisfy the essential elements of a fraudulent transfer claim under CUFTA. The analysis is very simple. Subsection (a) of Conn. Gen. Stats. § 52-552f states:

> A transfer made . . . by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made . . . if the debtor made the transfer without receiving reasonably equivalent value in exchange for the transfer . . . and the debtor was insolvent at the time of the transfer . . .

The same facts that Cadle argues in support of its contention that equitable title in the Murphy & Murphy stock remained in the husbands from and after 1994 satisfy the essential elements of a fraudulent transfer claim under CUFTA.

The obfuscation of Cadle's argument is the attempt to focus the court's attention on the money paid to Murphy & Murphy for the sale of assets to J.M. Layton in 2001, and the wives' receipt of a distribution from Murphy & Murphy and covenant not to compete payments.[6]  Cadle makes this argument on pages 9 through 12 of its Supplemental Memorandum.

There is nothing argued as improper about the money paid by J.M. Layton to Murphy & Murphy. The only things argued as improper by Cadle are the distribution of the J.M. Layton

---

[6]    It was also argued in the prior memoranda that the proceeds paid by J.M. Layton to Murphy & Murphy was as a result of an allocation recommended by accounting advice and did not necessarily correlate to any stand-alone value that Murphy & Murphy might have had if the husbands decided to not work for it anymore. Again, this issue was argued in the prior memoranda, and since it is not material to the issue the court ordered briefed, the defendants respectfully direct the court's attention for further detail regarding this issue.

money from Murphy & Murphy to the wives and checks with the wives and husbands names jointly on them, as covenant not to compete payments.

Cadle argues that since the husbands remained equitable owners of the Murphy & Murphy stock from and after the time they transferred it in 1994, they continued to be the equitable owners in 2001. Cadle further agues that since the husbands were the equitable owners of the Murphy & Murphy stock in 2001, the distribution of the J.M. Layton proceeds belong to the husbands.[7]

This argument ignores the fact that the distribution was made to shareholders as a result of their stock interests acquired in 1994. There was no transfer of anything by the husbands with respect to any stock interest in Murphy & Murphy at the time of the J.M. Layton transaction in 2001, nor was there any transfer of anything with respect to the stock in Murphy & Murphy at any time since 1994.

If the stock had any value at the time of the 1994 transfers, as Cadle implies, but for which there was no evidence introduced, the transfers would have been fraudulent conveyances under Conn. Gen. Stats. § 52-552f(a), and probably 552(e), as well.

---

[7]   Cadle argues that the joint checks for the covenant not to compete payments really represent, in part, deferred compensation for the sale of Murphy & Murphy assets and should belong to Murphy & Murphy. The defendants disagree with this contention. If anything, the value paid by J.M. Layton was for the husbands' books of business and covenants not to compete. It is doubtful that J.M. Layton would have paid anything to Murphy & Murphy if the husbands did not agree to enter into covenants not to compete with J.M.Layton.

**Response to Cadle's Section IIB. - the Van Zant Street Property.**

Section IIB. of Cadle's Supplemental Memorandum addresses the Van Zant Street Property. This section begins in the same manner as the discussion of the Murphy & Murphy Stock; that is, the facts of the transactions are reprinted from Cadle's post-trial brief. As with the Murphy & Murphy Stock, the Cadle recitation of facts concerning the Van Zant Street Property begins with the circumstances surrounding the 1994 transaction by which Jomur Associates, LLC was formed and the Van Zant Street Property was transfered by the husbands' J&M Associates partnership to Jomur Assciates, LLC.[8]

As with the Murphy & Murphy stock, Cadle focuses its Jomur analysis on the year 2000 sale of the Van Zant Street Property. Cadle goes so far as to say: "In large measure, it is immaterial whether the initial acquisition of the Van Zant Street property by Jomur itself constituted an actionable fraudulent transfer under the Act."[9]

But Cadle goes on to argue that the 1994 transaction would not have supported a fraudulent transfer claim. The reason given is that the husbands did not own the Van Zant Street Property individually, but through a partnership in which they were the only partners. Cadle then argues that it would not have had a fraudulent transfer action in 1994 because it could have

---

[8]     Again, the defendants disagree with Cadle's characterization of the facts. For example, Cadle attempts to imply that the Van Zant Street Property had equity in it at the time of the transfer from the husbands' partnership to the limited liability company in which Mrs. Murren and Mrs. Schlubach were members. But there was no evidence that there was any equity at all at the time of the transfer. Cadle also states it to be a fact that Mrs. Murren did not know she was an owner of Jomur Associates at the time of the transfer. This is contrary to the evidence, wherein Mrs. Murren signed the formation documents for Jomur.

