Service: **Get by LEXSEE®**
Citation: **2000 U.S. App. LEXIS 22688**

2000 U.S. App. LEXIS 22688, *; 25 Employee Benefits Cas. (BNA) 1057

IRON WORKERS' LOCAL NO. 25 PENSION FUND, et al., Plaintiffs-Appellees, v. MCS GENERAL CONTRACTORS, INC.; MCS STRUCTURAL SYSTEMS, INC., Defendants-Appellants.

Nos. 98-2107; 99-2262

UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

2000 U.S. App. LEXIS 22688; 25 Employee Benefits Cas. (BNA) 1057

August 30, 2000, Filed

**NOTICE:** [*1] NOT RECOMMENDED FOR FULL-TEXT PUBLICATION. SIXTH CIRCUIT RULE 28 (g) LIMITS CITATION TO SPECIFIC SITUATIONS. PLEASE SEE RULE 28(g) BEFORE CITING IN A PROCEEDING IN A COURT IN THE SIXTH CIRCUIT. IF CITED, A COPY MUST BE SERVED ON OTHER PARTIES AND THE COURT. THIS NOTICE IS TO BE PROMINENTLY DISPLAYED IF THIS DECISION IS REPRODUCED.

**SUBSEQUENT HISTORY:** Reported in Table Case Format at: 2000 U.S. App. LEXIS 28321.

**PRIOR HISTORY:** On Appeal from the United States District Court for the Eastern District of Michigan. 95-70384. O'Meara. 9-10-98, 9-29-99.

**DISPOSITION:** AFFIRMED.

## CASE SUMMARY

**PROCEDURAL POSTURE:** Defendant employers challenged judgment of United States District Court for Eastern District of Michigan, which found them liable for unpaid pension contributions under 29 U.S.C.S. § 1145 and awarded plaintiff union pensions funds interest on unpaid contributions, additional interest in lieu of liquidated damages, and attorneys' fees pursuant to 29 U.S.C.S. § 1132(g)(2).

**OVERVIEW:** Defendant employers challenged the underlying judgment and the 29 U.S.C.S. § 1132(g)(2) awards. The trial court did not err in failing to issue written findings of fact concerning defendants' affirmative defense of notification because factual findings were not necessary and the trial court correctly decided the issue on the merits. The trial court correctly determined that a collective bargaining agreement (CBA) obligated defendants to make contributions to plaintiff union pension funds for all employees performing work related to the erection of pre-engineered buildings, including pre-apprentice workers. Since defendants were obliged to make contributions to plaintiffs for covered work by those employees irrespective of their status under the pension plans, the trial court did not err in basing its decision exclusively on the CBA. While the trial court's reliance on an unauthenticated audit was error, reversal was not warranted as it was harmless error. The interest award pursuant to 26 U.S.C.S. § 6621 was correct as the interest rate was not covered by the CBA. Plaintiffs were entitled to attorney's fees under 29 U.S.C.S. § 1132(g)(2) and the amount was reasonable.

**OUTCOME:** Judgment affirmed because trial court correctly determined that defendants were liable under collective bargaining agreement (CBA), interest award under statutory provision was correct as interest rate was not covered by CBA, and plaintiffs were

entitled to reasonable attorney's fees.

**CORE TERMS:** unpaid, pre-apprentice, audit, work performed, liquidated damages, apprentices, signatory, awarding, erection, collective bargaining agreement, affirmative defense, calculation, renewal, pre-engineered, pension, interest rate, underlying judgment, conclusions of law, pension plan, supplemental agreement, probationary, journeymen, segment, notice, renew, owed, opportunity to challenge, defendants claim, prescribed, motion hearing

## LexisNexis(R) Headnotes ♦ Hide Headnotes

Civil Procedure > Trials > Bench Trials
*HN1* Fed. R. Civ. P. 52(a) requires that in a bench trial, the court must find the facts specifically and state separately its conclusions of law thereon. Findings of facts and conclusions of law may be stated orally in open court or in a filed opinion. More Like This Headnote

Civil Procedure > Appeals > Standards of Review > De Novo Review
*HN2* The appellate court reviews questions of contract interpretation de novo. More Like This Headnote

Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Procedures
Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Procedures
Pensions & Benefits Law > Multiemployer Plans > Collection of Plan Contributions
*HN3* 29 U.S.C.S. § 1145 states that an employer's obligation for pension contributions may arise under a retirement pension plan or a collective bargaining agreement. More Like This Headnote

Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies
Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies
*HN4* See 29 U.S.C.S. § 1132(g)(2).

Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies
Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies
*HN5* To determine the rate of interest for unpaid contributions to a retirement pension plan, the court is to use the rate for unpaid contributions provided for in the retirement pension plan or if the plan does not provide such a rate, the rate prescribed in 26 U.S.C.S. § 6621. More Like This Headnote

Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies
Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies
*HN6* 29 U.S.C.S. § 1132(g)(2) requires that the court apply the rate prescribed in 26 U.S.C.S. § 6621 when the retirement pension plan does not provide for a rate for determining interest to be charged on unpaid contributions. More Like This Headnote

Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies
Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies
*HN7* 29 U.S.C.S. § 1132(g)(2) requires the court to award the plan the greater of the additional interest equivalent to the interest on unpaid contributions or the liquidated damages provided for in the retirement pension plan. More Like This Headnote

Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies

Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies
**HN8** 29 U.S.C.S. § 1132(g)(2) mandates that the court award attorneys' fees if the judgment is in favor of the retirement pension plan. More Like This Headnote

Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies
Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies
**HN9** While the award of attorneys' fees is mandatory under 29 U.S.C.S. § 1132(g)(2) when judgment is entered in favor of a retirement pension plan, the amount must be reasonable. 29 U.S.C.S. § 1132(g)(2)(D). More Like This Headnote

Civil Procedure > Costs & Attorney Fees > Attorney Fees
Civil Procedure > Appeals > Standards of Review > Abuse of Discretion
**HN10** The appellate court reviews awards of attorneys' fees under an abuse of discretion standard. The commonly accepted approach for determining reasonableness is the lodestar approach. The lodestar approach takes the reasonable hourly rate and multiplies it by the number of hours reasonably expended on litigation. While the product of this formula is generally presumed to be reasonable, the court may adjust it downward in compelling circumstances. More Like This Headnote

**COUNSEL:** For IRON WORKERS' LOCAL NO. 25 PENSION FUND, IRON WORKERS' LOCAL UNION NO. 25 INDIVIDUAL ACCOUNT RETIREMENT FUND, IRON WORKERS HEALTH FUND OF EASTERN MICHIGAN, IRON WORKERS' LOCAL NO. 25 VACATION PAY FUND, Plaintiffs - Appellees (99-2262): Ronald S. Lederman, Scott D. Norton, Anthony A. Asher, Sullivan, Ward, Bone, Tyler & Asher, Southfield, MI.

For IRON WORKERS' APPRENTICESHIP FUND OF EASTERN MICHIGAN, Plaintiff - Appellee (99-2262): Ronald S. Lederman, Scott D. Norton, Sullivan, Ward, Bone, Tyler & Asher, Southfield, MI.

**JUDGES:** Before: KENNEDY and NORRIS, Circuit Judges; KATZ, District Judge. *

* The Honorable David A. Katz, United States District Judge for the Northern District of Ohio, sitting by designation. **[*2]**

**OPINIONBY:** KENNEDY

**OPINION:** KENNEDY, Circuit Judge. This action for unpaid pension contributions is before the court on the consolidated appeals of MCS General Contractors, Inc. (General) and MCS Structural Systems, Inc. (Structural) (defendants). They appeal the district court's judgments (1) finding them liable for unpaid pension contributions under 29 U.S.C. § 1145 and (2) awarding plaintiffs interest on the unpaid contributions, additional interest in lieu of liquidated damages, and attorneys' fees pursuant to 29 U.S.C. § 1132(g)(2). On appeal defendants raise numerous issues which we distill to the following. n1 As to the underlying judgment, defendants assert that the district court erred by (1) failing to state its findings of facts as to defendants' affirmative defense, (2) ruling that the collective bargaining agreement to which defendants are a signatory includes certain categories of employees, (3) basing its analysis on the collective bargaining agreement without consulting the plan documents, and (4) declining to provide defendants the opportunity to challenge plaintiffs' third audit assessing the amount of unpaid contributions for **[*3]** the period of April 1996 through June 1998. As to the § 1132 (g)(2) award, defendants claim the district court erred by (1) awarding interest on the unpaid contributions without consulting the pension plan, (2) awarding liquidated damages where the plan does not provide for such damages, (3) awarding attorneys' fees, and (4) if it was required to award attorneys' fees, awarding an unreasonable amount. For the reasons stated below, we AFFIRM the district court's judgments.