[9]     Supplemental Memorandum, p. 19.

only obtained a charging lien on the husbands' partnership interest.[10] This argument is false, as well as being inconsistent with, and in defeat of, the constructive trust claim.

If Cadle's argument that all it had is a charging lien or charging order on the partnership interest of the husbands in J&M Associates (the general partnership that transferred the Van Zant Street Property to Jomur Associates), then it would be impossible to assert that the husbands ever had any individual equitable title to the Van Zant Street Property and that they remained the equitable owners of it from and after the 1994 transfer from the J&M Associates partnership to Jomur, LLC. If Cadle's exclusive remedy with respect to J&M Associates partnership property would have been a charging order or charging lien, then Cadle cannot, in effect, assert a claim of J&M Associates against the owners (the wives) of the recipient (Jomur) of a transfer of the J&M Associates property. If this is Cadle's position, Cadle should have named J&M Associates and Jomur as defendants, claimed a charging order against J&M Associates, and claimed a fraudulent transfer against J&M Associates and Jomur for the 1994 transaction.

What the defendants do not dispute is that if the J&M Associates partnership was carrying on business in a permitted and proper fashion, Cadle could not have forced any distribution from the partnership to its partners. But the case cited by Cadle for the proposition that the only cause of action it had is a charging lien or charging order against the partnership interest of the husbands in J&M Associates, Madison Hills Limited Partnership v. Madison Hill, Inc., 35 Conn. App. 81 (1994), is misplaced. In Madison Hills, there was no allegation that the partnership participated in any fraud. In the present action, however, assuming Cadle's facts for

---

[10]    Supplemental Memorandum, pp. 20-22.

the purposes of argument, only, if there was equity in the Van Zant Street Property at the time of the 1994 transfer,[11] J&M Associates would have been a participant in a fraudulent transfer designed to render the partnership interest of the husbands worthless, in fraud of their creditors. Such a transfer would have been in fraud of the husbands, as partners in J&M Associates, and in fraud of the creditors of the husbands. Cadle's argument that it had no fraudulent transfer claim ignores what would have been the complicity and participation of J&M Associates in the transaction and the fact that it could have maintained a suit against J&M Associates and the husbands, jointly.

Further, as Cadle points out, its remedy would have been to realize its claim out of a charging order against J&M Associates. It could have attacked the transfer from J&M Associates to Jomur Associates as fraudulent with respect to the partners of J&M Associates. But, in contravention of partnership principles, and without naming J&M Associates or Jomur Associates, LLC as parties to this action, Cadle now seeks to realize on the value of the husband's partnership interest in J&M Associates via a direct action against the owners of the limited liability company transferee of the Van Zant Street Property, Jomur Associates, because of what Cadle asserts was an improper transfer from J&M Associates to Jomur in 1994.

---

[11] Cadle argues that technically there would have been no equity because although it claims the property to have been worth more than $112,500, but without any evidence of value in 1994, it claims that even though there was an agreement in place to discharge a $600,000 mortgage for the payment of $112,500, the payment was not made until just after the transfer. Supplemental Memorandum, p. 23.

**Response to Cadle's Section IIC. - the Jones and Murren Residences.**

Cadle addresses the issue of the residences in Section IIC. of its Supplemental Memorandum. In essence, Cadle presumably argues in its February 12 Post Trial Memorandum (p. 26) that because the husbands made the mortgage payments on the residences owned by the wives, the husbands are the equitable owners of the entire residences, and residences, are, therefore, in their entirety, subject to Cadle's claim for constructive trust.