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 Defendants' briefs mention several other possible issues but offer no arguments in their support. Accordingly, these issues are waived.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

**FACTS**

Plaintiffs are union pension funds organized under the Employee Retirement Investment Security Act (ERISA) 29 U.S.C. § 1001 et. seq. Defendants are construction companies which employed many of Local No. 25's members. This action arises from a dispute between the parties about the extent to which defendants are obligated to make contributions to the funds. The dispute [*4] centers on the interpretation of the contribution provisions of an agreement to which General is a signatory.

On September 28, 1992, General became a signatory to a collective bargaining agreement (CBA) between the International Association of Bridge, Structural and Ornamental Iron Workers Local Union No. 25 and Great Lakes Metal Building Erectors Association (GLMBEA). n2 General also entered into a separate agreement with Iron Workers agreeing to adopt any renewals or additional agreements between Iron Workers and GLMBEA unless it notified Iron Workers that it desired not to adopt such agreements 120 days prior to the renewal or agreement.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n2 Structural is not formally a signatory to the CBA; however, it effectively became a signatory when the district court ruled that it is the alter ego of General. Accordingly, this opinion discusses the requirements of the CBA as applying to both companies.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

The CBA requires defendants to make contributions to the funds for "each employee covered by [the] Agreement." The [*5] parties agree that defendants have failed to make all the required contributions. They disagree, however, on the amount of unpaid contributions. Specifically, they disagree over whether the CBA requires defendants to make contributions to the funds for covered work performed by employees defendants describe as pre-apprentices. Plaintiffs assert that the CBA requires defendants to make contributions for all covered work irrespective of who performs it, thereby including covered work performed by pre-apprentices. Defendants interpret the relevant provisions as requiring them to make contributions only for covered work performed by employees described in Article IX--journeymen, apprentices, and probationary apprentices--thereby excluding covered work performed by others, whom they describe as pre-apprentices.

The district court tried the case without a jury. It divided the trial into two segments. The first segment, conducted on April 14, 1997, dealt with plaintiffs' claim that Structural was the alter ego of General and thus also bound by the CBA to make contributions to the funds. After hearing testimony, the court issued findings of facts and concluded that Structural was the alter [*6] ego of General. The second segment, conducted on May 18, 1998, concerned (1) defendants' affirmative defense that the CBA had expired and (2) the amount of damages. After this segment, the court apparently made two rulings. The first, according to Judge

O'Meara, on July 8, 1998, when "the court ruled upon the issue of contract renewal, holding that the contract . . . was properly renewed and remains in effect." There is no record entry, however, to indicate that such a ruling was made. n3 The second, when the court concluded that under the CBA defendants were obligated to make pension contributions for all covered work performed under the contract including that performed by pre-apprentices. To establish the amount defendants owed in unpaid contributions, plaintiffs conducted three audits of defendants' operations. The third of these audits was given to the judge after the trial and was neither stipulated to or otherwise properly authenticated. Nevertheless, the court relied on this audit as well as the others and determined that defendants owed the funds $ 372,234.47 in unpaid pension contributions. Defendants filed a timely notice of appeal from the judgment.

- - - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n3 Defendants are partially to blame for this omission from the record. At a post trial motion hearing, defendants brought it the district court's attention that this order was not contained in the record. The court requested that defendants draft an order and file it with the clerk's office. Apparently, defendants failed to do so.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - **[*7]**

After the entry of that judgment, plaintiffs moved for liquidated damages, interest on the unpaid contributions, and attorneys' fees pursuant to § 1132(g)(2). The district court referred the matter to a magistrate judge for a recommendation and report. The magistrate judge recommended that the court enter judgment for the plaintiffs for a total of $ 217,219.17--$ 89,936.62 for interest on unpaid contributions, $ 76,671.30 for additional interest in lieu of liquidated damages, $ 45.653.50 for attorneys' fees, and $ 4,957.75 for filing and audit fees. The court adopted this recommendation and entered a judgment against defendants for this amount. Defendants filed a timely notice from that judgment.