On the issue of whether the facts giving rise to a constructive trust claim would have supported a fraudulent transfer claim, Cadle, again, fails to address the fact that deeds were executed in 1990 and 1991 and the issue of whether fraudulent transfer actions could have been maintained then, in 1990 and 1991. Presuming that there was equity in the homes at the times of transfers, that the husbands were insolvent at the time and that the transfers were for no consideration, fraudulent transfer or fraudulent conveyance actions could have been maintained.

Cadle now argues that it could not maintain a fraudulent transfer action only as to the mortgage payments (without addressing the 1990 and 1991 deeds, at all), because the payments discharged debt on which the husbands were liable. But even this argument as to the mortgage payments is too narrowly focused. It only addresses the payment running from the husbands to the mortgage lenders as a transfer by the husbands to the mortgage lenders and does not consider whether the payments may also be indirect transfers to the wives.[12] If, again, for the purposes of hypothetical facts, it is assumed that while a debtor is insolvent and indebted to a creditor such as

---

[12] The defendants dispute that the mortgage payments were fraudulent transfers in any event. The defendants' prior briefs discuss why the mortgage payments were not fraudulent transfers for other reasons. These included the facts that they were made for value received by the husbands, represented by the husband's use of the homes and discharge of their

Cadle, such debtor co-signs a mortgage note as a favor to a friend, the debtor has no other connection with the mortgaged property, and the debtor makes payments on the mortgage note while the debtor is still insolvent, the "transfer" for the purposes of CUFTA may be viewed not only as indirect transfers to the friend represented by each mortgage payment, as and when made, but the act of incurring the obligation by co-signing the mortgage is a fraudulent transfer, as well. Incurring obligations falls within CUFTA, and "indirect transfers" are covered, as well. See Conn. Gen. Stats. §§ 52-552e(a) and 552f(a) for "obligations" in fraud of creditors and § 552b(12) for the definition of "transfer" to include indirect transfers.

Cadle's argument that it had no fraudulent transfer cause of action for mortgage payments on the residences is incorrect. More importantly, the transfers of Mr. Jones' interest in the Jones residence and the transfer of Mr. Murren's interest in the Murren Vermont residence took place by deeds dated in 1990 and 1991, respectively. The facts surrounding the 1990 and 1991 transfers are alleged and argued in support of Cadle's constructive trust claims, and the facts concerning them satisfy the essential elements for fraudulent transfer actions.

Further regarding the residences, Cadle's argument that because it does not have a fraudulent transfer action as a result of the mortgage payments, it can therefore impose a constructive trust on the whole value of the house is preposterous. And to buy Cadle's argument and take it to its natural extension would be to hold that in the case of a single income family, practically everything in the name of the non wage-earner spouse is available to the creditors of the working spouse. This would even include the one half interest the non working spouse might hold in the marital home. This is not and should not be the law.

_____

support obligations and that they were made from exempt wages.

**Conclusion.**

For the foregoing reasons, the facts of the transactions by which the defendants acquired their interests in their residences, the Murphy & Murphy stock and Jomur Associates are as argued by Cadle in support of its constructive trust claims satisfy the essential elements of a fraudulent transfer action under CUFTA at the time the husbands, or their partnership, in the case of J&M Associates, parted with their interests in the respective properties - in 1994 and before.

<div style="margin-left:40%">

The defendants
Grace Jones and Dorothy Murren

by _____
Paul A. Sobel, their attorney
Green & Gross, P.C.
1087 Broad Street
Bridgeport, CT., 06604
Tel: (203) 335-5141
Fax: (203) 367-9964
Email: psobel@gglaw.net
Federal Bar No. ct11452

</div>

## CERTIFICATE OF SERVICE

This to certify that a copy of the foregoing was served via U.S. Mail, postage prepaid, on July 19, 2004 to the following counsel of record:

Paul N. Gilmore, Esq.
Updike, Kelly & Spellacy, P.C.
One State Street
P.O. Box 231277
Hartford, CT 06213-1277
Tel.: (860) 548-2600
Fax:  (860) 548-2680

Paul A. Sobel
Green & Gross, P.C.