The consolidated appeals are now before this Court.

## DISCUSSION

### I. UNDERLYING JUDGMENT

Defendants attack the underlying judgment on several grounds. First, defendants claim that the district court never issued findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52(a) concerning their affirmative defense. Second, defendants argue that the district court erred in construing the CBA to require defendants to make pension fund contributions for covered work performed **[*8]** by pre-apprentices. Third, defendants maintain that the court erred by finding them liable without first reviewing the plan documents. Finally, they assert that they were not given the opportunity to challenge the third audit the district court used to assess damages.

*A. Affirmative Defense*

At trial, defendants raised one affirmative defense. n4 They maintained that they notified Iron Workers of their intent not to renew their status as a signatory to the CBA within the required time and thus were not bound by the extended agreement between Iron Workers and GLMBEA. Defendants pointed to the automatic renewal clause in the CBA which provides that their status as a signatory to the CBA will renew automatically on a yearly basis after its March 1997 expiration date unless one of the parties to the agreement provides notice ninety days in advance of the renewal dates of their intent not to renew. Because they provided notice on November 13, 1996, they argued, they were no longer bound by the agreement. Plaintiffs, on

the other hand, directed the court's attention to the supplemental agreement which states,

> The undersigned Employer further agrees that, unless he notifies the [*9] Union to the contrary by registered mail at least one hundred twenty (120) days prior to the expiration date of the April 1, 1992 agreement . . . or any renewal of that Agreement or any subsequent collective bargaining agreement, the undersigned Employer will adopt and be bound by all provisions of any [such agreement].

Plaintiffs argued that because the CBA was last extended effective April 1, 1996, and defendants notice was not until November of 1996, defendants remained bound by the CBA. The district court apparently agreed that the supplemental agreement governed and that under this agreement defendants were still bound by the CBA. It failed, however, to reduce its order to writing or to find facts regarding its conclusion. Defendants assert that Rule 52(a) mandates that this Court reverse the judgment and remand for retrial because of this failure.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n4 On appeal, defendants claim that they raised and preserved a second affirmative defense--that Iron Workers breached the CBA by failing to provide defendants with the "competent" workmen for which the agreement provides. However, we do not believe this to be the case. This defense was not mentioned in the final pre-trial order. Further, in their twenty-four page trial brief, filed with the district court, they dedicated only two lines to their defense. This defense would fail. Iron Workers is not a party to the law suit. The funds made no contract to supply workers.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - [*10]

They are mistaken. HN1 Rule 52(a) requires that in a bench trial the court "find the facts specifically and state separately its conclusions of law thereon." Fed. R. Civ. P. 52(a). Findings of Facts and conclusions of law may be stated orally in open court or in a filed opinion. See id. At least twice Judge O'Meara stated that he had ruled that defendants were bound by the extension of the CBA--once in his September 1998 opinion and again during a motion hearing. These statements satisfy the conclusions of law requirement of Rule 52(a).

While the court did not make any findings of fact as to defendants' defense, this failure does not warrant remand. The issue of whether defendants were bound by the extended agreement is essentially one of contract interpretation--a question of law--as their disagreement here centers on what contract provision controls--the provision in the CBA or the provision in the supplemental agreement. See Ferro Corp. v. Garrison Indus., Inc., 142 F.3d 926, 931 (6th Cir. 1998). The parties appear to agree on the relevant dates--when the CBA was extended and when defendants provided notice. As the issues is a question of law, it was not necessary [*11] for the district court to find facts.

Further, we agree with the district court's decision on the merits. The supplemental agreement controlled the analysis and under that agreement defendants had to provide notice of their intent not to renew 120 days prior to any extension of the CBA. The CBA was extended effective April 1, 1996. Defendants did not provide notice until November 13, 1996, several months after the CBA was extended.

B. *Classification of Employees*

Having concluded that the CBA was properly extended and continued to bind defendants, the district court ruled that defendants were required to make fund contributions for all erection work on pre-engineered buildings by whomever it was done, whether union or nonunion. It did so because it found that the CBA does not determine contributions based on which employees performed the work. Rather, the CBA determines contribution obligations based on the type of work performed by defendants' employees. And because defendants did not produce sufficient contemporary records to establish when employees were performing work for which the CBA did not require contributions, 29 U.S.C. § 1059 mandated that [*12] they owed contributions for all erection work performed. On appeal defendants challenge the district court's ruling that the CBA does not determine contributions based in part on which category of employees performed the work. They assert it does so by requiring them to make contributions only for erection work performed by journeymen, apprentices, and probationary apprentices, thereby excluding those how have not achieved such status, even though doing erection work covered by the CBA.

HN2 This Court reviews questions of contract interpretation de novo. See Maurer v. Joy Techs., Inc., 212 F.3d 907, 914 (6th Cir. 2000). The CBA requires defendants to make contributions to the funds for "each employee covered by [the] Agreement" pursuant to the provisions of Article IX. Article IX is entitled "WAGES AND OTHER REQUIRED CONTRIBUTIONS." It details the wage rates and fund contributions defendants are to pay for work done by journeymen, apprentices, and probationary apprentices. It says noting about wage rates or fund contributions for work performed by pre-apprentices. It does not, however, state that journeymen, apprentices, and probationary apprentices are the employees [*13] covered by the agreement. Indeed, no provision of the CBA makes such a statement. Instead, the CBA contains sections that provide what type of work is covered. Article II says that the agreement applies to "all facets involving the erection of a pre-engineered building." Article III defines covered work as work on

> canopies and pre-fab buildings erected at gas stations, and the erection of a pre-engineered building system package, regularly produced by a recognized metal building manufacturer, including its accessories and related components and including retrofit construction on existing buildings, pre-engineered as well as other construction types, using roofing and siding systems and their related components and accessories.

As the only provisions regarding the CBA's scope of coverage refer to covered work, it follows that any employee performing covered work is an employee covered by the agreement. As the pre-apprentices were performing covered work, they were covered by the agreement and therefore the funds are entitled to contributions for that work. Accordingly, we agree with the district court's ruling that the CBA obligates defendants to make contributions to the [*14] funds for all employees performing work related to the erection of pre-engineered buildings. n5

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n5 Defendants also object to the district court's finding that they failed to present sufficient evidence to satisfy their burden under § 1059. They limit their objection to whether they produced sufficient evidence to distinguish pre-apprentices from other categories of employees on the theory that they are not required to make contributions for pre-apprentice work. Because we reject that theory, we do not address this claim.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

*C. The Plan Documents*

The district court based its ruling that defendants owed contributions for covered work performed by pre-apprentices entirely upon the CBA with no mention of the plan documents or whether the pre-apprentices were participants under the plan. Indeed, it does not appear that the district court possessed the plan documents. n6 Defendants appear to argue that before the court could rule that the CBA entitled the funds to contributions, it was required to determine whether **[*15]** the employees were entitled to benefits under the plan. And, they maintain, its failure to do so is reversible error.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n6 The parties have subsequently supplemented the record to include the plan.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

They are mistaken. *HN3* Section 1145 states that an employer's obligation may arise under a plan or a collective bargaining agreement. See 29 U.S.C. § 1145. The majority of cases defendants cite for the proposition that the court must base its decision on both the plan and the CBA involved collective bargaining agreements that required contributions to be made as set forth in the plan. Here the CBA makes no such reference. Further, the district court's conclusion is supported by our decision in Local No. 348 v. Kohn Beverage Co., 749 F.2d 315 (6th Cir. 1985). In that case we held that where a collective bargaining agreement determines contributions based upon employee classification, the absence of language distinguishing union from nonunion indicates that the agreement covers **[*16]** all the employees within the classification. See id. at 319. Analogously, the CBA determines contributions based upon work performed and makes no distinction between plan participants and nonparticipants. Accordingly, defendants were obliged to make contributions to funds for covered work performed by the pre-apprentices irrespective of their status under the plan. Therefore, the district court did not err by basing its decision exclusively on the CBA.

*D. Third Audit*

To determine the amount of unpaid contributions defendants owed, the court relied on three audits plaintiffs conducted of defendants' operations. On appeal, defendants object to the court's use of the third of these audits. Plaintiffs submitted this audit after the trial had concluded; it was not authenticated. Defendants assert that they were not given an opportunity to challenge the validity of this audit and were thus deprived of what they perceive as their right to be "fully heard" under Fed. R. Civ. P 52. Specifically, defendants contended in their post trial motions and here again that the audit should not have included pre-apprentices as covered employees. Other than this objection, they do **[*17]** not appear to contest the method of calculation--that is, which of the three categories the pre-apprentices were placed in once the decision was made that the pre-apprentices were to be included in the audit as covered employees.

While the district court's reliance on an unauthenticated audit is error, we do not believe this error warrants reversal or remand. Because defendants' only objection to the third audit is that it includes pre-apprentices, the error is harmless. The court had already ruled on this issue; allowing the defendants to raise it again would not change the result.

Because all of defendants' attacks on the underlying judgment are without merit, we affirm the district court's judgment that defendants are liable to plaintiffs for $ 372,234.47

## II. SECTION 1132(g)(2) AWARDS

Defendants attack the district court's judgment awarding plaintiffs interest on unpaid contributions, additional interest in lieu of liquidated damages, and attorneys' fees pursuant to § 1132(g)(2) on essentially four grounds. First, defendants argue that the court did not have the necessary document--the pension plan--to determine the amount of interest on unpaid contributions it should [*18] award plaintiffs, and had it, its decision would have been different. Second, defendants make the same assertion for the award of additional interest in lieu of liquidated damages. Third, defendants maintain that plaintiffs' conduct during the litigation mandates a finding that they were not entitled to attorneys' fees. And fourth, they assert if this Court determines that attorneys' fees are warranted, plaintiffs' conduct in the case mandates that the period for assessing such fees should begin September 1, 1998.

The law governing most of this dispute is contained in 29 U.S.C. § 1132(g)(2). That section provides, HN4"In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan" (1) the unpaid contributions, (2) interest on the unpaid contributions, (3) an amount equal to the greater of such interest or the liquidated damages provided for in the pension plan, and (4) reasonable attorneys' fees. 29 U.S.C. § 1132(g)(2). HN5To determine the rate of interest for unpaid contributions, the court is to use the [*19] rate for unpaid contributions provided for in the plan or if the plan does not provide such a rate, the rate prescribed in § 6621 of Title 26. See id.

A. Interest on Unpaid Contributions

Defendants urge this Court to reverse the district court's award of interest on unpaid contributions because, they assert, the magistrate judge did not have the pension plan documents necessary to determine the amount of interest to which plaintiffs were entitled. Had the magistrate reviewed these documents, they maintain, he would have realized that the applicable interest rate was three percent over the prime rate as established by the National Bank of Detroit, as is indicated by the CBA and Iron Workers' Form 5011. The applicable provision of Form 5011 states,

> If payment is not made by the 26th of the month, cost of collection charges shall be assessed at three percent (3%) over the prime rate as established by the National Bank of Detroit on the dates the delinquency first occurs, plus reasonable attorney fees required to collect the delinquent contributions and the cost of collection charges. n7

- - - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n7 The language of the CBA is essentially the same.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - [*20]

The magistrate's report contradicts defendants' assertion that he did not review the plan. When discussing the applicable interest rate, he remarks, "A review of all plan documents submitted by plaintiffs also shows no provision of the plan determining the interest rate to be charged on unpaid contributions." The content of this remark is also the basis for his finding

that the rate in § 6621 of Title 26 thus governed the calculation. Because he found the plan did not contain a rate for unpaid contributions, he ruled that 1132(g)(2) required him to apply the rate prescribed in § 6621.

We agree with the magistrate's conclusion. Defendants' assertion that the provision of the CBA or of Form 5011 control this inquiry is incorrect. *HN6* Section 1132(g)(2) requires that the court apply the rate prescribed in § 6621 when the *plan* does not provide for a rate for determining interest to be charged on unpaid contributions. See 29 U.S.C. § 1132(g)(2). What the CBA or any other document provides is irrelevant in this case. n8 As the plan says nothing about the rate of interest on unpaid contributions, the court was correct to accept the magistrate's recommendation **[*21]** to apply the interest rate set forth in § 6621.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n8 Further, we do not believe that the "cost of collection charges" is equivalent to interest on unpaid contributions. Therefore, even if Form 5011 or the CBA controlled, we would hold that the magistrate applied the correct interest rate.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

B. *Interest in Lieu of Liquidated Damages*

Defendants next argue that the plan contains no provision mandating liquidated damages, and therefore, it was error for the district court to award any. The district court did not award liquidated damages; rather, it awarded additional interest in lieu of liquidated damages as § 1132(g)(2) mandates it do. *HN7* Section 1132(g)(2) requires the court to award the plan the greater of the additional interest equivalent to the interest on unpaid contributions or the liquidated damages provided for in the plan. Because the plan does not provide for liquidated damages, the greater of the two is the amount equal to the interest on unpaid contributions. Accordingly, defendants' argument fails. **[*22]**

C. *Right to Attorneys' Fees*

Next defendants claim that the magistrate judge abused his discretion in awarding plaintiffs attorneys' fees. To support this claim, defendants cite a string of cases holding it is within the court's discretion to award attorneys' fees and listing the factors courts should use to determine whether to award such fees. Based on those factors, defendants contend the behavior of the parties does not warrant awarding attorneys' fees.

Defendants' argument misses the mark. The cases they cite were decided under § 1132(g)(1) which provides that "the court in its discretion may allow a reasonable attorney's fee and cost of action to either party." 29 U.S.C. § 1132(g)(1). This case is not a (g)(1) case but rather a (g)(2) case. *HN8* Section 1132(g)(2) mandates that the court award attorneys' fees if the judgment is in favor of the plan. See *id.* at § 1132(g)(2). Thus, the court was required to award attorneys' fees.

C. *Reasonable Attorneys' Fees*

Finally defendants dispute the magistrate judge's calculation of attorneys' fees. Essentially, they argue that plaintiffs caused much delay in this case and because of that delay, the magistrate **[*23]** should have used as a starting point for his calculations September 8, 1998. *HN9* While the award of attorneys' fees is mandatory under § 1132(g)(2), the amount must be reasonable. See 29 U.S.C. § 1132(g)(2)(D). Accordingly, we review the magistrate

judge's calculation to determine whether it was reasonable.

*HN10* This Court reviews awards of attorneys' fees under an abuse of discretion standard. See Building Service Local 47 Cleaning Contractors Pension Plan, et al. v. Grandview Raceway, 46 F.3d 1392, 1403 (1995). The commonly accepted approach for determining reasonableness is the "lodestar" approach. See Pennsylvania, et al. v. Delaware Valley Citizens' Council for Clean Air, et al., 478 U.S. 546, 564, 92 L. Ed. 2d 439, 106 S. Ct. 3088 (1986). The loadstar approach takes the reasonable hourly rate and multiplies it by the number of hours reasonably expended on litigation. See id. While the product of this formula is generally presumed to be reasonable, see id. at 565, the court may adjust it downward in compelling circumstances. See Grandview, 46 F.3d at 1402.

The magistrate judge calculated [*24] attorneys' fees properly. First, he followed the loadestar approach and based his calculation on the hourly rate of plaintiffs' attorneys multiplied by the number of hours expended on this case. Then he factored in circumstances that warranted an adjustment to this figure. Specifically, he decreased the figure by the amount incurred by plaintiffs due to their attorney's delay at a motion hearing. Defendants' argument that the court should have used September 1998 as the starting point for calculating fees misses the mark. Any delay caused by plaintiffs' attorney did not affect the amount of fees incurred by plaintiffs. Accordingly, such delays should not be factored into calculation.

We also award plaintiffs attorneys' fees resulting from this appeal. See id. at 1404. Plaintiffs should submit to the district court an accounting of hours spent on this appeal and the rate charged for these hours and the district court shall determine what fees are reasonable.

## CONCLUSION

For the reasons stated above, we AFFIRM the district court's judgments.

Service: **Get by LEXSEE®**
Citation: **2000 U.S. App. LEXIS 22688**
View: Full
Date/Time: Wednesday, August 25, 2004 - 8:11 PM EDT

* Signal Legend:
● - Warning: Negative treatment is indicated
⚠ - Caution: Possible negative treatment
◆ - Positive treatment is indicated
Ⓐ - Citing Refs. With Analysis Available
ⓘ - Citation information available

* Click on any Shepard's signal to Shepardize® that case.

About LexisNexis | Terms and Conditions

Copyright © 2004 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.